1

2

3

4

5

6

7    **UNITED STATES DISTRICT COURT**

8    **WESTERN DISTRICT OF WASHINGTON**

\* \* \*

9

| | |
|---|---|
| 10 HELPING HANDS SUPPORT SERVICES, a Washington General Partnership; NORTHWEST | Case No. 3:24-cv-5566 |
| 11 CORPORATE SERVICES LLC, a Washington Limited Liability Company; FUTCH & | **COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF** |
| 12 ASSOCIATES, PLLC, a Washington Professional Limited Liability Company; DAN | **CONTRACT, MISAPPROPRIATION OF TRADE SECRETS, TORTIOUS** |
| 13 PETERSON, an individual; CLEVELAND FUTCH, an individual, | **INTEREFERENCE, AND UNJUST ENRICHMENT** |
| 14 | |
| *Plaintiffs*, | **DEMAND FOR JURY TRIAL** |
| 15 | |
| 16 v. | |

10  HELPING HANDS SUPPORT SERVICES, a Washington General Partnership; NORTHWEST
11  CORPORATE SERVICES LLC, a Washington Limited Liability Company; FUTCH &
12  ASSOCIATES, PLLC, a Washington Professional Limited Liability Company; DAN
13  PETERSON, an individual; CLEVELAND FUTCH, an individual,

14
            *Plaintiffs*,

15

16      v.

17  DESTINY 508, a Washington Non-profit Corporation, dba DESTINY 508 MENTORING;
18  DIVINE ALLIANCE INTERNATIONAL MINISTRIES, a Washington Non-profit
    Corporation; LEGACY 508 SERVICES LLC, a
19  Washington limited liability company;
    DESTINY 508 NON-PROFIT SERVICES, a
20  Washington entity dba DESTINY 508
    MENTORING; IMPACT 508 NON-PROFIT
21  SERVICES, a Washington entity; TAMARA
    ENGWALL, an individual; TODD ENGWALL,
22  an individual; PETER NIEVES, an individual;
    JIM MONIAK, an individual; SUZANNE
23  MONIAK, an individual; DAVID LEROY, an
    individual; ELAINE LEROY, an individual;
24  MARK MORRIS, an individual; ROB
    THOMAS, an individual; RENEE GRABLE, an
25  individual,
            *Defendants*.

26

27

28

Case No. 3:24-cv-5566

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, BREACH OF CONTRACT, MISAPPROPRIATION OF TRADE SECRETS, TORTIOUS INTEREFERENCE, AND UNJUST ENRICHMENT**

**DEMAND FOR JURY TRIAL**

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

COME NOW Plaintiffs HELPING HANDS SUPPORT SERVICES, a Washington General Partnership; NORTHWEST CORPORATE SERVICES LLC, a Washington Limited Liability Company; and FUTCH & ASSOCIATES, PLLC, a Washington Professional Limited Liability Company, DAN PETERSON, and individual, and CLEVELAND FUTCH, an individual, and hereby allege as follows:

## THE PARTIES

1.      Plaintiff HELPING HANDS SUPPORT SERVICES ("HHSS") is a Washington general partnership having its principal place of business at 3501 S. 38th St., Suite 109, Tacoma, Washington 98409.

2.      Plaintiff NORTHWEST CORPORATE SERVICES LLC ("NWCS"), is a Washington limited liability company and a general partner of plaintiff HHSS, having a business address of 3501 S. 38th St., Suite 109, Tacoma, Washington 98409.

3.      Plaintiff FUTCH & ASSOCIATES, PLLC ("F&A") is a Washington professional limited liability company and a general partner of plaintiff HHSS, having a business address of 977 Altadena Dr., Fircrest, Washington 98466.

4.      Plaintiff DAN PETERSON ("Peterson") is an individual and a resident of the State of Washington having an address of 3501 S. 38th St., Suite 109, Tacoma, Washington 98409.

5.      Plaintiff CLEVELAND FUTCH ("Futch") is an individual and a resident of the State of Washington having an address of 977 Altadena Dr., Fircrest, Washington 98466.

6.      Defendant DESTINY 508, ("D508") is a Washington non-profit corporation doing business as DESTINY 508 MENTORING having its principal place of business at 4412 Green Oak Dr., Waco, Texas 76701.

7.      Defendant DIVINE ALLIANCE INTERNATIONAL MINISTRIES ("Divine Alliance") is a Washington non-profit corporation having its principal place of business at 4412 Green Oak Dr., Waco, Texas 76701.

COMPLAINT
CASE NO. 3:24-CV-5566

2

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

8.    Defendant LEGACY 508 SERVICES LLC ("Legacy 508") is a Washington limited liability company having its principal place of business at 22525 SE 64th Pl. Ste. 2253, Issaquah, Washington 98027.

9.    Defendant DESTINY 508 NON-PROFIT SERVICES ("D508-NP"), is a Washington entity of unknown status doing business as DESTINY 508 MENTORING that is the agent for service of process for Defendant D508, having an address of 22525 SE 64th Pl. Ste. 2253, Issaquah, Washington 98027.

10.    Defendant IMPACT 508 NON-PROFIT SERVICES ("Impact 508"), is a Washington entity of unknown status having an address of 41228 SE 123rd Street, North Bend, Washington 98045.

11.    Defendant TAMARA ENGWALL, ("Tamara") is an individual and has been a member of the board a of directors of Defendant D508 since 2021, is a governor of Divine Alliance, and is a governor of Legacy 508, having an address of 4412 Green Oak Dr., Waco, Texas 76701.

12.    Defendant TODD ENGWALL, ("Todd") is an individual and has been a member of the board a of directors of Defendant D508 since 2021, is a governor of Divine Alliance, and is a governor of Legacy 508, having an address of 4412 Green Oak Dr., Waco, Texas 76701.

13.    Defendant PETER NIEVES, ("Nieves") is an individual and was a member of the board of directors of Defendant D508 from 2022-2024, having an address of 848 Elm Street, Suite 200, Manchester, NH 03101.

14.    Defendant JIM MONIAK, is an individual and was a member of the board of directors of Defendant D508 from 2021-2022, having an address of 5233 Reed Dr., The Colony, TX 75056.

15.    Defendant SUZANNE MONIAK, is an individual and a member of the board of directors of Defendant D508 from 2021-2022, having an address of 5233 Reed Dr., The Colony, TX 75056.

COMPLAINT
CASE NO. 3:24-CV-5566

3

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

16.  Defendant DAVID LEROY, is an individual and was a member of the board of directors of Defendant D508 from 2021-2023, having an address of 81 SW 10 Ave., Great Bend, KS, 67530.

17.  Defendant ELAINE LEROY, is an individual and was a member of the board of directors of Defendant D508 from 2021-2023, having an address of 81 SW 10 Ave., Great Bend, KS, 67530.

18.  Defendant MARK MORRIS, is an individual and was a member of the board of directors of Defendant D508 from 2023-2024, having an address of 8308 NW 12th Ave., Vancouver, WA, 98665.

19.  Defendant ROB THOMAS, is an individual and was a member of the board of directors of Defendant D508 from 2023-2024, having an address of 11704 Medicine Bow Pl. SE, Albuquerque, NM, 87123.

20.  Defendant RENEE GRABLE is an individual and was a member of the board of directors of Defendant D508 from 2024 to the present, having an address of 683 Lynn Ray Rd., Petal, MS, 39465.

21.  Defendants TAMARA ENGWALL, TODD ENGWALL, PETER NIEVES, JIM MONIAK, SUZANNE MONIAK, DAVID LEROY, ELAINE LEROY, MARK MORRIS, ROB THOMAS and RENEE GRABLE are sometimes referred to herein collectively as "the Individual Defendants".

22.  Plaintiffs are informed and believe and thereon allege that each of the Defendants named herein participated in and/or is responsible in some manner for the acts, conduct and occurrences herein alleged, and that Plaintiffs' rights against such Defendants arise from such participation and/or responsibility, and that Plaintiffs' damages as herein alleged were proximately caused by such acts, conduct and occurrences.

///

///

COMPLAINT
CASE NO. 3:24-CV-5566

4

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

1

## JURISDICTION AND VENUE

2      23.    This is an action for copyright infringement and related claims. This court has

3 subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This

4 court has pendant jurisdiction over all related claims herein in accordance with 28 U.S.C. §

5 1338(b).

6      24.    This Court has supplemental jurisdiction over Plaintiff's pendent state law claims

7 pursuant to 28 U.S.C. § 1367 in that the state law claims are integrally interrelated with

8 Plaintiff's federal claims and arise from a common nucleus of operative facts such that the

9 administration of Plaintiff's state law claims with its federal claims furthers the interest of

10 judicial economy.

11      25.    Defendants are subject to personal jurisdiction in this forum in that (1) Defendants

12 transact business within the State of Washington by contracting for the formation of hundreds of

13 non-profit corporate entities under the laws of the State of Washington including filing Articles

14 of Incorporation and other corporate documents with the Washington Secretary of State as part

15 of the formation process for each such entity; and (2) Defendants have committed tortious acts

16 within the State of Washington causing harm to Plaintiff's property within the State of

17 Washington including without limitation publication of infringing materials in the State of

18 Washington; and (3) Defendants regularly engage in business within the State of Washington by

19 forming non-profit corporate entities within the State of Washington and should reasonably

20 expect those actions to have consequences in the State of Washington; and (4) pursuant to

21 consent language contained in a contract with Defendant Tamara.

22      26.    Venue is proper in this district pursuant to 28 U.S.C. § 1400(a) because the

23 Defendants or their agents reside in or may be found in this District.  Venue is also proper in this

24 district pursuant to 28 U.S.C. § 1391 since Defendants or their agents are subject to personal

25 jurisdiction in this jurisdiction, a substantial part of the events or omissions giving rise to the

26 claims occurred in this jurisdiction including but not limited to Defendants' contracting for

27

28

COMPLAINT                                      5                                         SIERRA IP LAW
CASE NO. 3:24-CV-5566                                                  1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

goods and services within the state of Washington and Defendants' unauthorized publication of infringing materials in this jurisdiction, and a substantial part of Plaintiff's copyrightable property that is the subject of the action is situated in this jurisdiction; and pursuant to a forum selection clause contained in a contract consented to by Defendant Tamara.

## FACTS COMMON TO ALL COUNTS

27.    This is an action for damages and injunctive relief resulting from the infringement of Plaintiffs' copyrights in certain materials, pursuant to 17 U.S.C. § 101, et seq., misappropriation of trade secrets, tortious interference and breach of contract.

28.    Since 2014, Plaintiff HHSS has been providing specialized services related to the formation of non-profit corporate entities within the State of Washington for its customers. The specialized services provided by Plaintiff HHSS are designed to assist its customers in qualifying for and maintaining non-profit tax status under state and federal law. In that regard, Plaintiff HHSS is the exclusive licensee of several copyrighted materials created by Dan Peterson and Cleveland Futch which are used by HHSS in providing its services. HHSS is a for-profit entity which non-exclusively licenses the copyrighted materials to a non-profit organization called Helping Hands Outreach (HHO).

29.    Sometime prior to October 2014, Defendants Tamara and Todd approached Plaintiff HHSS regarding the formation of a non-profit entity in Washington. Thereafter, on or about October 15, 2014, plaintiff HHSS assisted Defendants Tamara and Todd in the formation of Defendant Divine Alliance. Defendants Tamara and Todd maintained a relationship with Plaintiff HHSS and became interested in assisting HHSS in the formation of other non-profit entities in the State of Washington for customers.

30.    On or about May 15, 2016, Tamara entered into an agreement with HHSS ("the Agreement") under which Tamara agreed to refer potential customers to HHSS, whereby HHSS would form non-profit entities for such customers, and pay Tamara a commission for each such

COMPLAINT
CASE No. 3:24-CV-5566

6

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

entity formed. A copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by this reference. Thereafter, between 2016 and 2021, Defendant Tamara referred potential customers to HHSS for the formation of non-profit organizations in the State of Washington and received a commission for each such entity that was referred and successfully formed by HHSS.

31.    On numerous occasions between 2016 and 2021, in addition to referring potential customers to HHSS, Defendant Tamara requested and received support, proprietary information and instruction from HHSS. Among other things, Defendant Tamara attended HHSS training sessions, and received numerous HHSS forms, documents and video recordings containing HHSS proprietary information and know-how. As a result of these many contacts and communications, Tamara received copies of copyrighted documents and forms, proprietary informational recordings of HHSS personnel, as well as other valuable proprietary know-how relating to particular methods developed by HHSS for establishing non-profit organizations under IRS code section 508(c)(1)(a). During the course of the aforesaid relationship between Plaintiff HHSS and Defendant Tamara, on or about June 7, 2018, plaintiff HHSS assisted Defendants Tamara and Todd in the formation of Defendant D508.

32.    On or about September 1, 2021, Defendant Tamara terminated the Agreement with HHSS. Following termination, on or about September 9, 2021, HHSS informed Defendant Tamara that she did not have permission to continue using the proprietary information, legal analysis, brochures, recordings, documents and other things obtained prior to termination, and Defendant Tamara was requested to immediately remove all of these things from her web site. On September 22, 2021, Tamara acknowledged removal from her "public facing" web site.

33.    Unbeknownst to Plaintiffs at the time, Plaintiffs are informed and believe and thereon allege beginning in or around July 2021, prior to termination of the Agreement, Defendant D508 began using Plaintiffs' proprietary know-how and copyrighted materials without authorization to itself form non-profit corporate entities within the State of Washington

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

for new customers which customers should have been referred to HHSS. Plaintiffs are informed and believe and thereon allege that each of the members of the board of directors of Defendant D508 had knowledge of and participated in this unauthorized use of Plaintiffs' proprietary know-how and copyrighted materials.

34.    Defendants and each of them have continued to use Plaintiffs' copyrighted materials and proprietary know-how without authorization to solicit customers and form hundreds non-profit organizations in the State of Washington on their own.

## COPYRIGHTS

35.    Prior to January 9, 2015, Plaintiff Peterson created a template for Articles of Incorporation ("the 2015 Articles"). The 2015 Articles is an original work that may be copyrighted under United States law. A copy of the 2015 Articles is attached hereto as **Exhibit B** and incorporated herein by this reference. Plaintiff Peterson applied for and obtained a certificate of registration from the US Copyright Office for the 2015 Articles having an effective date of May 29, 2024, Registration No. TX 9-399-794. A copy of this registration is attached hereto as **Exhibit C** and incorporated herein by this reference. The 2015 Articles has been exclusively licensed by Plaintiff Peterson to Plaintiff HHSS.

36.    Prior to May 17, 2015, Plaintiffs Peterson and Futch wrote a paper entitled *Why All Churches Should Be A 508(c)(1)(a)* ("the Paper"). The Paper is an original work that may be copyrighted under United States law. A copy of the Paper is attached hereto as **Exhibit D** and incorporated herein by this reference. Plaintiffs Peterson and Futch applied for and obtained a certificate of registration from the US Copyright Office for the Paper having an effective date of February 8, 2023, Registration No. TX 9-232-707. A copy of this registration is attached hereto as **Exhibit E** and incorporated herein by this reference. The Paper has been exclusively licensed by Plaintiffs Peterson and Futch to Plaintiff HHSS.

*///*

COMPLAINT
CASE NO. 3:24-CV-5566

8

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

37.     Prior to May 17, 2015, Plaintiffs Peterson and Futch created a brochure entitled *Free Your Ministry From IRS Controls* ("the Brochure"). The Brochure is an original work that may be copyrighted under United States law. A copy of the Brochure is attached hereto as **Exhibit F** and incorporated herein by this reference. Plaintiffs Peterson and Futch applied for and obtained a certificate of registration from the US Copyright Office for the Brochure having an effective date of April 12, 2023, Registration No. TX 9-261-332. A copy of this registration is attached hereto as **Exhibit G** and incorporated herein by this reference. The Brochure has been exclusively licensed by Plaintiffs Peterson and Futch to Plaintiff HHSS.

38.     Prior to May 17, 2015, Plaintiff Peterson created text for web site pages ("the Web Site Pages"). The Web Site Pages are an original work that may be copyrighted under United States law. Copies of some of the Web Site Pages are attached hereto as **Exhibit H** and incorporated herein by this reference. Plaintiff Peterson applied for and obtained a certificate of registration from the US Copyright Office for the Web Site Pages having an effective date of April 11, 2023, Registration No. TX 9-260-500. A copy of this registration is attached hereto as **Exhibit I** and incorporated herein by this reference. The Web Site Pages have been exclusively licensed by Plaintiff Peterson to Plaintiff HHSS.

39.     Prior to August 15, 2015, Plaintiff Peterson created a cover letter for newly formed entities ("the Cover Letter"). The Cover Letter is an original work that may be copyrighted under United States law. A copy of the Cover Letter is attached hereto as **Exhibit J** and incorporated herein by this reference. Plaintiff Peterson applied for and obtained a certificate of registration from the US Copyright Office for the Cover Letter having an effective date of May 29, 2024, Registration No. TX 9-399-754. A copy of this registration is attached hereto as **Exhibit K** and incorporated herein by this reference. The Cover Letter has been exclusively licensed by Plaintiff Peterson to Plaintiff HHSS.

///

COMPLAINT
CASE NO. 3:24-CV-5566

9

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

40.     Prior to December 20, 2016, Plaintiff Peterson created an explanation for tax exemptions under Section 508(c)(1)(a) ("the Explanation Letter"). The Explanation Letter is an original work that may be copyrighted under United States law. A copy of the Explanation Letter is attached hereto as **Exhibit L** and incorporated herein by this reference. Plaintiff Peterson applied for and obtained a certificate of registration from the US Copyright Office for the Explanation Letter having an effective date of May 29, 2024, Registration No. TX 9-399-797. A copy of this registration is attached hereto as **Exhibit M** and incorporated herein by this reference. The Explanation Letter has been exclusively licensed by Plaintiff Peterson to Plaintiff HHSS.

41.     Prior to April 22, 2018, Plaintiff Peterson created a template for corporate by-laws ("the 2018 By-Laws"). The 2018 By-Laws is an original work that may be copyrighted under United States law. A copy of the 2018 By-Laws is attached hereto as **Exhibit N** and incorporated herein by this reference. Plaintiff Peterson applied for and obtained a certificate of registration from the US Copyright Office for the 2018 By-Laws having an effective date of May 29, 2024, Registration No. TX 9-399-792. A copy of this registration is attached hereto as **Exhibit O** and incorporated herein by this reference. The 2018 By-Laws has been exclusively licensed by Plaintiff Peterson to Plaintiff HHSS.

## COUNT 1

## COPYRIGHT INFRINGEMENT – 2015 ARTICLES

### (17 U.S.C. § 501)

42.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 41, inclusive, above as though the same were fully set forth herein.

43.     Defendants, and each of them, have infringed the copyright in the 2015 Articles by reproducing and filing with the Washington Secretary of State numerous separate Articles of Incorporation which were largely copied from the 2015 Articles in connection with the formation

10

of numerous separate non-profit entities in the State of Washington. A true and correct copy of an example Articles of Incorporation filed by Defendants is attached hereto as **Exhibit P** and incorporated herein by this reference.

44.    Defendants are not and have never been licensed to reproduce or use the 2015 Articles, and have not sought permission from Plaintiffs to reproduce or use the 2015 Articles in connection with the formation non-profit entities in the State of Washington or for any other purpose.

45.    Defendants have utilized the 2015 Articles for commercial use, namely, in connection with the providing of services related to the formation of non-profit organizations in the State of Washington.

46.    On information and belief, Defendants obtained a copy of the 2015 Articles from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

47.    The 2015 Articles is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

48.    Plaintiff HHSS is the exclusive licensee of the 2015 Articles for which a valid copyright exists, the 2015 Articles having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

49.    As a result of Plaintiffs' reproduction, distribution, and public display of the 2015 Articles, Defendants had access to the 2015 Articles prior to their own reproduction, distribution, and use of their articles.

50.    Defendants have unlawfully reproduced, distributed, and publicly displayed the 2015 Articles without consent or authorization from Plaintiffs.

51.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing,

distributing, and publicly displaying the 2015 Articles for their commercial purposes.

52.    Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

53.    Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the 2015 Articles and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

54.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

55.    Upon information and belief, the Individual Defendants, and each of them, were involved with the planning and/or development of the business of forming non-profit entities using Plaintiffs' 2015 Articles.

56.    Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the 2015 Articles and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

57.    Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the 2015 Articles, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing to the infringing activities of each other and of said Defendants, and are therefore jointly and severally liable for the actions of each other and of said Defendants.

///

## COUNT 2

## COPYRIGHT INFRINGEMENT – WHY ALL CHURCHES (Paper)

### (17 U.S.C. § 501)

58.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 57, inclusive, above as though the same were fully set forth herein.

59.    Defendants, and each of them, have infringed the copyright in the paper *Why All Churches Should Be A 508(c)(1)(a)* ("the Paper") by reproducing and publishing numerous copies of a similar paper which were largely copied from the Paper in connection with the promotion of the formation of non-profit entities in the State of Washington. A true and correct copy of an example paper reproduced and published by Defendants is attached hereto as **Exhibit Q** and incorporated herein by this reference.

60.    Defendants are not and have never been licensed to reproduce or use the Paper, and have not sought permission from Plaintiffs to reproduce or use the Paper in connection with the formation non-profit entities in the State of Washington or for any other purpose.

61.    Defendants have utilized the Paper for commercial use, namely, in connection with the providing of services related to the formation of non-profit organizations in the State of Washington.

62.    On information and belief, Defendants obtained a copy of the Paper from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

63.    The Paper is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

64.    Plaintiff HHSS is the exclusive licensee of the Paper for which a valid copyright exists, the Paper having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

65.     As a result of Plaintiffs' reproduction, distribution, and public display of the Paper, Defendants had access to the Paper prior to their own reproduction, distribution, and use of their paper.

66.     Defendants have unlawfully reproduced, distributed, and publicly displayed the Paper without consent or authorization from Plaintiffs.

67.     By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing, distributing, and publicly displaying the Paper for their commercial purposes.

68.     Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

69.     Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the Paper and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

70.     Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

71.     Upon information and belief, the Individual Defendants, and each of them were involved with the planning and development of the business of forming non-profit entities using Plaintiffs' Paper.

72.     Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the Paper and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

73.    Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the Paper, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing to the infringing activities of each other and of said Defendants, and are therefore jointly and severally liable for the actions of each other and of said Defendants.

## COUNT 3

## COPYRIGHT INFRINGEMENT – FREE YOUR MINISTRY (Brochure)

### (17 U.S.C. § 501)

74.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 73, inclusive, above as though the same were fully set forth herein.

75.    Defendants, and each of them, have infringed the copyright in the brochure *Free Your Ministry From IRS Controls* ("the Brochure") by reproducing and publishing numerous copies of a similar brochure which were largely copied from the Brochure in connection with the promotion of the formation of non-profit entities in the State of Washington. A true and correct copy of an example brochure reproduced and published by Defendants is attached hereto as **Exhibit R** and incorporated herein by this reference.

76.    Defendants are not and have never been licensed to reproduce or use the Brochure, and have not sought permission from Plaintiffs to reproduce or use the Brochure in connection with the formation non-profit entities in the State of Washington or for any other purpose.

77.    Defendants have utilized the Brochure for commercial use, namely, in connection with the providing of services related to the formation of non-profit organizations in the State of Washington.

78.    On information and belief, Defendants obtained a copy of the Brochure from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

///

COMPLAINT
CASE NO. 3:24-CV-5566

15

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

79.    The Brochure is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

80.    Plaintiff HHSS is the exclusive licensee of the Brochure for which a valid copyright exists, the Brochure having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

81.    As a result of Plaintiffs' reproduction, distribution, and public display of the Brochure, Defendants had access to the Brochure prior to their own reproduction, distribution, and use of their brochure.

82.    Defendants have unlawfully reproduced, distributed, and publicly displayed the Brochure without consent or authorization from Plaintiffs.

83.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing, distributing, and publicly displaying the Brochure for their commercial purposes.

84.    Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

85.    Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the Brochure and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

86.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

///

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

87.     Upon information and belief, the Individual Defendants, and each of them were involved with the planning and development of the business of forming non-profit entities using Plaintiffs' Brochure.

88.     Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the Brochure and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

89.     Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the Brochure, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing to the infringing activities of each other and of said Defendants, and are therefore jointly and severally liable for the actions of each other and of said Defendants.

**COUNT 4**

**COPYRIGHT INFRINGEMENT – WEB SITE PAGES**

**(17 U.S.C. § 501)**

90.     Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 89, inclusive, above as though the same were fully set forth herein.

91.     Defendants, and each of them, have infringed the copyright in the Web Site Pages by reproducing and publishing web pages which were largely copied from the Web Site Pages in connection with the promotion of formation of non-profit entities in the State of Washington. True and correct copies of example web pages published by Defendants in April and May of 2024 are attached hereto as **Exhibit S** and incorporated herein by this reference.

92.     Defendants are not and have never been licensed to reproduce or use the Web Site Pages, and have not sought permission from Plaintiffs to reproduce or use the Web Site Pages in

1  connection with promoting the formation non-profit entities in the State of Washington or for any

2  other purpose.

3      93.    Defendants have utilized the Web Site Pages for commercial use, namely, in

4  connection with promoting the providing of services related to the formation of non-profit

5  organizations in the State of Washington.

6      94.    On information and belief, Defendants obtained a copy of the Web Site Pages from

7  Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

8      95.    The Web Site Pages is an original work of authorship, embodying copyrightable

9  subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. §

10  101 et seq.).

11      96.    Plaintiff HHSS is the exclusive licensee of the Web Site Pages for which a valid

12  copyright exists, the Web Site Pages having been registered the Register of Copyrights, and

13  owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to

14  bring this lawsuit and assert the claim(s) herein.

15      97.    As a result of Plaintiffs' reproduction, distribution, and public display of the Web

16  Site Pages, Defendants had access to the Web Site Pages prior to their own reproduction,

17  distribution, and use of their web site pages.

18      98.    Defendants have unlawfully reproduced, distributed, and publicly displayed the

19  Web Site Pages without consent or authorization from Plaintiffs.

20      99.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights

21  in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing,

22  distributing, and publicly displaying the Web Site Pages for their commercial purposes.

23      100.    Plaintiffs have been damaged as a direct and proximate result of Defendants'

24  infringement.

25      101.    Plaintiffs are entitled to recover their actual damages resulting from Defendants'

26  infringement of the Web Site Pages and any profits of Defendants that are attributable to the

27

28

1    infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. §

2    504(b)), which amounts shall be proven at trial.

3        102.    Defendants' conduct has caused, and any continued infringing conduct will

4    continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no

5    adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent

6    injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

7        103.    Upon information and belief, the Individual Defendants, and each of them were

8    involved with the planning and development of the business of forming non-profit entities using

9    Plaintiffs' Web Site Pages.

10       104.    Upon information and belief, the Individual Defendants, and each of them, had a

11   financial interest in and had the ability to control the business of Defendants D508, Divine

12   Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and

13   distribution of the Web Site Pages and are therefore vicariously liable, jointly and severally, for the

14   actions of said Defendants.

15       105.    Upon information and belief, the Individual Defendants, and each of them, had

16   knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance,

17   Legacy 508, D508-NP and Impact 508 in connection with the Web Site Pages, and acted in concert

18   with each other and with said Defendants thereby materially inducing, causing and/or contributing

19   to the infringing activities of each other and of said Defendants, and are therefore jointly and

20   severally liable for the actions of each other and of said Defendants.

21                            **COUNT 5**

22                  **COPYRIGHT INFRINGEMENT – Cover Letter**

23                          **(17 U.S.C. § 501)**

24       106.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 105,

25   inclusive, above as though the same were fully set forth herein.

26   ///

27

28

107.    Defendants, and each of them, have infringed the copyright in the Cover Letter by reproducing and publishing cover letters which were largely copied from the Cover Letter in connection with the formation of numerous separate non-profit entities in the State of Washington. A true and correct copy of an example cover letter reproduced and published by Defendants is attached hereto as **Exhibit T** and incorporated herein by this reference.

108.    Defendants are not and have never been licensed to reproduce or use the Cover Letter, and have not sought permission from Plaintiffs to reproduce or use the Cover Letter in connection with the formation non-profit entities in the State of Washington or for any other purpose.

109.    Defendants have utilized the Cover Letter for commercial use, namely, in connection with the providing of services related to the formation of non-profit organizations in the State of Washington.

110.    On information and belief, Defendants obtained a copy of the Cover Letter from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

111.    The Cover Letter is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

112.    Plaintiff HHSS is the exclusive licensee of the Cover Letter for which a valid copyright exists, the Cover Letter having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

113.    As a result of Plaintiffs' reproduction, distribution, and public display of the Cover Letter, Defendants had access to the Cover Letter prior to their own reproduction, distribution, and use of their cover letter.

114.    Defendants have unlawfully reproduced, distributed, and publicly displayed the Cover Letter without consent or authorization from Plaintiffs.

20

115.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing, distributing, and publicly displaying the Cover Letter for their commercial purposes.

116.    Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

117.    Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the Cover Letter and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

118.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

119.    Upon information and belief, the Individual Defendants, and each of them were involved with the planning and development of the business of forming non-profit entities using Plaintiffs' Cover Letter.

120.    Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the Cover Letter and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

121.    Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the Cover Letter, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing

CASE NO. 3:24-CV-5566

21

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

1 to the infringing activities of each other and of said Defendants, and are therefore jointly and

2 severally liable for the actions of each other and of said Defendants.

3 **COUNT 6**

4 **COPYRIGHT INFRINGEMENT – Explanation Letter**

5 **(17 U.S.C. § 501)**

6    122.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 121,

7 inclusive, above as though the same were fully set forth herein.

8    123.    Defendants, and each of them, have infringed the copyright in the Explanation

9 Letter by reproducing and distributing letters which were largely copied from the Explanation

10 Letter in connection with the formation of numerous separate non-profit entities in the State of

11 Washington. A true and correct copy of an example letter reproduced and published by Defendants

12 is attached hereto as **Exhibit U** and incorporated herein by this reference.

13    124.    Defendants are not and have never been licensed to reproduce or use the

14 Explanation Letter, and have not sought permission from Plaintiffs to reproduce or use the

15 Explanation Letter in connection with the formation non-profit entities in the State of Washington

16 or for any other purpose.

17    125.    Defendants have utilized the Explanation Letter for commercial use, namely, in

18 connection with the providing of services related to the formation of non-profit organizations in the

19 State of Washington.

20    126.    On information and belief, Defendants obtained a copy of the Explanation Letter

21 from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with

22 HHSS.

23    127.    The Explanation Letter is an original work of authorship, embodying copyrightable

24 subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. §

25 101 et seq.).

26 ///

27

28

128.    Plaintiff HHSS is the exclusive licensee of the Explanation Letter for which a valid copyright exists, the Explanation Letter having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

129.    As a result of Plaintiffs' reproduction, distribution, and public display of the Explanation Letter, Defendants had access to the Explanation Letter prior to their own reproduction, distribution, and use of explanation letters.

130.    Defendants have unlawfully reproduced, distributed, and publicly displayed the Explanation Letter without consent or authorization from Plaintiffs.

131.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing, distributing, and publicly displaying the Explanation Letter for their commercial purposes.

132.    Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

133.    Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the Explanation Letter and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

134.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

135.    Upon information and belief, the Individual Defendants, and each of them were involved with the planning and development of the business of forming non-profit entities using Plaintiffs' Explanation Letter.

///

136.    Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the Explanation Letter and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

137.    Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the Explanation Letter, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing to the infringing activities of each other and of said Defendants, and are therefore jointly and severally liable for the actions of each other and of said Defendants.

## COUNT 7

## COPYRIGHT INFRINGEMENT – 2018 BY-LAWS

### (17 U.S.C. § 501)

138.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 137, inclusive, above as though the same were fully set forth herein.

139.    Defendants, and each of them, have infringed the copyright in the 2018 By-Laws by reproducing numerous separate by-laws which were largely copied from the 2018 By-Laws in connection with the formation of numerous separate non-profit entities in the State of Washington.

140.    Defendants are not and have never been licensed to reproduce or use the 2018 By-Laws, and have not sought permission from Plaintiffs to reproduce or use the 2018 By-Laws in connection with the formation non-profit entities in the State of Washington or for any other purpose.

141.    Defendants have utilized the 2018 By-Laws for commercial use, namely, in connection with the providing of services related to the formation of non-profit organizations in the State of Washington.

COMPLAINT
CASE NO. 3:24-CV-5566

24

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

142.    On information and belief, Defendants obtained a copy of the 2018 By-Laws from Plaintiff HHSS during the time that Defendant Tamara had a contractual relationship with HHSS.

143.    The 2018 By-Laws is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 et seq.).

144.    Plaintiff HHSS is the exclusive licensee of the 2018 By-Laws for which a valid copyright exists, the 2018 By-Laws having been registered the Register of Copyrights, and owning sufficient rights, title, and interest to such copyright to afford Plaintiff HHSS standing to bring this lawsuit and assert the claim(s) herein.

145.    As a result of Plaintiffs' reproduction, distribution, and public display of the 2018 By-Laws, Defendants had access to the 2018 By-Laws prior to their own reproduction, distribution, and use of their by-laws.

146.    Defendants have unlawfully reproduced, distributed, and publicly displayed the 2018 By-Laws without consent or authorization from Plaintiffs.

147.    By their actions, Defendants have infringed and violated Plaintiffs' exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, by knowingly and willfully reproducing, distributing, and publicly displaying the 2018 By-Laws for their commercial purposes.

148.    Plaintiffs have been damaged as a direct and proximate result of Defendants' infringement.

149.    Plaintiffs are entitled to recover their actual damages resulting from Defendants' infringement of the 2018 By-Laws and any profits of Defendants that are attributable to the infringement and are not taken into account in computing actual damages (pursuant to 17 U.S.C. § 504(b)), which amounts shall be proven at trial.

150.    Defendants' conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiffs unless enjoined by the Court. Plaintiffs have no

///

COMPLAINT
CASE NO. 3:24-CV-5566

25

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a permanent injunction prohibiting infringement of Plaintiffs' exclusive rights under copyright law.

151.    Upon information and belief, the Individual Defendants, and each of them were involved with the planning and development of the business of forming non-profit entities using Plaintiffs' 2018 By-Laws.

152.    Upon information and belief, the Individual Defendants, and each of them, had a financial interest in and had the ability to control the business of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the reproduction, use and distribution of the 2018 By-Laws and are therefore vicariously liable, jointly and severally, for the actions of said Defendants.

153.    Upon information and belief, the Individual Defendants, and each of them, had knowledge of the infringing activities of each other and of Defendants D508, Divine Alliance, Legacy 508, D508-NP and Impact 508 in connection with the 2018 By-Laws, and acted in concert with each other and with said Defendants thereby materially inducing, causing and/or contributing to the infringing activities of each other and of said Defendants, and are therefore jointly and severally liable for the actions of each other and of said Defendants.

## COUNT 8

## **BREACH OF CONTRACT**

154.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 153, inclusive, above as though the same were fully set forth herein.

155.    On or about May 15, 2016, Defendant Tamara entered into a written agreement with Plaintiff HHSS to promote the establishment of non-profit entities for customers (Exhibit A, "the Agreement").

156.    Section 7.2.1 of the Agreement provides that HHSS owns or has all rights to all trademarks, content and other information, including all copyrights, that is displayed on, posted on, contained in, or provided in connection with the HHSS web site.

COMPLAINT
CASE NO. 3:24-CV-5566

26

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

157.    Section 7.2.1 of the Agreement provides that "you" [Defendant Tamara] have no rights or interest in any content, information, materials, intellectual property or other proprietary information or know-how displayed on, relating to, incorporated within, associated with or used in connection with HHO's web site or services beyond those specifically set forth in the Agreement.

158.    In Section 19 of the Agreement, Defendant Tamara consented to the exclusive personal jurisdiction and subject matter jurisdiction of any of the courts in the State of Washington for any purpose or matter pertaining directly or indirectly the Agreement.

159.    During the course of the Agreement, Defendant Tamara brought potential customers to HHSS in order for HHSS to take steps to form non-profit entities for such customers using its proprietary information and copyrighted materials, and Defendant Tamara was paid a commission for such referrals.

160.    At no time during the course of the Agreement did Defendant Tamara, or any of the other Defendants, have permission themselves to reproduce or use any of HHSS proprietary or copyrighted materials, nor did they have permission to form any non-profit entities themselves using HHSS' proprietary and copyrighted materials.

161.    Plaintiff HHSS fully performed under the Agreement.

162.    Defendant Tamara terminated the Agreement on or about September 1, 2021.

163.    Upon information and belief, both prior to and following termination, Defendant Tamara breached the Agreement by knowingly and intentionally using and reproducing HHSS' proprietary and copyrighted materials without authorization for the formation of non-profit entities in the State of Washington in direct competition with HHSS, and sharing those materials with other Defendants.

164.    Plaintiff HHSS has been damaged by Defendant Tamara's actions in an amount to be proven at trial.

///

COMPLAINT
CASE NO. 3:24-CV-5566

27

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

**COUNT 9**

**TORTIOUS INTERFERENCE**

165.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 164, inclusive, above as though the same were fully set forth herein.

166.    By virtue of the Agreement through which Defendant Tamara agreed to refer potential customers to Plaintiff HHSS in order for Plaintiff HHSS to form non-profit entities for such customers (Exhibit A), and by virtue of the many such referrals actually made by Defendant Tamara during the term of the Agreement, Plaintiff HHSS had a valid business expectancy of receiving referrals of customers from Defendant Tamara during the term of the Agreement.

167.    On information and belief, Defendants, and each of them, had knowledge of the expectancy of Plaintiff HHSS to receive referrals of potential customers from Defendant Tamara during the term of the Agreement.

168.    On information and belief, beginning in or around July 2021, prior to termination of the Agreement, Defendants, and each of them, intentionally interfered with the business expectancy of Plaintiff HHSS by failing to refer potential customers to Plaintiff HHSS during the term of the Agreement, and instead intentionally diverting those potential customers to the Defendants for the Defendants themselves to form non-profit entities instead of Plaintiff HHSS.

169.    Plaintiff HHSS has been damaged by the Defendants interference in an amount to be proven at trial.

**COUNT 10**

**MISAPPROPRIATION OF TRADE SECRETS**

**(RCW 19.108.010)**

170.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 169, inclusive, above as though the same were fully set forth herein.

///

///

171.    Prior to entering into the Agreement, Plaintiffs developed valuable and proprietary know-how relating to particular methods for establishing and maintaining non-profit organizations under IRS code section 508(c)(1)(a).

172.    Defendant Tamara learned of these proprietary methods and know-how during the term of the Agreement with Plaintiff HHSS (Exhibit A).

173.    On information and belief, Defendant Tamara knew that these proprietary methods and know-how were trade secrets of Plaintiffs because they are not generally known, and were the subject of reasonable efforts under the circumstances to maintain secrecy.

174.    On information and belief, the Defendants misappropriated the trade secrets of Plaintiffs by utilizing the proprietary methods and know-how learned by Defendant Tamara which were shared with the other Defendants to set up and operate one or more businesses in direct competition with HHSS.

175.    On information and belief, the use by the Defendants of the trade secrets of Plaintiffs has been knowing, willful, and deliberate.

176.    Plaintiffs have been and will continue to be irreparably injured by reason of Defendants' misappropriation of trade secrets. Such irreparable injury will continue unless the acts of Defendants are enjoined during the pendency of this action and thereafter.

177.    Plaintiffs have been damaged by Defendants' actions in an amount to be proven at trial.

## COUNT 11

### UNJUST ENRICHMENT UNDER COMMON LAW

178.    Plaintiffs repeat, reallege, and incorporate by reference paragraphs 1 through 177, inclusive, above as though the same were fully set forth herein.

179.    By virtue of Defendants' wrongful acts described above, Defendants have been unjustly enriched in an amount to be proven at trial.

///

COMPLAINT
CASE NO. 3:24-CV-5566

29

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

180.   Defendants' retention of monies gained through its misappropriation, breach of contract, unfair business practices, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this court enter judgment in their favor and grant the following alternative and cumulative relief:

1.   **Accounting.**  That Defendants be required to account to Plaintiffs for all profits and damages resulting from Defendants' unlawful activities.

2.   **Injunctive Relief.**  That a temporary restraining order, preliminary and permanent injunction be issued enjoining Defendants and their agents, servants, employees, and attorneys and those in active concert or participation with them:

a.   From and in any way publishing, distributing, or in any way disseminating any of the copyrighted materials of Plaintiffs.

b.   From in any way destroying, altering, disposing of, concealing, tampering with, or in any manner secreting any and all business records, invoices, correspondence, books of account, receipts, or other documentation relating or referring in any manner to the publishing, distributing, or disseminating of any of the copyrighted materials of Plaintiffs; and

c.   For an Order pursuant to 17 U.S.C.A. § 503 for the impounding of all materials used in the violation of the copyright owner's exclusive rights.

d.   That Defendants be required to deliver up to Plaintiffs for destruction all infringing copies and all plates, molds, matrices and other materials for making infringing copies of Plaintiffs' copyrighted works in Defendants' possession or control; and

e.   That Defendants be required to file with the Court and serve on Plaintiff an affidavit setting forth in detail the manner and form in which Defendants have complied with the terms of any injunction entered by this Court.

COMPLAINT
CASE NO. 3:24-CV-5566

30

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

3.    **Damages.**  That Plaintiffs be awarded damages against Defendants, and each of them, jointly and severally, as follows:

a.    Plaintiffs' actual damages and Defendants' profits pursuant to 17 U.S.C. § 504 in an amount presently unknown subject to proof at trial, together with interest, sufficient to compensate Plaintiffs for copyright infringement, as the Court may deem just and proper;

b.    Increased damages for Defendant's willful unfair competition and misappropriation; and

c.    Compensatory and other damages pursuant to state law.

4.    **Restitution, Disgorgement**.  For disgorgement of Defendants' ill-gotten gains resulting from its unlawful activities and restitution of Defendants' ill-gotten gains to Plaintiffs.

5.    **Constructive Trust.**  For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendants' possession which rightfully belong to Plaintiffs.

6.    **Costs**.  That Plaintiffs have and receive their costs of suit.

7.    **Interest.**  That Defendants be ordered to pay Plaintiffs prejudgment and post judgment interest on all sums allowable by law.

///

///

///

///

///

///

///

///

///

COMPLAINT
CASE NO. 3:24-CV-5566

31

SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

1        8.     **Other.** For such other and further relief as the Court deems just and proper.

2

3        Dated: July 12, 2024

4                                    SIERRA IP LAW, PC
                                A Professional Corporation

5

6                                    By    *s/Mark D. Miller*            

7                                          MARK D. MILLER, WSBA No. 55926
                                      Attorneys for Plaintiffs,
                                      *Helping Hands Support Services,*

8                                          *Northwest Corporate Services LLC,*
                                      *Futch & Associates, PLLC, Dan Peterson,*

9                                          *Cleveland Futch*

10                                   Sierra IP Law, PC
                                A Professional Corporation

11                                   1201 Pacific Ave., Ste 600

12                                   Tacoma, WA 98402
                                Phone: (253) 345-1545

13                                   E-mail: mmiller@sierraiplaw.com

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT
CASE NO. 3:24-CV-5566
                            32                            SIERRA IP LAW
1201 PACIFIC AVE., STE. 600
TACOMA, WA 98402
PHONE: (253) 345-1545

1

## <u>DEMAND FOR TRIAL BY JURY</u>

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh

3  Amendment to the Constitution of the United States, Plaintiffs hereby demand a trial by jury on

4  all issues so triable.

5          Dated: July 12, 2024

6                                          SIERRA IP LAW, PC
                                           A Professional Corporation
7

8                                          By ___s/Mark D. Miller_____
                                           MARK D. MILLER, WSBA No. 55926
9                                          Attorneys for Plaintiffs,
                                           *Helping Hands Support Services,*
10                                         *Northwest Corporate Services LLC,*
                                           *Futch & Associates, PLLC, Dan Peterson,*
11                                         *Cleveland Futch*

12                                         Sierra IP Law, PC
                                           A Professional Corporation
13                                         1201 Pacific Ave., Ste 600
                                           Tacoma, WA 98402
14                                         Phone: (253) 345-1545
                                           E-mail: mmiller@sierraiplaw.com
15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

## HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

**1. Agreement Terms Of Use**

This Agreement contains the terms and conditions of your participation in the Helping Hands Support Services Affiliate Agreement, herein after the "Agreement" between you ("you") and Helping Hand Support Services, herein after "HHSS". HHSS owns, operates, and maintains a website with a URL at HelpingHandOutreach.com (the "website"). Please print and keep a copy of this Agreement for your records.  Additional Terms of Use for affecting this Agreement and Customers is listed in Section 7.

**2. Participation in the Program**

In order to participate in the Agreement you must first fill out an application and agree to the terms and conditions of this Agreement. In good faith we will assess your application and inform you of your acceptance or rejection. We reserve the right to accept or reject your application for participation in the Agreement at our sole discretion.

**3. Modification of this Agreement**

We reserve the right, at our sole discretion, to modify and amend this Agreement in any manner at any time by posting a change notice or new agreement on HHSS or by emailing you with a change notice or new agreement to the email address provided during the application.

**6.  Privacy Policy**

6.1 Protecting your privacy is very important to us. To assure you of your privacy, we provide this notice to help you understand our commitment to security, what kinds of information we may gather about you when you visit our websites, how we may use that information, and how you can correct the information.

*6.2 Information We Collect, Automatically Collected Anonymous Information*

When you visit a HHSS website, certain anonymous information about your visit is automatically logged as it is at most websites, which may include information about your IP address, domain name, browser type, mobile device type, access time, and referring website address. This information is not personally identifiable and is only used in aggregate (not in any way that personally identifies you).

*6.3 Personally Identifiable Information*

Personally Identifiable Information (PII) is any information about you as an individual that would enable someone to contact you; for example, your name, address, telephone number, or email address. We may ask for such information when you subscribe to an email newsletter, order a magazine or website subscription or other products or service, participate in an online survey, post a comment, enter a contest or sweepstakes, or use a service or tool such as emailing a page.

We will not collect any PII about you unless you provide it. Providing any PII to us is voluntary. If you do not want us to obtain any personally identifiable information about you, do not submit it.

You can visit and browse our websites without revealing any PII, but you may not be able to access certain content, features or services if you choose not to disclose PII.

*6.4 How We Use This Information*

Aggregated information may be used in many ways. For example, we may combine information about the usage patterns of our visitors to learn which pages are visited most or what features are most attractive. Aggregated information may occasionally be shared with our advertisers and business partners, but it cannot be used to contact you individually.

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

PII you provide voluntarily may be used to improve the content of our websites, to fulfill your requests for our products and services, to correspond with you about your purchases or notify you if you win a contest prize, to notify you of updates to our website, shared with agents or contractors who assist in providing support for our internal operations, transferred to a successor entity in connection with a corporate merger, consolidation, sale of assets or other corporate change respecting our websites, used by us to contact you for our or other reputable organizations' marketing purposes, and shared with third-parties for marketing purposes. (Email marketing promotions are sent via our own system rather than sharing email addresses with third parties.)

HHSS may use PII to provide Internet security and to meet legal requirements. As a result, HHSS reserves the right to cooperate with law enforcement officials in the investigation of alleged unlawful activities committed on or through our websites. HHSS may disclose PII in the course of officially authorized law enforcement investigations or as required to comply with a current judicial proceeding, court order, warrant, subpoena or other legal process served on HHSS. Further, in the event of a suspected attempt to deliberately circumvent our websites' security with the intent to gain unauthorized access or to do physical damage, HHSS may share PII about a suspected intruder with law enforcement officials. HHSS shall have no legal liability for such disclosures. Notwithstanding any of the above, HHSS reserves the right to challenge the validity of any subpoena, court order, warrant or other legal process, in its sole discretion.

If you choose to post comments to a blog or article, any information you submit may become public. It may become accessible through search engines or, if you sign in using credentials from a third-party social networking service, it may become accessible to users on that service. Unless otherwise noted, we do not limit the distribution of information that you share using these features. HHSS is not responsible for any personal information you choose to make public via these forums, and you agree that such sharing will be deemed to have been permitted by you, not HHSS. If you prefer not to have your information published, do not submit it. If you choose to submit content for publication (e.g., a letter to the editor), we may publish any information you have provided to us. If you prefer not to have your PII published, do not include it in your submission.

If you wish to opt out of the use of your PII for marketing purposes, please let us know via the following links: Email Newsletter Subscribers. Print or Site Subscribers, Online Store Customers and Other Information Sources: info@helpinghandoutreach.com

*6.5 Cookies & Web Beacons*
Cookies are a technology that helps us serve you better. Our cookies collect no personally identifiable information. We use cookies to help us know when and how many people visit our websites; to store your personal preferences for paid online subscription services you may subscribe to, in order to provide you with the best experience possible; and to record session information, such as items that you add to your shopping cart.

Our third party service providers and advertisers may also use cookies to manage and measure the performance of advertisements displayed on or delivered by or through our websites and to provide more relevant advertising. See "Collection of Information by Third-Parties, Ad Servers, and Sponsors" below for more information.

HHSS, our third party service providers or advertisers may use web beacons (clear .gifs) or similar technologies, which are small pieces of code placed on a web page or in an email newsletter, to monitor

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

the behavior and collect data about the visitors viewing the web page or email newsletter. For example, web beacons may be used to count the users who visit a web page, open an email newsletter or deliver a cookie to the browser of a visitor viewing a web page.  You have the choice to set your browser to accept all cookies, notify you when a cookie is set, delete cookies periodically, or reject all cookies. Generally, deleting or rejecting cookies also disables web beacons. Please be aware that rejecting all cookies may prevent you from enjoying the full features offered through HHSS's and other websites. Check the "Help" section of your browser for more information.

### 6.6 Collection of Information by Third Parties, Sponsors and Ad Servers

Advertisers and websites that have links on our websites may collect information directly from you if you click an advertisement or link to visit another website. This Privacy Policy applies only to information you provide to us and not to any information you may provide to a third party. Please consult the privacy policy of any other website you visit to know what information they may collect and how they may use it.

HHSS sometimes partners with third parties that operate websites and services you can use. For example:  A website may be cobranded. When you provide personal information via a cobranded website, you may have the option of providing it to either or both parties.  An online store may be hosted by Yahoo! Store. Yahoo! hosts the store pages, ordering system, and order data. Yahoo! automatically collects order information but may only use this information in the aggregate, according to the Privacy Policy posted on Yahoo! Stores.  A contest or sweepstakes may be sponsored by or co-sponsored with third parties as identified in the contest or sweepstakes' Official Rules. By virtue of these relationships, the third parties may obtain PII that visitors voluntarily submit to participate in the website activity. We have no control over these third parties' use of this information. Consult the Official Rules to determine whether these third parties will obtain such information.

### 6.7 Ad Choices

Some of the advertisements you may see on HHSS websites are delivered by third parties who may also collect information through cookies and web beacons about your online activities on HHSS websites or across the Internet, in an effort to understand your interests and deliver advertisements that are relevant to you. Often our ads are based on the content of pages you are viewing, but third parties may also provide ads tailored to your interests.

Third parties that may collect information on our websites in order to serve advertising tailored to your interest.  If these companies are members of the Network Advertising Initiative (NAI), you may also find opt-out information at the NAI consumer opt out page. You may also learn more about the Digital Advertising Alliance (DAA) and how to make choices about interest-based ads from participating third parties by visiting the DAA consumer opt out page.

### 6.8 Use by Minors

HHSS's websites are general audience websites, and we do not knowingly collect personally identifiable information from children under the age of 13. Any information collected online by HHSS from children under 18 is used only for the purpose of delivering the requested product or service. Please instruct your children to ask you for permission before providing any information about themselves to HHSS, and visit the Federal Trade Commission website for more information about safe online surfing.

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT 

*6.9 Your California Privacy Rights*

Beginning on January 1, 2005, California Civil Code Section 1798.83 requires HHSS (1) to enable its customers who are California residents to request certain information regarding its disclosure of personal information to third parties for their direct marketing purposes or (2) to offer the opportunity for customers to opt out of having their personal information disclosed to third parties for the third parties' direct marketing purposes. We have always offered the second option, as described above in the "How We Use This Information" section. If you prefer not to receive such direct marketing offers, please feel free to make your request known as explained above.

Beginning on January 1, 2014, an amendment to Section 22575 of California's Business and Professions Code requires HHSS to disclose to its customers who are California residents how it responds to Web browser do not track ("DNT") signals or other mechanisms that provide consumers the ability to exercise choice regarding the collection of personally identifiable information about an individual consumer's online activities over time and across third-party Web sites or online services. HHSS's websites do not currently respond to any DNT signals. However, customers may make choices about interest-based ads from participating third parties by visiting the DAA consumer opt out page as described in the Ad Choices section above.

*6.10 International Transfer*

This website is governed by and operated in accordance with the laws of the United States of America (USA). HHSS makes no representation that this website is governed by or operated in accordance with the laws of other nations. By using this website and submitting any personal information, visitors from outside of the USA acknowledge that this website is subject to USA law, consent to the transfer of personal data to the USA, and waive any claims that may arise under their own national laws. If you do not want your personal information transferred to the USA, do not provide it on this website.

*6.11 Our Commitment to Security*

HHSS has appropriate physical, electronic, and procedural safeguards in place at its physical location to help protect against the loss, misuse, or alteration of any information you may provide via our websites, including address information and credit card numbers. We use industry-standard encryption technologies when transferring and receiving consumer data exchanged with our websites. When we transfer and receive certain types of sensitive information such as financial information, we redirect visitors to a secure server and notify visitors through a pop-up screen on our website. Please note that no security system is impenetrable. As effective as these measures are, we cannot guarantee the security of our database nor that the information you supply will not be intercepted while being transmitted over the Internet.

*6.12 How to Unsubscribe*

If you do not want to receive email from us in the future, please contact us at info@helpinghandoutreach.com

*6.13 Updates to Privacy Policy*

From time to time, we may use customer information for new, unanticipated uses not previously disclosed in our privacy notice. We will post any such policy changes on our website to notify you of these changes and provide you with the ability to opt out of these new uses. If you are concerned about how your information is used, you should check our website periodically.

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

The Privacy Policy posted on this website was updated on or about December 10, 2014.
*Helping Hand Support Services*
3501 South 38th Street #109
Tacoma, WA 98409
253-459-9553

7. Terms of Use Helping Hands Support Services
*7.1. Disclaimer.*
The information contained from HHSS and HHO websites does not constitute legal advice. Legal Information is not the same as Legal Advice. Some of our information and corresponding website links provide information about law designed to help users safely cope with their own organization needs. The application of law varies depending on many circumstances. The laws of every state are in constant change, and although we go to great lengths to make sure our information is accurate and useful, we recommend you consult a lawyer if you want professional assurance that this information, and your interpretation of it, is appropriate to your particular situation.

*7.2. OWNERSHIP OF INTELLECTUAL PROPERTY AND MATERIALS.*
*7.2.1 Copyright and Intellectual Property Ownership.*
Helping Hand Support Services ("HHSS") Trademarks, the Content, and other information displayed and posted on, contained in, and/or provided in connection with, our website and/or the Service are owned by us (collectively, "Our Materials"). Also, third parties have allowed us to post or use their materials and Trademarks on our website ("Third Party Materials"). We refer to Our Materials and Third Party Materials collectively as the "Materials."

The Intellectual Property Rights of these Materials include the Materials that are displayed on, or contained in, our website, and/or utilized in conjunction with the Service, together with their design and layout, and elements that are protected by trade dress, trademark, copyright, or other laws. We exclusively own, or have the right to license, all intellectual property and proprietary information and know-how relating to, incorporated within, or associated with our website, including without limitation the copyright in the website and all of the web pages thereof. We maintain all of the web pages as a collective work under the United States copyright laws. By using or accessing our website or Services you acknowledge and agree:
- that you have no rights or interest in any Content, Information, Materials, and any other intellectual property or proprietary information and know-how displayed on, relating to, incorporated within, associated with, or used in connection with, our website and/or the Service, except as expressly set forth in these Terms of Use, and
- that you will acquire no rights in the foregoing by accessing or using any of our website and/or any part of the Service.

We reserve all rights that we do not expressly grant to you.

*7.2.2 Copyright Notice*
Our Materials contained on our website are copyrighted materials of Helping Hands Support Services Copyright © 2015 Helping Hands Support Services.

*7.2.3 Ownership of Third Party Materials*
Third Party Materials are owned, or licensed by the owner thereof, and, where necessary, we use such Third Party Materials with the permission of the owner. Unless we expressly indicate in these Terms of

Use, you have no rights or interest in any Third Party Materials. All rights relating to these materials are reserved to their owner.

### 7.2.4 Trademarks.

The term "HHSS Trademarks" means all names, marks, brands, design marks, slogans, logos, designs, trade dress and trade names that HHSS uses as trademarks, trade names or service marks, as displayed on our website and/or used in connection with the Service. All other trademarks, brand and product names displayed on our website, and/or used in connection with the Service, are trademarks, trade names or service marks of their respective owners. You agree not to display, use (including co-branding your owns goods or services with HHSS Trademarks), remove, or alter HHSS Trademarks without our prior written consent, which we may withhold or condition in our sole discretion. You further agree that any use by you, or on your behalf, of HHSS Trademarks, and the goodwill associated therewith, shall inure to the benefit of HHSS.

### 7.3. PRODUCT SALES

### 7.3.1 Product Sales and Availability.

We may sell certain products and materials on certain of our website through an Internet Store.  All prices for products and materials sold through the Internet Store are quoted in U.S. Dollars, and are valid and effective only in the United States at the time of posting. If we provide products or materials for delivery to certain locations outside the United States, we reserve the right to charge a higher price, or additional fees, for such products. We reserve the right to, at any time, and without prior notice, discontinue or change information, availability and pricing on any product or Materials on our website, without incurring any obligations to you or any other party. You are responsible for any applicable use taxes of your jurisdiction imposed as user or buyer of products or services.

### 7.3.2 Refund Policy

All sales are final. All sales and fees are non refundable.

### 7.3.3 Third Party Sales.

WE MAKE NO REPRESENTATIONS WITH RESPECT TO THE AVAILABILITY OR QUALITY OF ANY PRODUCTS, MATERIALS OR SERVICES THAT YOU PURCHASE FROM A THIRD-PARTY WEBSITE THAT LINKS TO OR FROM ANY OF OUR SITES, OR AS A RESULT OF THIRD-PARTY CONTENT (INCLUDING ADVERTISEMENTS OR SPONSORSIPS) POSTED, DISPLAYED, OR INCLUDED ON ANY OF OUR SITES. WE DO NOT ENDORSE ANY OF THE PRODUCTS, NOR HAVE WE TAKEN ANY STEPS TO CONFIRM THE ACCURACY OR RELIABILITY OF, ANY OF THE INFORMATION CONTAINED IN SUCH THIRD-PARTY SITES OR CONTENT (INCLUDING ADVERTISEMENTS).

YOU HEREBY IRREVOCABLY AND FOREVER RELEASE AND WAIVE (ON BEHALF OF YOURSELF AND YOUR HEIRS, PERSONAL REPRESENTATIVE, AND PERMITTED ASSIGNS) ANY CLAIM AGAINST US RELATING TO, OR ARISING OUT OF, (A) THE OPERATION OR DISPLAY OF ANY THIRD-PARTY WEBSITES AND THIRD-PARTY CONTENT, WHETHER OR NOT SUCH WEBSITES AND CONTENT ARE ACCESSIBLE THROUGH, OR DISPLAYED ON, ANY OF OUR WEBSITE; (B) YOUR ACCESS OR USE OF ANY THIRD-PARTY WEBSITE OR THIRD-PARTY CONTENT; AND (C) ANY AND ALL PRODUCTS OR MATERIALS THAT YOU PURCHASE FROM ANY THIRD-PARTY WEBSITE, EVEN IF SUCH PRODUCT IS ADVERTISED ON ANY OF OUR SITES. WE STRONGLY ENCOURAGE YOU TO MAKE WHATEVER INVESTIGATION YOU FEEL NECESSARY OR APPROPRIATE BEFORE PROCEEDING WITH ANY ONLINE OR OFF-LINE TRANSACTION WITH THE OPERATOR OR OWNER OF A THIRD-PARTY WEBSITE OR THE PUBLISHER OR OWNER OF ANY THIRD-PARTY CONTENT DISPLAYED ON THE WEBSITE.

### 7.3.4 Ownership of Third Party Materials

Third Party Materials are owned, or licensed by the owner thereof, and, where necessary, we use such Third Party Materials with the permission of the owner. Unless we expressly indicate in these Terms of Use, you have no rights or interest in any Third Party Materials. All rights relating to these materials are reserved to their owner.

### 7.3.5 Credit Cards.

We take the issue of your privacy seriously. All credit card information submitted is protected by SSL (Secure Sockets Layer) encryption, the recognized standard of the online industry. We do not share your credit card information with anyone else.

### 7.4. Disclaimers

7.4.1 EXCEPT FOR THE LIMITED WARRANTIES OTHERWISE EXPRESSLY STATED AND DISPLAYED ON THE SITE RELATING TO CERTAIN PRODUCTS THAT WE SELL, YOUR USE OF OUR WEBSITE, THE SERVICE, ALL CONTENT, ALL INFORMATION, AND ALL MATERIALS ARE OFFERED ON AN "AS IS" BASIS, "WITH ALL FAULTS," AND "AS AVAILABLE," WITHOUT ANY WARRANTIES WHATSOEVER, EITHER EXPRESS OR IMPLIED, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW. WE EXPRESSLY DISCLAIM ALL WARRANTIES, EXPRESS OR IMPLIED, RELATING TO OUR WEBSITE, ALL INFORMATION, CONTENT, MATERIALS, THE SOFTWARE, AND THE SERVICE, INCLUDING, WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANT ABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT OF THIRD PARTY INTELLECTUAL PROPERTY RIGHTS. WE DO NOT WARRANT THAT THE FUNCTIONS CONTAINED IN OUR WEBSITE AND/OR THE SERVICE WILL BE UNINTERRUPTED OR ERROR-FREE; THAT DEFECTS OR ERRORS WILL BE CORRECTED PROMPTLY OR AT ALL; AND/OR THAT ANY OF OUR WEBSITE, INFORMATION, CONTENT, MATERIALS, THE SERVICE (AND/OR ANY SOFTWARE, SERVER, COMPUTER, HARDWARE, OR NETWORK RELATING TO THE OPERATION, OR HOSTING OF, ANY OF THE FOREGOING) WILL BE FREE OF VIRUSES, ERRORS, OR HARMFUL COMPONENTS. APPLICABLE LAW MAY NOT ALLOW THE EXCLUSION OF IMPLIED WARRANTIES, SO THE ABOVE EXCLUSIONS MAY NOT APPLY TO YOU. WE ASSUME NO RESPONSIBILITY FOR THE TIMELINESS, DELETION, MIS-DELIVERY OR FAILURE TO STORE ANY COMMUNICATIONS OR MATERIALS POSTED ON OUR WEBSITE OR IN ANY FORUM.

7.4.2 WE EXPRESSLY DISCLAIM ANY WARRANTIES, REPRESENTATIONS, OR RESPONSIBILITY FOR THE ACCURACY OR COMPLETENESS OF ANY INFORMATION, CONTENT, AND MATERIALS CONTAINED, DISPLAYED, OR POSTED ON OUR WEBSITE OR OTHERWISE AVAILABLE THROUGH OUR SITE, OR ON SITES THAT LINK TO OR FROM THE SITE. ALL SUCH INFORMATION, CONTENT AND MATERIALS ARE SUBJECT TO CHANGE WITHOUT NOTICE. WE DO NOT WARRANT, OR MAKE ANY REPRESENTATIONS WITH RESPECT TO, THE USE, OR THE RESULTS THAT MAY BE ACHIEVED THROUGH SUCH USE, OF ANY OF OUR WEBSITE, ANY PART OF THE SERVICE, AND/OR ANY INFORMATION, CONTENT, AND/OR MATERIALS.

7.4.3 AT ANY TIME AND WITHOUT NOTICE, WE MAY, FOR ANY REASON WHATSOEVER AND WITHOUT INCURRING ANY LIABILITY OR OBLIGATION TO YOU OR ANY OTHER PARTY, TERMINATE OR SUSPEND THE DISPLAY, OPERATION AND/OR PROVISION OF (A) OUR WEBSITE (OR ANY PART THEREOF, INCLUDING ANY CONTENT, INFORMATION, AND/OR MATERIALS); (B) ANY PART OF THE SERVICE; AND/OR (C) YOUR ACCESS TO THE SITE OR ANY PART OF THE SERVICE.

7.4.4 WHILE WE WILL MAKE REASONABLE EFFORTS TO PROVIDE ACCURATE AND TIMELY INFORMATION ON OUR WEBSITE, YOU SHOULD NOT ASSUME THAT THE INFORMATION PROVIDED IS ALWAYS UP TO DATE, ACCURATE, COMPLETE OR THAT THE SITE CONTAIN ALL OF THE RELEVANT INFORMATION AVAILABLE.

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

### 7.5. Limitation of liability.

In no event and under no circumstances shall we be liable for any damages, including without limitation, direct, indirect, incidental, special, consequential, punitive, or exemplary damages that result from your use of, or inability to use, our website, any information, any content, any materials, and/or the service, or any part thereof, even if we have been expressly advised of the possibility of such damages. Applicable law may not allow the limitation or exclusion of liability or incidental or consequential damages, so the above limitations or exclusions may not apply to you. In no event shall our total liability to you for all damages, losses, and causes of action (whether in contract, tort, including, but not limited to, negligence, or otherwise) exceed the amount paid by you to us, if any, for accessing or using any of our website and/or for using the service, or any part thereof. If you are dissatisfied with any aspect of our website and/or the service, if you do not agree with any provision of these terms of use, or if you have any other dispute or claim with or against our organization with respect to these terms of use, any aspect of our website and/or the service, and/or your use of the site or any part of the service, then you acknowledge and agree that your sole and exclusive remedy is to discontinue accessing and/or using our website and/or the service.

### 7.6. Indemnity.

You hereby agree to indemnify, defend, and hold us, and our affiliates, our officers, directors, owners, agents, information providers, affiliates, licensors, and licensees (collectively, the "Indemnified Parties"), harmless from and against any and all liabilities and costs (including reasonable attorney's fees) incurred by the Indemnified Parties in connection with any claim arising out of, or relating to:

(a) any breach by you of these Terms of Use;

(b) any unauthorized use by you of any Information, Content, Materials, our website, or any part of the Service;

(c) your use of our website and/or any part of the Service

### 7.7 Additional Terms.

7.7.1 In addition, HHSS may make amendments to guidelines, policies, and codes of conduct governing participation and terms of use in the Affiliate Program at any time at HHSS sole discretion. Affiliate agrees to be bound by any of said amendments as posted on the HHSS website www.helpinghandoutreach.com.

7.7.2 This Agreement incorporates the terms and conditions of the HHSS Terms of Use which is available at https://www.helpinghandoutreach.com. You understand and acknowledge that your participation in the Affiliate Agreement and your use of the HHSS website is subject to the terms and conditions of the Terms and Use of HHSS for this Agreement.

### 8. Order Processing

All product orders and sales are at the price and subject to such terms and conditions as we determine. We reserve the right to refuse an order for any reason and will have no liability to you for any order so refused. You agree that all users who visit the HHSS website are customers of HHSS and are subject to terms and conditions set by us. HHSS shall have the sole right and responsibility for processing and fulfilling product orders place by customers.

### 9. Sales Compensation

9.1 In consideration of your referral we will pay to you during the term of the agreement, a fee based on the Net Sales Price. We will pay you a 20% fee based on the Net Selling Price of the Product(s). The

"Net Selling Price" is the unit price paid for the Order(s) by the Customer not including and less any recording and filing fees, charges or costs for shipping, handling, taxes, service charges, or other charges incurred by the Customer. We will only pay referral fees on such Products after order, payment and services have been completed.

9.2  In addition to 9.1, if an Affiliate sells four (4) full price 508(c)(1)(a) orders they will receive a Washington State 508(c)(1)(a) organization including filing and filing fees at no charge.

## 10. Payment of Sales Commission

In order to qualify for the fee stated above, the Customer must have referred you to HHSS. We will make payment to you of all compensation due at the end of each month. All such credits issued to you for the payment of the compensation due will be issued by check. You are solely responsible for keeping your address information with us current and accurate. In the event that a sales compensation is returned to us or otherwise not received by the Affiliate due to inaccurate or non-current account information provided by you, you agree to hold us harmless and free of liability.

## 11. Policies, Customer Information and Pricing

We reserve the right to modify pricing and HHSS website policies at any time without notification. We will have no obligation to share any customer information collected by HHSS, including but not limited to the name, address, e-mail address of the customer, or any Products ordered. In addition, to the extent we share with you any customer information, you shall maintain such information in confidence as HHSS's confidential information.

## 12. Responsibility for Your Website

You are solely responsible for the ownership, development, operation, and maintenance of your website and materials on your site. You will not develop, maintain or operate your website to copy or resemble the appearance of the HHSS website in any way or as to create the impression that your website is part of the HHSS website or that your website is owned, operated or maintained by us or make it confusingly similar causing your website to appear as a search result of any search engine or for any other reason. We disclaim and will have and assume no liability whatsoever arising from the ownership, development, operation, maintenance, and use of your website. You agree to indemnify and hold us harmless from and against any and all liabilities, damages, losses, costs, and expenses, including, without limitation, attorney's fees, to any third party arising directly or indirectly from the ownership, development, operation, maintenance, and use of your website.

## 13. Termination

The term of this Agreement will begin upon our acceptance of your Affiliate's Agreement application and will continue until terminated by either party in accordance with the terms of this Agreement. Either party may terminate this Agreement at any time, with or without cause, upon written notice to the other party as provided. Upon termination of this Agreement, you will immediately remove all Links and other HHSS Online Content from your website and you will be entitled to all fees accruing as of the date of termination provided that the related product orders are not cancelled or the product returned. We may withhold final payment upon termination for a reasonable period of time to ensure that the correct amount is paid.

## 14. Changes to Our Website

We reserve the right, in our sole discretion, to redesign or modify the organization, structure, "look and feel," navigation, content and any other elements of HHSS.

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

**15. Relationship of the Parties**

You and we are independent contractors and nothing in this agreement creates any joint venture, partnership, employee, agency or fiduciary relationship existing between the parties. You will have no right to make or accept any contract, agreement, undertaking, warranty, or representation on behalf of us. You will make no statement on your site or otherwise that would contradict any part of this Agreement.

**16. Notices**

All notices to you will be sent by email to the email address you provided or mailed to the mailing address, listed during the application process. All notices to Helping Hands Support Services shall be sent by email to: helpinghandoutreach.com or by first class mail to: Helping Hands Support Services Attn: Manager 3501 S 38th Street #109 Tacoma, WA 98409.

**17. Force Majeure**

Neither party shall be liable hereunder by reason of any failure or delay in the performance of its obligations hereunder on account of strikes, shortages, riots, insurrection, fires, flood, storm, explosions, acts of God, war, governmental action, labor conditions, earthquakes or any other cause which is beyond the reasonable control of such party.

**18. Nonassignability**

Affiliate may not assign this Agreement to any successor or Affiliate upon notice to the other party and mutual agreement between both parties.

**19. Governing Law**

The HHSS website is created, controlled, owned and operated by Helping Hands Support Services in the State of Washington. The laws of the State of Washington will govern and control this Agreement, the performance of each party under this Agreement, participation in the Agreement, the use of the HHSS website, and the purchase of services and products through the use of the HHSS website. You and We consent to the exclusive personal jurisdiction and subject matter jurisdiction of any of the courts in the State of Washington for any purpose or matter pertaining directly or indirectly to this Agreement, the website, Links or anything involving them shall be commenced and maintained only in the State of Washington.

**20. Acceptance**

I have read and agree to the Terms and Conditions of the Agreement herein and agree to be bound by them. I certify that I am legally able to enter into this contract.

Name: Affiliate          Date
                         5/15/2016

Name: HHSS          Date
              5-15-2016

HELPING HANDS SUPPORT SERVICES AFFILIATE AGREEMENT

# EXHIBIT B

**ARTICLES OF INCORPORATION**
**CHURCH NAME HERE**

**ARTICLE I**
NAME

The name of the Nonprofit Religious Corporation is <u>CHURCH NAME HERE.</u>  Its existence shall be perpetual.

**ARTICLE II**
EFFECTIVE DATE

The effective date of incorporation shall be:  <u>upon filing by the Secretary of State</u>.

**ARTICLE III**
TYPE OF NONPROFIT CORPORATION

The corporation is a church, a <u>Nonprofit Religious Corporation.</u>

**ARTICLE IV**
MEMBERS

Member definition and rights are outlined and governed in the bylaws.
or
The corporation shall have members.  Member definition and rights are outlined and governed in the bylaws.

**ARTICLE V**
PURPOSE AND MISSION

The purpose and mission of CHURCH NAME HERE is 1) to promote Christian doctrines; 2) to establish and oversee places of worship; 3) to evangelize worldwide; 4) support missionary activities, license and ordain ministers of the gospel; 5) the preservation of the truth; 6) Train, develop, and support leaders in our community and nation as called for in our beliefs, and 7) to engage in activities necessary for the accomplishment of the purpose.

CHURCH NAME HERE PAGE 1   © HELPING HAND OUTREACH 2015

**ARTICLE VI**
GENERAL POWERS

Section 1. All property held by the above named Religious Corporation, shall be held in trust for the use, purpose, benefit, and behoove of the incorporated Faith Based Organization herein named.

Section 2. The above-named Religious Corporation, shall, for the purpose of the organization, have the power to contract in the same manner and to the same extent as natural men and women, and may sue and be sued, and may defend in all courts and places. In all matters and proceedings whatever, the organization herein named shall have authority to borrow money and to give promissory notes therefore, and to secure the payment of the same by mortgage or other lien upon property, real and personal; to buy, sell, lease, mortgage and in every way deal in real and personal property in the same manner as a natural person may, and to appoint legal counsel, licensed and/or unlicensed, to the extent that any legal counsel employed shall be utilized in a capacity to protect the rights of the Religious Corporation and to address all courts in any and all litigious matters whether National or International.

Section 3. The Corporation shall have all authority granted in the Washington State Constitution Article One, Section 7 and 11 and the Washington State Nonprofit Corporation Act including, but not limited to RCW 24.03 as well as all rights guaranteed in Federal Law through the First Amendment, 26 U.S.C. (Internal Revenue Code) § 508(c)(1)(a), § 6033(a) (3), and the Religious Freedom Restoration Act 42 U.S.C Chapter 21B § 2000.

**ARTICLE VII**
BOARD OF DIRECTORS

Section 1. The management of the corporation shall be vested in a board of no fewer than three (3) directors. The number, qualifications, terms of office, manner of election, time and place of meeting, and powers and duties of the directors shall be fixed by the Bylaws of this corporation.

Section 2. The names and addresses of the Board of Directors who will manage the affairs of the corporation until their successors are selected as provided in the Bylaws are:

NAME HERE, President                ADDRESS HERE

NAME HERE, Director                 ADDRESS HERE

NAME HERE, Director                 ADDRESS HERE

## ARTICLE VIII
### INSTRUCTIONS FOR VACANCY

Section 1.  The provisions of the Bylaws of the Corporation shall govern the manner in which the Directors of the Corporation shall be elected or appointed.

Section 2.  Changes may be made to election or appointment of Directors through amendment to the Articles of Incorporation or stipulation in the Bylaws.

## ARTICLE IX
### LIMITATION OF DIRECTORS' LIABILITY

Section 1.  A director shall have no liability to the corporation for monetary damages for conduct as a director, except for acts or omissions that involve intentional misconduct by the director, or a knowing violation of law by the director, or for any transaction from which the director will personally receive a benefit in money, property or services to which the director is not legally entitled.

Section 2.  If the Washington Nonprofit Corporation Act is hereafter amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director shall be eliminated or limited to the full extent permitted by the Washington Nonprofit Corporation Act, as so amended.

Section 3.  Any repeal or modification of this Article shall not adversely affect any right or protection of a director of the corporation existing at the time of such repeal or modification for or with respect to an act or omission of such director occurring prior to such repeal or modification.

## ARTICLE X
### INDEMNIFICATION

Section 1.  Right to Indemnification of Directors and Officers.  Each person who was, or is threatened to be made a party to or is otherwise involved (including, without limitation, as a witness) in any actual or threatened action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was a director or officer of the corporation or, while a director or officer, he or she is or was serving at the request of the corporation as a director, trustee, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, trustee, officer, employee or agent or in any other capacity while serving as a director, trustee, officer, employee or agent, shall be indemnified and held harmless by the corporation, to the full extent permitted by applicable law as then in effect, against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts to be paid in settlement) actually and reasonably incurred or suffered by such person in connection therewith, and such indemnification shall continue as to a person who has ceased to be a director,

trustee, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. The right to indemnification conferred in this Section 1 shall be a contract right and shall include the right to be paid by the corporation the expenses incurred in defending any such proceeding in advance of its final disposition.

Section 2. Non-exclusivity of Rights. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Incorporation, Bylaws, agreement, or vote of disinterested directors or otherwise.

Section 3. Insurance, Contracts and Funding. The corporation may maintain insurance at its expense, to protect itself and any director, trustee, officer, employee or agent of the corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the corporation would have the power to indemnify such person against such expense, liability or loss under RCW 24.03.043 of the Washington Nonprofit Corporation Act and RCW 23B.08.510 of the Washington Business Corporation Act, or any successor provisions. The corporation may enter into contracts with any director or officer of the corporation in furtherance of the provisions of this Article and may create a trust fund, grant a security interest or use other means (including, without limitation, a letter of credit) to ensure the payment of such amounts as may be necessary to effect indemnification as provided in this Article.

Section 4. Indemnification of Employees and Agents of the Corporation. The corporation may, by action of its Board of Directors from time to time, provide indemnification and pay expenses in advance of the final disposition of a proceeding to employees and agents of the corporation with the same scope and effect as the provisions of this Article with respect to the indemnification and advancement of expenses of directors and officers of the corporation or pursuant to rights granted pursuant to, or provided by, the Washington Business Corporation Act, as applied to nonprofit corporations, or otherwise.


## ARTICLE XI
### BYLAWS

The authority to make, alter, amend, or repeal the Bylaws of this corporation is vested in the Board of Directors, and may be exercised in a manner set forth in the Bylaws of the corporation.

## ARTICLE XII
### DISTRIBUTION UPON DISSOLUTION

Upon the dissolution of the corporation, after paying or making provisions for the payment of all the legal liabilities of the corporation, all assets shall be distributed for one or more exempt purposes within the meaning of 26 U.S.C. § 508 (c)(1)(a) or § 501(c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine which are organized and operated exclusively for such purposes.

## ARTICLE XIII
### AMENDMENTS

The authority to amend, alter, change, or repeal any provision contained in these Articles of Incorporation is vested solely in the Board of Directors, and may be exercised at any regular or special meeting of the board.

## ARTICLE XIV
### PUBLIC INSPECTION OF DOCUMENTS

The Bylaws and Articles of Incorporation shall be kept at the principal place of business or registered agent address. All other records of accounts and finances, minutes of the proceedings of its Boards and any minutes which may be maintained by committees of the Board; records of the names and post office addresses of its officers and Directors, and such other records as may be necessary or advisable are protected under The First Amendment, 26 U.S.C. § 508, 26 U.S.C. § 6033(a)(3), and 42 U.S.C Chapter 21B § 2000. All such records shall not be open for public inspection.

**ARTICLE XV**
REGISTERED AGENT OFFICE AND CONSENT

NORTHWEST CORPORATE SERVICES does hereby consent to serve as the initial Registered Agent in the State of Washington for CHURCH NAME HERE.

The name and street address of the initial registered office of the corporation is:

NORTHWEST CORPORATE SERVICES
3501 South 38th Street #109  Tacoma, WA 98409

I consent to serve as registered agent in the State of Washington for the above named corporation.  I understand it will be my responsibility to accept Service of Process on behalf of the corporation; to forward mail to the corporation; and to immediately notify the Office of the Secretary of State if I resign or change the Registered Office Address.

_____(Processor for NWCS)_____
Signature of Registered Agent                    Printed Name                    Date

**ARTICLE XVI**
PRINCIPAL PLACE OF BUSINESS

The principal place of business is:  ADDRESS HERE

**ARTICLE XVII**
INCORPORATOR

The name and address of the Incorporator is:

Person or Business
ADDRESS HERE

_____    **Date**  _____

Dan Peterson, Incorporator

CHURCH NAME HERE PAGE 6   © HELPING HAND OUTREACH 2015

# EXHIBIT C

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-399-794**

**Effective Date of Registration:**
May 29, 2024
**Registration Decision Date:**
June 13, 2024

---

## Title

| | |
|---|---|
| Title of Work: | Articles of Incorporation |

## Completion/Publication

| | |
|---|---|
| Year of Completion: | 2015 |
| Date of 1st Publication: | January 09, 2015 |
| Nation of 1st Publication: | United States |

## Author

| | |
|---|---|
| • Author: | Dan Peterson |
| Author Created: | text |
| Work made for hire: | No |
| Citizen of: | United States |
| Year Born: | 1968 |

## Copyright Claimant

| | |
|---|---|
| Copyright Claimant: | Dan Peterson |
| | S. 38th St., #109, Tacoma, WA, 98409, United States |

## Limitation of copyright claim

| | |
|---|---|
| Material excluded from this claim: | text |
| Previous registration and year: | TX0009390628, 2024 |
| | TX0009390627, 2024 |
| New material included in claim: | text |

## Rights and Permissions

| | |
|---|---|
| Organization Name: | Sierra IP Law, PC |
| Name: | Mark D Miller |
| Email: | ipdocket@sierraiplaw.com |

Page 1 of 2

Telephone: (559)436-3800
Address: Post Office Box 5637
Fresno, CA 93755-5637 United States

## Certification

Name: Dan Peterson
Date: May 29, 2024
Applicant's Tracking Number: 14205.03.USC09

# EXHIBIT D

# Why All Churches Should Be A 508(c)(1)(a)

*Be A Light To The World*

*Cleveland Futch & Dan Peterson*

# WHY ALL CHURCHES SHOULD BE A 508(c)(1)(a)

Cleveland Futch & Dan Peterson*

### I. Free Expression of Religion and Freedom of Speech or Not, That is the Question

There is considerable confusion today on what pastors can and cannot say from the pulpit.[1] Most of this confusion rests squarely on the structural foundation of the church. If the church is founded as a 501(c)(3), the church has free speech restrictions.[2] All 501(c)(3) organizations are prohibited from influencing legislation and political campaigns.[3] As social issues have become political issues, churches and church leaders are increasingly avoiding issues, avoiding taking positions, and selectively addressing Biblical principles and training Godly leaders out of fear of what might happen if they do. Now more than ever churches need to lead in the call of training and developing leaders in our communities and nation consistent with Biblical beliefs. Our hope is that professionals who advise religious leaders will remain open to learning a better way to structure churches and church ministries to affect that call. The purpose of this analysis is to show the dangers and restrictions of the church foundation as a 501(c)(3) compared to the benefits and rights of the church being a 508(c)(1)(a).[4]

In 1954 our U.S. Congress amended Section 501(c)(3) of the tax code to include language that these organizations could no longer "participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office." The bill was introduced by then Senator Lynden Johnson to silence two private foundations that supported his political opponent. Before this amendment there were no speech restrictions on churches. Since the amendment passed, the IRS has maintained that church's speech and pastor's sermons, in the IRS' sole judgement, could be interpreted as supporting or opposing candidates or attempting to influence legislation and can result in the church losing its tax exempt status. Many churches and church leaders accept this interpretation of the Code and avoid speech that could be construed as political. We believe that the speech restrictions of the Johnson Amendment in Section 501(c)(3) are unconstitutional in restricting speech of pastors and churches.

---

*Cleveland Futch. Email: cleveland@helpinghandoutreach.org. M.B.A. Finance & Accounting, University Puget Sound, J.D., University Puget Sound, C.P.A., M.A. Theological Studies, Faith Evangelical Seminary.
*Dan Peterson. Email: dan@helpinghandoutreach.org. M.A. Ed Adm. University Puget Sound, B.A. Central Washington University.

[1] All section references are to the Internal Revenue Code of 1986, as amended, and the Treasury regulations promulgated thereunder.
[2] A Church may be incorporated or unincorporated. Throughout this analysis we use the terms "founded" and "organized" to mean incorporated. Additionally, churches may, but are not required to, apply to the IRS for an "letter of determination" as an tax exempt 501(c)(3) organization. The IRS considers churches to be organizations described under section 501(c)(3) irrespective of whether they apply for an "letter of determination". In other words, even if a church does not apply for 501(c)(3) status, the IRS still considers them to be just that. The Tax Code (26 U.S.C.) regulates activities of nonprofits, however, the Tax Code does not form or empower Faith Based Organizations. Formation and empowerment of nonprofits come from state laws, and state laws vary from state to state.
[3] See reg. section 501-(c)(3)... "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."
[4] See reg. section 508-(c)(1)(a). Exempts churches from having to apply to the IRS for recognition of tax exemption....also applies to "a convention or association of churches" or an "integrated auxiliary" of a church. The purpose of this analysis includes only the restrictions stated and compared and does not include or insinuate other areas of tax law restrictions or requirements for nonprofits.

Many people presuppose that the Tax Code laws are black and white. The reality is the Tax Code is full of exceptions to rules and requirements. For example, all 501(c)(3) organizations have to file a tax return, except churches,[5] and, all 501(c)(3) organizations can be audited the same as can for profit corporations, except churches.[6] In addition, the Tax Code provides no definition of "church", nor do the treasury regulations, nor has the U.S. Supreme Court. There is no statute anywhere that says a "church" has to be a 501(c)(3). Nowhere in Section 501(c)(3) is the word "church" used. In practice the IRS has developed their own definition for "church" and the guidelines for these entities to be described as 501(c)(3) organizations, yet their definition is not based on statutory authority.

There are other exceptions in the Tax Code with special rules concerning churches. For example, churches may operate retirement plans for their employees that do not comply with general retirement plan requirements.[7] Church ministers may opt out of Social Security requirements for self- employment tax.[8] Church ministers are exempted from federal unemployment taxes.[9] Church ministers are entitled to a housing allowance without being subjected to income tax.[10] All these exceptions are for churches and church ministers. These exceptions are not available to other types of 501(c)(3) organizations.

Churches, Integrated Auxillaries, and Association of Churches, hereinafter Faith Based Organizations (FBO's), have rights that no other non-profits enjoy. The First Amendment guarantees the right of "Free" exercise of religion.[11] The First Amendment also guarantees the right of "Freedom" of speech. Only FBO non-profits enjoy these dual rights. Any law or rule passed that conflicts with these rights would be unconstitutional. FBO's have the right to speak freely about social and political issues without losing tax-exempt status, however most voluntarily waive this constitutional right in applying and receiving a "Letter of Determination" as a 501(c)(3).

All 501(c)(3) FBO's have waived their rights. Corporations, like people, can waive rights. You can waive your right to a hearing, waive your right to speedy trial, even waive your *Miranda* rights if arrested. A waived right can be final on appeal.[12] If an FBO chooses to apply and then receives recognition of exemption from the IRS they also waive rights. First, in organizing for their exempt purpose FBO's are required to waive free expression of religion and free speech in order to qualify. Second, in operating for their exempt purpose the IRS has sole discretion to vacate FBO's tax exempt status at the IRS' discretion and interpretation for any violation of 501(c)(3) restrictions.

In the only case where the IRS sanctioned a church for campaigning, the churches 501(c)(3) status was ripe for consideration. In *Branch Ministries v. Rossotti*, the church lost its tax exempt letter of determination for violating 501(c)(3) restriction on politics. The church paid for a billboard advertisement

---

[5] *See* reg. section 6033(a)(3)

[6] *See* reg. section 7611(a)(1)(a & b)

[7] *See* reg. section 414(3)

[8] *See* reg. section 3121(w)(3)

[9] *See* reg. section 3309(b)(1)(A)

[10] *See* reg. 107

[11] *See* First Amendment of US Constitution. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof, or abridging the freedom of speech."

[12] *See Berghuis v. Thompkins*, 560 U.S. 370, 386-388 (2010) (docket 08-1470).

on a freeway that expressed opposition to a candidate running for political office. The IRS investigated and revoked the churches tax exempt letter of determination. When the church brought suit they raised several constitutional defense arguments. The district court, however, looked at the Tax Code. The court ruled, "irrespective of whether it was required to do so, the church applied to the IRS for an advance determination of its tax-exempt status. The IRS granted that recognition and now seeks to withdraw it."[13] If your FBO foundation is established as a 501(c)(3) your FBO has to abide by 501(c)(3) restrictions.

There is no law that prohibits churches from speaking on candidates, politics, or legislation. The 501(c)(3) speech restrictions apply only to corporations that are organized as a 501(c)(3). Churches that believe it is their responsibility to raise and foster Godly leaders in our representative democracy may do so, but not as a 501(c)(3).

There is also no statute anywhere that says an FBO is required to be a 501(c)(3). In fact, there are several ways an FBO could be organized. An FBO could be organized as a 501(c)(4), a 501(d), and even a for profit corporation. An FBO also can and should be organized as a 508(c)(1)(a).

## II. Section 501(c)(3) Restrictions on Speech and Religious Expression Violates the Establishment Clause, Free Speech Clause, Free Exercise Clause of the First Amendment, and the Religious Freedom Restoration Act (RFRA).

First, the application for 501(c)(3) status is in direct conflict with the Establishment Clause of the First Amendment. Do FBO's have to apply for permission from a government regulatory agency to exercise constitutional rights? What does the application look like? Who makes the decision on the application? What is the criteria for determining the application? Is the same criteria used equally in all applications? Are some criteria more important than others? People and corporations do not have to apply to any government agency in order to enjoy a right guaranteed in the U.S. Constitution.

The IRS publishes instructions for filling out the 501(c)(3) application. The instructions state the only way to receive application approval is to accept restrictions on speech and religious exercise.[14] Consider 501(c)(3) FBO restrictions in light of the First Amendment and especially the word "free." The word "free" has a legal definition and according to Blacks Law Dictionary 9th Edition includes, "having legal and political rights, not subject to the constraint or domination of another, characterized by choice, rather than by compulsion or constraint, unburdened, unrestricted and unregulated, costing nothing."[15]

---

[13] *See, e.g., Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000) (approving the IRS's revocation of a church's § 501(c)(3) tax-exempt advance determination because the church impermissibly intervened in a political campaign). Further, three tax-exempt organizations risked losing their tax-exempt statuses as a result of their politicking during the 2004 campaign season. *See IRS Finds Prohibited Political Activity in Majority of Exempt Group Exams*, 74 U.S.L.W. 2524, 2524 (Mar. 7, 2006) [hereinafter *IRS Finds Prohibited Political Activity*].
[14] See www.irs.gov Instructions for Form 1023 page 9 for Part VIII..."If you answer "Yes," you are not qualified for tax exemption under section 501(c)(3) and should reconsider whether the filing of application Form 1023 is appropriate for your organization."
[15] See Blacks Law Dictionary 9th Edition for legal definition of "Free"

In addition to the problem of an application, the application questions are even more troubling. The application questions are in direct conflict with First Amendment rights. All organizations, including churches, who apply to the IRS for a Letter of Determination as a 501(c)(3) are required to file Form 1023. Part VIII of the application asks 1) "Do you support or oppose candidates in political campaigns in any way?" and, 2) "Do you attempt to influence legislation?"[16] If you answer yes to either of these questions your application is denied; even if your organization is a bona fide church! What exactly does "in any way" mean? What exactly does "attempt" mean? Who is going to tell an FBO if they cross the line? What is the line between what can and cannot be said?

The application requires government to unnecessarily entangle itself with FBO's in matters of religious speech and religious expression. For many churches political activity is necessary to spread their faith and values into everyday life. Many churches define their mission to include an obligation to speak out on and attempt to influence public affairs. There is no practical way for our government to monitor these restrictions other than to meddle itself in the daily life of churches. The IRS would need to monitor religious speech about moral issues and issue advocacy and examine pastor's sermons to determine whether or not it violates the Johnson Amendment. Even worse, examinations would need to be ongoing and an FBO could be safe one week but another week be discriminated against.

The application also requires FBO's to give up a right for an exemption. Denying a tax exemption to an FBO for exercising religious and speech rights is unconstitutional.[17] In *Speiser v. Randall*, the U.S. Supreme Court held that "to deny a tax exemption to claimants who engage in certain forms of speech is in effect to penalize them for such speech. Its deterrent effect is the same as if the State were to fine them for this speech."[18]

The IRS treats religious organizations no differently than other tax-exempt organizations.[19] Due to the unclear line between political and religious issues, the fear of IRS regulations compels religious organizations to remain silent on issues that are both political and religious. The result chills FBO's freedom of religion and political speech and burdens their free exercise of religion. Combined, these burdens make the IRS's application of 501(c)(3) regulations inherently unconstitutional to FBO's.[20] The U.S. Supreme Court has consistently held when a government agency, rule, or interpretation of a rule, goes beyond the intent of congress the rule is void.[21] In *Chevron U.S.A. Inc.* v. *Natural Resources Defense*

---

[16] *See* www.irs.gov/pub/irs-pdf/f1023.pdf Part VIII, #1 and 2.

[17] *See, e.g., Speiser v. Randall*, 357 U.S. 513, 518, 528-29 (1958) (holding that a law conditioning veterans' tax benefits on veterans swearing not to advocate the forcible overthrow of the government is unconstitutional)

[18] *Speiser*, 357 U.S. at 518.

[19] *See, e.g., Fund for the Study of Econ. Growth & Tax Reform v. IRS*, 161 F.3d 755, 760 (D.C. Cir. 1998) (applying the general interpretation of § 501(c)(3) to an organization dedicated to reforming the U.S. tax system); *League of Women Voters v. United States*, 180 F. Supp. 379, 383 (Ct. Cl. 1960) (stripping an organization of its 501(c)(3) tax-exempt status because it engaged in excessive lobbying); *see also supra* Part I (outlining the IRS's interpretation of § 501(c)(3) as applied to all § 501(c)(3) organizations).

[20] A *Smith* hybrid claim involves both a free exercise claim and a free speech claim. *See generally Employment Div. v. Smith*, 494 U.S. 872 (1990) (outlining the *Smith* hybrid claim), *superseded by statute*, Religious Freedom Restoration Act of 1993, Pub. L. No. 109-280, 107 Stat. 1488, *as recognized in Holt v. Hobbs, 135 S. Ct. 853, 190 L. Ed. 2d 747 (2015) and Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 126 S. Ct. 1211 (2006)

[21] *See FDA v. Brown & Williamson Tobacco Corp.* 529 U.S. No. 98-1152 (2000) "Because this case involves an administrative agency's construction of a statute that it administers, our analysis is governed by *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837 (1984). Under *Chevron*, a reviewing court must first ask "whether Congress has directly spoken to the

*Council, Inc.* the court held that, "a reviewing court must first ask 'whether Congress has directly spoken to the precise question at issue.'" *Id.,* at 842. If Congress has done so, the inquiry is at an end; the court "must give effect to the unambiguously expressed intent of Congress." In *City of Arlington v. FCC* the court held "No matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority."[22]

Similarly in *Loving v. Internal Revenue Service,* the U.S. Court of Appeals ruled against the IRS who was trying to regulate all tax preparers, not just CPA's, enrolled agents, and tax attorneys. The court held the IRS lacks statutory authority to promulgate or enforce their new regulatory scheme for "registered tax return preparers". The IRS does not have authority to make or enforce rules not granted by congress or in conflict with existing law.[23]

Second, all 501(c)(3) organizations have to pay either a $400 or $850 fee. This is in direct conflict with the legal definition of "free" in the First Amendment. It makes no difference if it is a tax or processing fee, money required for consideration of an application for a church is not free.[24]

Third, all 501(c)(3) applications are reviewed and scrutinized by a government employee. IRS employees are often motivated, or pressured, to deny and restrict conservative non-profit application approval.[25] For example, Genesis Community Church applied to the IRS for 501(c)(3) "church" status. The church application sat with the IRS for over five years. The application was received by a government employee but was never approved even though they are a bona fide church![26]

Fourth, the criteria for determining if an FBO qualifies as a 501(c)(3) is vague and capricious. There is no legal definition for the word "church". The IRS, however, has developed and publicized their own criteria they consider for evaluating an application for "church" status. In their own words, the criteria and requirements vary from application to application. The U.S. Supreme Court stated in *Grayned v City of Rockford* "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined" The court also noted vagueness includes the following: "if a vague law impermissibly delegates basic policy matter to (government officials) for resolution on an ad hoc and subjective basis with the attendant dangers of arbitrary and discriminatory application"….and, "where a vague statute abut(s) upon sensitive areas of basic First Amendment freedoms." [27]

precise question at issue." *Id.,* at 842. If Congress has done so, the inquiry is at an end; the court "must give effect to the unambiguously expressed intent of Congress." *Id.,* at 843; see also *United States* v. *Haggar Apparel Co.,* 526 U. S. 380, 392 (1999); *Holly Farms Corp.* v. *NLRB,* 517 U. S. 392, 398 (1996)."

[22] *See City of Arlington* v. *FCC,* 133 S. Ct. 1863, 1868 (2013)

[23] *See Loving v. Internal Revenue Service, U.S. Court of Appeals, District of Columbia No. 13-5061 (2014),* The IRS does not have authority to make or enforce rules not granted by congress.

[24] See Blacks Law Dictionary 9th Edition for legal definition of "Free"….<1) Having legal and political rights…2) Not subject to the constraint or domination of another…3) Characterized by choice, rather than by compulsion or constraint…4) Unburdened…5) Not confined by force or restraint…6) Unrestricted and unregulated…7) Costing nothing….>

[25] *See* Treasury Inspector General Report May 14, 2013, Reference Number 2013-10-053

[26] Phone call with Pastor David Zoerhoff, Genesis Community Church, PSL, January 8, 2014; now a 508c1a church.

[27] *See Grayned v City of Rockford,* 408 U.S. 104, 109-09 (1972)

Fifth, all 501(c)(3) organizations, including FBO's, have restrictions on free speech.[28] The restriction on free speech is a direct result of the "Johnson Amendment" of 1954. The amendment added the language of "influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office."[29] In 1987 congress added the words, "or in opposition to". Before these amendments were approved, FBO's had no restrictions on what they could or could not say about politics and legislation. While these restrictions on free speech are in direct conflict with the First Amendment and the Religious Freedom Restoration Act, most FBO's have chosen to apply for a determination as a 501(c)(3).

If an organization formed under section 501(c)(3) is taken to court for violating restrictions on speech, the complaint typically includes: a) evidence the organization applied for a letter of determination as a 501(c)(3) and contracted with the IRS accepting restrictions, b) the organization's letter of determination acknowledges the agreement between the FBO and the IRS, and c) the IRS restrictions and tax exempt status granted from the agreement is enforceable.[30]

Speech restriction on politics and legislation violates the free exercise and free speech rights of FBO's under the First Amendment of the U.S. Constitution. The U.S. Supreme Court has ruled non FBO 501(c)(3) organizations have these restrictions and the restrictions do not violate "free speech rights."[31] It is important to note the U.S Supreme Court has never ruled on a case involving both free exercise of religion and free speech rights.[32] However, In a lower court ruling in *Rigdon v Perry*, free speech and religious exercise were at the forefront of the decision. In this case the district court rejected the arguments advanced by the government to support censorship of speech from the pulpit; "it is not the role of this court to draw fine distinctions between degrees of religious speech and to hold that religious speech is protected but religious speech with so-called overtones is not." ID. at 164. The court also held that any government interest for a censorship policy was "outweighed by the ....chaplains' right to autonomy in determining the religious content of their sermons." Id. At 162.[33]

Another challenge to the Johnson Amendment restrictions is the Religious Freedom Restoration Act (RFRA). The RFRA requires the federal government in advance of any assessment of penalty on FBO's free exercise of religion and speech to show a compelling government interest and be the least restrictive means of furthering that compelling interest.[34] In the case of 501(c)(3) FBO's, even a minor infraction of engaging in politics can mean complete loss of tax exempt status. The 501(c)(3) prohibition on support or opposition of candidates in political campaigns and any attempt to influence legislation have the effect of suppressing speech. These rules also prohibit issue advocacy. The consequence in either scenario is

---

[28] *See* reg. section 501-(c)(3)… "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office."

[29] *See* Congressional Record, July 2, 1954:9604; New York Times, July 3, 1954:6

[30] *See, e.g., Branch Ministries v. Rossotti*, 211 F.3d 137, 145 (D.C. Cir. 2000), See also *Regan v. Taxation With Representation*, 461 U.S. 540 (1983), See also *Cammarano v. United States* 358 U.S.. 498 (1959)

[31] The Court held that 501(c)(3) lobbying limitation does not violate an organization's free speech rights. *See Regan v. Taxation With Representation of Washington*, 461 U.S. 540-46 (1983). However, the organization was not a church or even a religious organization.

[32] *See* Congressional Research Service, Churches and Campaign Activity: Analysis Under Tax Campaign Finance Laws October 9, 2012

[33] See *Rigdon v Perry*, 962 F, SUPP. 150 (D.D.C. 1997)

[34] The Religious Freedom Restoration Act of 1993, Pub. Law No. 103-141, 107 Stat. 1488, codified at 42 U.S.C. Section 2000bb

the same, the penalty of being taxed. The penalty is the same for substantial and insubstantial violations. What makes this even more complicated is that section 501(c)(3) has been amended numerous times over the years. With each amendment, additional restrictions were applied.

The punishment for any violations is the same, loss of tax exemption and additional penalties. Congress's drafting of rules for tax exempt organization was never intended to penalize advocacy. In *Cammarano v. United States* Justice Douglas pointed out that penalties should not be punitive.[35] His concern was whether a rule might operate, irrespective of its purpose, to penalize speech.

Churches do not have an alternate channel for speech. Some have suggested that a 501(c)(3) FBO can just form a Political Action Committee (PAC) as an alternative channel. Even if they could it is burdensome and would still not allow for unfettered speech. A PAC will also lose it's tax exempt status if it engages in unrelated lobbying activity.[36] In *Citizens United v. FEC* the U.S. Supreme Court said, "Even if a PAC could somehow allow a corporation to speak-and it does not- the option to form a PAC does not alleviate the First Amendment problems"....PAC's are burdensome alternatives; they are expensive to administer and subject to extensive regulation"[37] The court struck down this theory as a viable excuse for speech restriction. If the alternate channel theory scenario is indeed applied to FBO's, there would be a direct loss of free speech and an indirect loss of tax deductible contributions. Therefore, even with a 501(c)(3) FBO and a 501(c)(4) alternative, there is still restricted speech.

Some people have suggested, based on *Reagan v. Taxation With Representation (TWR),* that 508(c)(1)(a) organizations are bound to political and legislative speech restrictions.[38] This argument is unpersuasive. TWR was not church. TWR was not a religious organization. In fact, TWR was not even an approved tax exempt organization. TRW had applied for a "Letter of Determination" of 501(c)(3) status but the application was denied. In this case the U.S. Supreme Court stated they have never held that Congress must grant a benefit to a person or organization who wishes to exercise a constitutional right. However, the court did confirm they have held that government may not deny a benefit to a person or organization who wished to exercise a constitutional right.[39] Since 508(c)(1)(a) organizations are already tax exempt as a right they do not have to give up that right (religious exercise and free speech) as a condition of tax exemption.

In 2010 the U.S. Supreme Court ruled in *Citizens United* that a federal law prohibiting nonprofit corporations from engaging in politics is unconstitutional.[40] The Court held that "First Amendment

---

[35] *See* Cammarano v. United States, 358 U.S. 498, 515 (1958) (Douglas, J., concurring)

[36] *See* Rev. Rul. 2004–6, 2004–1 C.B. 328 ("Organizations that are exempt from federal income tax under § 501(a) as organizations described in § 501(c)(4) . . . may, consistent with their exempt purpose, publicly advocate positions on public policy issues."); Rev. Rul. 81–95, 1981–1 C.B. 332 ("Thus, an organization may carry on lawful political activities and remain exempt under section 501(c)(4) as long as it is primarily engaged in activities that promote social welfare.").

[37] *See* Citizens United v. FEC, 130 S. Ct. 876, 897 (2010)

[38] *In Regan v. Taxation With Representation of Washington,* 461 U.S. 540-46 (1983). "This Court has never held that Congress must grant a benefit such as TWR claims here to a person who wishes to exercise a constitutional right. [461 U.S. 540, 546]"..." TWR is certainly correct when it states that we have held that the government may not deny a benefit to a person because he exercises a constitutional right. See Perry v. Sindermann, 408 U.S. 593, 597 (1972)."

[39] *See* Perry v. Sindermann, 408 U.S. 593, 597 (1972)

[40] *See* Citizens United v. Federal Election Commission, No. 08-205, 558 U.S. 310 (2010)

protection extends to corporations,"[41] and "political speech does not lose First Amendment protections simply because its source is a corporation."[42]

*Citizens United* abrogates *Regan* and *Branch Ministries*.[43] *Citizen United* is about corporate speech rights. The U.S. Supreme Court ruling in favor of *Citizens United* helps recognize the right of FBO's to engage in political speech.  First, the plaintiff was a nonprofit corporation.  Second, *Citizen* rejected the argument in *Regan* and *Branch Ministries* that a person can be forced to give up a right (speech) for a benefit (tax exemption).  Third, *Citizen* rejected the argument that a nonprofit can just form a 501(c)(4) affiliate in order to express it's free speech rights.  Fourth, if the *Regan* decision remains, then Congress can silence any speech.  The U.S. Supreme Court stated, "State law grants corporations special advantages- such as limited liability, perpetual life, and favorable treatment of the accumulation and distribution of assets"... and, "It is rudimentary that the State cannot exact as the price of those special advantages the forfeiture of First Amendment rights."[44]  Why then would a FBO choose to apply for a "Letter of Determination" as 501(c)(3)?

Other people argue that 508(c)(1)(a) organizations still have to meet all 501(c)(3) requirements, see *Taylor v Commissioner*.[45]  This tax court case is about a donation being allowed or disallowed, not tax exempt status of nonprofits. The plaintiff, Mr. Taylor, made a donation to a religious organization that lost it's tax exempt status for failure to pay employment taxes.  Mr. Taylor made a claim his donation should still be allowed as a tax deductible contribution, but he offered no facts and no evidence to support his position. Mr. Taylor lost because he failed to provide any evidence to support his claim and he bore the burden of proof.

The assertion from this case that 508(c)(1)(a) organizations still have to meet 501(c)(3) requirements is fatally flawed for several reasons.  Nowhere in section 508(c)(1)(a) are these requirements listed. Most 501(c)(3) organizations have to file a tax return yearly.  All organizations wanting formal recognition of 501(c)(3) status have to apply.  Neither of these "requirements" apply to a 508(c)(1)(a) FBO's.  There are additional 501(c)(3) requirements prohibiting participation in politics or legislation.  Any requirement granting tax exemption on condition of denying free expression of religion and free speech is unconstitutional.  The court's expression of this opinion, which is not the resolution of the specific issue before the court in this case, is dictum.[46]  The issue to be decided before the tax court was solely and only a question of charitable deduction.  The court was not making any decision or determination of qualification for an FBO as a tax exempt organization. Even if the tax court had made a determination that 508(c)(1)(a) organizations must meet all 501(c)(3) requirements to be tax exempt and receive tax deductible contributions, the opinion would likely be overturned in appeal because it conflicts directly

---

[41] *See* Citizens United, 130 s. Ct. at 899

[42] *Id* at 900 (quoting First National Bank of Bos. v. Bellotti, 435 U.S. 765, 784 (1978).

[43] *See* Citizens United v. Federal Election Commission, No. 08-205, 558 U.S. 310 (2010)

[44] *See* Citizens United, 130 S. Ct. at 905 (quoting Austin v. Mich. Chamber of Commerce, 494 U.S. 652, 658-59, 680 (1990)(internal citations omitted).

[45] *See Jack Lane Taylor v. Commissioner of Internal Revenue* No. 14021-98 T.C. Memo 200-17; 2000 Tax Ct. Memo Lexis 17; 79 T.C.M. (CCH) 1364  (2000)

[46] *See* Black Law Dictionary 9th Edition for definition of "Obiter dictum"; includes "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential, ...often shortened to dictum."

with the First Amendment and the Religious Freedom Restoration Act (RFRA).  There is no authority, statute, or court ruling that says a church is required to be a 501(c)(3).

501(c)(3) restrictions on FBO's require them to give up a right for an exemption.  The U.S. Supreme Court has stated that there is no compelling purpose for the government to extend a statutory privilege (like tax exemption) only on the condition that the recipient gives up a fundamental right (like free speech).  In fact, the opposite is true. The "exaction of a tax as a condition to the exercise of the great liberties guaranteed by the First Amendment is . . . obnoxious . . ."[47] The Court further explained in *Thomas v. Review Bd. of Indiana Employment Security Div.,*  "A person may not be compelled to choose between the exercise of a First Amendment right and participation in an otherwise available public program" and further, "…where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs, a burden upon religion exists. While the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial."[48]

Sixth, all 501(c)(3) organization's application and subsequent supporting documents are open to public inspection to any person or any organization.[49]  Since May, 2013 the IRS has been under investigation by the FBI, U.S. Treasury Inspector General, and the U.S. House Ways and Means Committee for allegedly violating federal laws and discriminating against conservative and Christian organizations.  There are also several lawsuits pending against the IRS.  The record from these investigations revealed illegal release of documents and targeting of conservative organizations. [50]

Seventh, if an FBO is applying for a letter of determination as a 501(c)(3) it is required to accept all six restrictions.  There is no other way to receive a determination.

The conclusions to be drawn from these points are that 501(c)(3) restrictions are being used to silence FBO's voice on issues central to church beliefs, prohibiting the influence of the church to develop leaders, and prohibiting religious influence in our representative democracy.

### III.  Section 508(c)(1)(a) Benefits for Faith Based Organizations (FBO's)

Churches, integrated auxillaries, and association of churches do not have to apply as a 501(c)(3) in order to be tax exempt and offer tax deductibility for contributions.  All organizations seeking tax exempt status must apply to the IRS except FBO's.   FBO's can be formed under Section 508(c)(1)(a) and enjoy "mandatory exceptions" from these requirements.   Section 508(c)(1)(a) was codified in the Internal Revenue Code (IRC) in order to formally establish the right to "free" exercise of religion  which had been

---

[47] *See Follett v. Town of McCormick*, S.C., 321 U.S. 573, 577 (1943) (internal citations omitted).

[48] *See Thomas v. Review Bd. of Indiana Employment Security Div., 450 U. S. 707 (1981)*

[49] *See* reg. section 6104(a)(1)(a). "…such application or notice shall be open to public inspection…."

[50] *See* www.treasury.gov/tigta/auditreports/2013reports/201340008fr.pdf.  *See also* www.thomasmoresociety.org, Memo to U.S. House Ways and Means Committee May 16, 2013 with 150 pages of evidence of IRS harassment of conservative organizations dating back to 2009.

©HELPING HAND OUTREACH 2015    9

a tacit standard upon which America was founded and governed since it gained its independence.[51]  A 508(c)(1)(a) is, by the very nature of its creation, a religious, non-profit, tax-exempt organization.[52]

Section 508 was part of the legislation passed in the Tax Reform Act of 1969 (H.R. 13270), codified as Public Law 91-172[53]  The intent of our U.S. Congress in passing Section 508(c)(1)(a) was to make sure that important First Amendment religious and speech rights were protected when they overhauled and authorized sweeping new changes to the Tax Code in 1969.  The Act included substantial changes in the treatment of private foundations and 501(c)(3) organizations.  The changes included requirements that organizations seeking tax exempt status had to first apply, file a tax return annually, comply with rules and regulations that the IRS may from time to time prescribe, keep records of income and expenses, and render under oath statements about the organization.[54]  Churches were specifically excepted from these requirements.[55]

According to the U.S. House and U.S. Senate Staff of the Joint Committee on Internal Revenue Taxation, the reason for the new laws was because "Congress believed that the Internal Revenue Service was handicapped in evaluating and administering the tax laws by the lack of information with respect to many organizations". [56]  The Joint Committee published the *General Explanation* to the other members of Congress as source material to explain the Tax Reform Act of 1969 as finally enacted.  "Under prior law, an organization was exempt if it met the requirements of the code, whether or not it sought an "exemption certificate" from the Internal Revenue Service."[57]  In other words, churches were not required to apply to the IRS for approval before the Act.  Following passing, the Act required new exempt organizations to notify the Internal Revenue Service that they are applying for recognition of their section 501(c)(3) exempt status.  Congress had to enact a particular rule to specifically exempt churches from these new requirements or the new legislation would be in conflict with the Constitution.[58]  Section 508(c)(1)(a) was necessary to formally ensure that government did not unnecessarily entangle itself with the organization and operation of churches.

FBO's can be organized and operate under Section 508(c)(1)(a) of the Tax Code the same as they can be organized and operate under any other section of the Tax Code.

A 508(c)(1)(a) FBO has a constitutional and legal right to form; therefore, there is no required application to seek approval of tax exempt status.

---

[51] *See*  The principles of "Free Exercise" are specifically guaranteed in the First Amendment of U.S. Constitution and further codified in 42 U.S.C. § 2000bb, Religious Freedom Restoration Act.

[52] *See* reg. section 508-(c)(i)(a)

[53] *See* Public Law 91-172 approved December 22, 1969 by the U.S. House vote 381 to 2, and U.S. Senate 71 to 6, signed by the President December 30, 1969.

[54] *See* reg. section 6033.

[55] *See* reg. section 6033(a)(3).

[56] *See* General Explanation of the Tax Reform Act of 1969 H.R. 13270, 91st Congress, Public Law 91-172 Prepared by the Staff of the Joint Committee on Internal Revenue Taxation page 55, December 3, 1970

[57] *Id* at 54

[58] *Id* at 55, "These notice requirements do not apply to churches and their integrated auxillaries….to conventions or associations of churches"

A 508(c)(1)(a) FBO tax exemption stems from the First Amendment and is not a government subsidy. Some arguments have been presented supporting speech restrictions on politics and legislation for churches as necessary so government does not subsidize religion. This viewpoint does not comport by definition and is a well settled matter of case law.

The legal definition of "exemption" is "freedom from a duty, liability, or other requirement; an exception".[59] The legal definition of a "subsidy" is "a grant, usually made by the government, to any enterprise whose promotion is considered to be in the public interest. Although governments sometimes make direct payments (such as cash grants), subsidies are usually indirect…"[60] It is clear that 508(c)(1)(a) FBO's do not receive a government subsidy. A subsidy occurs when money changes hands between the government and the organization. A subsidy is determined by the government whereas an exemption is not. A subsidy is allocated and monitored by the government whereas an exemption is not. Therefore, tax exemption of churches does not amount to subsidizing speech.

It is well settled by our U.S. Supreme Court that granting churches tax exemption is not government subsidizing religion. In *Waltz v Tax Commission New York* our U.S. Supreme Court made clear granting a tax exemption to churches is not a government subsidy. The court stated, "In analyzing either alternative the questions are whether the involvement is excessive, and whether it is a continuing one calling for official and continuing surveillance leading to an impermissible degree of entanglement"…."The grant of a tax exemption is not sponsorship since the government does not transfer part of its revenue to churches but simply abstains from demanding that the church support the state"…and, "There is no genuine nexus between tax exemption and establishment of religion." [61]

Revisiting the U.S. Supreme Court's well settled jurisprudence case on content-based tax exemptions is *Arkansas Writers' Project, Inc. v. Ragland*.[62] In this case government agencies and officials who pick and choose some organizations to receive tax exemption and others not based on the content of their speech was ruled unconstitutional. In this case the court held that discrimination "on the basis of the content of the message cannot be tolerated under the First Amendment."[63]

All donations to a 508(c)(1)(a) FBO's are tax deductible to donors to the fullest extent of law. Section 170(b) of the IRC states donations are automatically tax deductible to "churches or a convention or association of churches."

A 508(c)(1)(a) FBO has free speech rights. All 501(c)(3) organizations have speech restrictions. Nowhere in the U.S. Constitution are FBO's speech and legislative rights restricted. These restrictions come solely from the Tax Code as amended in 1954. These restrictions apply only to organizations that apply and are approved under the Tax Code. If an organization is not organized as a 501(c)(3), these restrictions do not apply. In fact, there are many different types of non-profits and they do not all have the same restrictions

---

[59] *See* Blacks Law Dictionary 9th Edition for legal definition of "Exemption"

[60] *See* Blacks Law Dictionary 9th Edition for legal definition of "Subsidy"

[61] *See* Waltz v. Tax Comm'n, 397 U.S. at 397 U.S. 674 (1970)

[62] *See* Arkansas Writers Project, Inc. v. Ragland 481 U.S. 221 (1987)

[63] *Id* at 221, 230

or benefits.  Our government already allows some non-profits tax-exemption when they influence legislation and speak directly on politics.  For example, Congress has established and approved Political Action Committees (PAC's)[64] to be exempt from income tax and allows Veteran's Organizations[65] to be tax exempt and enjoy unlimited lobbying.

508(c)(1)(a) FBO's have no annual income tax filing requirement, such as, Form 990.  A 508(c)(1)(a) organization is also not required to keep records, render statements under oath, nor comply with rules and regulations for reporting that the IRS may from time to time prescribe.[66] All non 501(c)(3) FBO organizations are required to file a tax return each year.  If they do not file returns timely the organizations tax exemption is automatically revoked after three years.[67]

Section 508(c)(1)(a) organizations, since they are not of record with the IRS, are not exposed to public scrutiny.  In the case of Section 501(c)(3) entities, all applications and subsequent correspondence are available to any who request it, including those who are opposed or hostile toward religion.[68]

The Religious Freedom Restoration Act (RFRA) applies to 508(c)(1)(a) organizations as equally as a person. RFRA  prohibits Government "from substantially burden[ing] *a person's* exercise of religion even if the burden results from a rule of general applicability" unless the Government "demonstrates that application of the burden to *the person*—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§2000bb–1(a), (b) (emphasis added).  FBO's are unique because furthering their religious "autonomy … often furthers individual religious freedom as well." (quoting *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints* v. *Amos*, 483 U. S. 327, 342 (1987) (Brennan, J., concurring in judgment)).  Not only does RRFA apply to nonprofit corporations, the U.S. Supreme Court held it applies to for-profit corporations. "RFRA was designed to provide very broad protection for religious liberty. By enacting RFRA, Congress went far beyond what this Court has held is constitutionally required."[69] The court held that "Congress provided protection for people like the Hahns and Greens by employing a familiar legal fiction: It included corporations within RFRA's definition of "persons."[70]

### IV. Conclusion

There remains a heavy price for FBO's organizing and operating with 501(c)(3) speech restrictions. Churches and church ministries do not have to live in fear of losing their tax exempt status for speech on leadership, legislation, and politics.  Pastors can speak the truth without compromise.  People do have a choice in how they form their FBO.  What will churches and church ministries do to meet the challenges and increased need to speak the truth without fear or compromise and train Godly leaders consistent

---

[64] *See* reg. section 501(c)(4)
[65] See reg. section 501(c)(19)
[66] *See* reg. section 6033(a)(3).
[67] See Pension Protection Act of 2006, Public Law 109-280
[68] *See* reg. section 6104.
[69]*See Burwell* v. *Hobby Lobby*, 573 U.S.____(2014).  As discussed, n. 3, *supra*, in *City of Boerne* we stated that RFRA, by imposing a least-restrictive-means test, went beyond what was required by our pre-*Smith* decisions.
[70] *Id*

with their beliefs?  Make sure your FBO has a strong and lasting foundation to make a positive and lasting difference.   Make sure your FBO is a 508(c)(1)(a).

# EXHIBIT E

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-232-707**

**Effective Date of Registration:**
February 08, 2023
**Registration Decision Date:**
March 10, 2023

---

### Title

Title of Work: Why All Churches Should Be A 508(C)(1)(A)

### Completion/Publication

Year of Completion: 2015
Date of 1st Publication: May 17, 2015
Nation of 1st Publication: United States

### Author

- Author: Cleveland Futch
  Author Created: text
  Work made for hire: No
  Citizen of: United States
  Year Born: 1948

- Author: Dan Peterson
  Author Created: text
  Work made for hire: No
  Citizen of: United States
  Year Born: 1968

### Copyright Claimant

Copyright Claimant: Cleveland Futch
977 Altadena Dr., Fricrest, WA, 98466, United States

Copyright Claimant: Dan Peterson
3501 S. 38th St., #109, Tacoma, WA, 98409, United States

### Limitation of copyright claim

Material excluded from this claim: photograph(s), artwork

Page 1 of 2

**New material included in claim:**  text

## Rights and Permissions _____

**Organization Name:** Sierra IP Law, PC
**Name:** Mark D Miller
**Email:** ipdocket@sierraiplaw.com
**Telephone:** (559)436-3800
**Address:** Post Office Box 5637
Fresno, CA 93755-5637 United States

## Certification _____

**Name:** Dan Peterson
**Date:** February 08, 2023
**Applicant's Tracking Number:** 14205.03.USC01

**Copyright Office notes:**  Regarding limitation of claim: Deposited work contains only text.

Page 2 of 2

# EXHIBIT F

# FREE YOUR MINISTRY FROM IRS CONTROLS

WWW.HELPINGHANDOUTREACH.ORG



HELPING HAND OUTREACH

## Tired of 501(c)(3) Ministry Restrictions?

✔ Restricted speech

✔ Application for recognition

✔ Federal application fee



✔ IRS application is made public to any person and organization

All 501(c)(3) ministries have waived their rights. By applying for a IRS Determination Letter using form 1023, these ministries are constrained by federal law from free speech.

All 501(c)(3) organizations are prohibited from speaking on politics. Because politics is such a broad term the definition is ever changing and includes most of our social issues.

### 508(c)(1)(a)
### The Answer to Prayer



The 508(c)(1)(a) ministry has no speech restrictions.

A 508(c)(1)(a) is a religious non-profit corporation that is tax exempt, non-reporting, and can give tax deductable receipts for donations.

It is not required to file a tax return nor apply for an IRS Determination letter.

The 508(c)(1)(a) ministry is established and protected under federal law.

Get Started Today!

## What We Do

What can you do to free your ministry? Change direction and be a free 508(c)(1)(a) Ministry. We are ready to help you transition, answer all your questions, and provide support for your ministry.

Each 508(c)(1)(a) includes

1) Articles of incorporation
2) Certificate of incorporation
3) UBI number and SS4 Form with Tax Identification Number
4) Certificate of good standing
5) Charities registration letter listing the 508(c)(1)(a) as a tax exempt organization

## FREE YOUR MINISTRY

### Contact Us Today!

📞 253-459-9553

📧 helpinghandoutreach.org

📧 info@helpinghandoutreach.org

### Visit our social channels:

🔵 facebook.com/helpinghandoutreach

🔵 twitter.com/helphandreach

🔵 youtube.com/helphandoutreach

visit us online: www.helpinghandoutreach.org

 like us on facebook.com/helphandoutreach

Copyright © 2016 HelpingHandOutreach.org

# HOW TO FREE YOUR MINISTRY FROM IRS CONTROLS

The current understanding is, for the most part, limited to IRC Sec. 501. Little known is the law for religious organizations under Sec. 508. These entities may be referred to herein as Faith Based Organizations (FBO). There is little written about the availability of this law as it applies to religious entities. The purpose of this summary is to provide a brief introduction to Sec. 508 for leaders of religious organizations and tax professionals.

Sec. 508 was codified in the Internal Revenue Code (IRC) in order to formally establish the right to "free" exercise of religion which has been a tacit understanding upon which America was founded and governed since before it gained its independence in 1776.[2] An FBO is, by the very nature of its creation, a religious, non-profit, tax-exempt organization.

Throughout this summary you will find links (sources available on our website) to further information, including technical references for your professional advisor to research and for you to refer to as needed. We wish to educate both religious leaders and tax professionals on this widely underutilized tax law. It is generally unknown to tax practitioners simply because law schools and accounting schools do not teach it.

Section 508 refers specifically to "churches" "their integrated auxiliaries" and "conventions or associations of churches."[3] The tax code however does not define these terms. It also does not define the term "religion." These terms have developed meaning through practical application as affirmed by IRS rulings and case law (i.e. law suits between the IRS and not for profit entities).[4] The result is a very broad based meaning for qualifying organizations. For instance, two FBO's that received "Church" status include "The Salvation Army"[5] and "Young Life."[6]

There are several benefits that Sec 508 holds over Sec. 501. The following is a non-exclusive listing of benefits.

1. Filing an application for non-profit status with the IRS is not required.[7] This avoids the burdensome Form 1023 with its $850 filing fee as well as the scrutiny of the IRS upon application. You may recall the 2013 scandal where the IRS attacked conservative groups with long and burdensome approval periods and requirements. (One organization was required to provide 26,000 pages of documents for scrutiny).

2. There is no annual income tax filing requirement such as the Form 990.[8]

3. There is no proscription against political speech from the pulpit as there is when an organization agrees in writing to be subject to such limitations as a result of obtaining certification under Sec 501.[9]

Our political and legal system are seguing toward restrictions of any sort of "hate speech" (read: preaching against any sin specified in scripture such as homosexuality)[10] rendered from the pulpit.

4. Sec. 508 entities, since they are not of record with the IRS, are not exposed to public scrutiny. In the case of Sec. 501, all applications and subsequent correspondence are available to any who request it.[11]

The problem for practitioners and ministries is that the federal income tax laws use the word "church" in many different provisions without defining it.[12] The IRS and various courts have used different approaches to determine whether an organization is a church, but these approaches have been inconsistent.[13] The situation was described several years ago as one that has "puzzled the Service, courts and scholars."[14] The outcome of FBO's relying solely on IRS determination on their tax exempt status has been restrictions and waiving of First Amendment rights.

Sources available on following pages.

visit us online: www.helpinghandoutreach.org

like us on facebook.com/helpinghandoutreach

HELPING HAND
OUTREACH

Copyright © 2016 HelpingHandOutreach.org

# SOURCES

[1]See also reg. section First Amendment of US Constitution. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." See also reg. section 42 U.S.C. § 2000bb, Religious Freedom Restoration Act. "The Congress finds that—
(1) the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution;
(2) laws "neutral" toward religion may burden religious exercise;
(3) governments should not substantially burden religious exercise as surely as laws intended to interfere with religious exercise;
(4) in Employment Division v. Smith, 494 U.S. 872 (1990) the Supreme Court virtually eliminated the requirement that the government justify burdens on religious exercise imposed by laws neutral toward religion; and
(5) the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests."

[2]All other section references are to the Internal Revenue Code of 1986, as amended, and the Treasury regulations promulgated thereunder.

[3]See Blacks Law Dictionary 9th Edition for legal definition of "Free"..:. <1) Having legal and political rights...2) Not subject to the constraint or domination of another...3) Characterized by choice, rather than by compulsion or constraint...4) Unburdened....5) Not confined by force or restraint...6) Unrestricted and unregulated....7) Costing nothing.....>

[4]See also reg. section 508-(c)(l)(a). This exemption and many of the other exemptions discussed herein also apply to "a convention or association of churches" or an "integrated auxiliary" of a church.

[5]See www.t-tlaw.com. "Because of First Amendment religious freedom concerns, Congress has never passed any statute anywhere which defines what a church is (beyond saying "a church or convention or association of churches" which is like saying that the definition of a duck is "one or more ducks"). See also Fordham Law Review Volume 45 Issue 5 1977.

[6]See Rev. Rul. 59-129, 1959-1 C.B. 58, the IRS ruled that The Salvation Army was a church or a convention or association of churches within the meaning of section 170(b)(1)(A)(i). No explanation was provided for the ruling. In 2015 the IRS approved First Cannabis Church Of Indiana as an IRS recognized 501(c)(3) church even though marijuana is classified as an illegal drug by Federal and State law. Also in 2015 the IRS approved Our Lady Of Perpetual Exemption as a IRS recognized 501(c)(3) church to HBOs John Oliver of "Last Week Tonight With John Oliver" even though the entertainer meant it as a joke.

visit us online: www.helpinghandoutreach.org

like us on facebook.com/helphandoutreach

Copyright © 2016 HelpingHandOutreach.org

HELPING HAND OUTREACH

# SOURCES

**PAGE 2 OF 2**

[7]See also reg section 508-(c)(1)(a), also IRS publications 4220, 1818, 557, 526 and Instructions For Form 990.

[8]See. reg. section 1.6033-(a)(3)(a). This filing exemption includes the Form 990 as well as Form 990-N. Section 6033(i). For a discussion of the legislative history of section 6033, see GCM 37116 (1977).

[9]See also reg. section 501-(c)(3) ... "no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

[10]See www.christianpost.com "Tony Miano, currently a pastor and formerly a Los Angeles Deputy Sheriff, was fingerprinted, interrogated, and had DNA samples drawn after speaking on 1 Thessalonians, which mentions "sexual immorality" and cites homosexuality along with "fornication" as examples of what is against "God's law." (2013)

[11]See also reg. section 61.04(a)(1)(a). "If an organization described in section 501 (c) or (d) is exempt from taxation under section 501 (a) for any taxable year or a political organization is exempt from taxation under section 527 for any taxable year, the application filed by the organization with respect to which the Secretary made his determination that such organization was entitled to exemption under section 501 (a) or notice of status filed by the organization under section 527 (i), together with any papers submitted in support of such application or notice, and any letter or other document issued by the Internal Revenue Service with respect to such application or notice shall be open to public inspection at the national office of the Internal Revenue Service."

[12] See Whelan, Charles M., "Church" in the Internal Revenue Code: The Definitional Problems," 45 Fordham L. Rev. 885 (1976) (questioning consistency of use of the word "church" in the code); and Bruce R. Hopkins, The Law of Tax-Exempt Organizations, section 10.3, at 320 (9th ed. 2007) (discussing the inability to provide a formal definition of church).

[13] See, e.g., TAM 200437047 ("both the courts and the Service agree that there is no bright-line test as to whether an organization is a ... church); and Foundation II, 104 A.F.T.R. 2d 2009-5424, 5434 (Cl. Ct. 2009).

[14] Louthian, Robert and Thomas Miller, 1994 EO CPE Text "A. Defining 'Church'— The Concept of a Congregation.



HELPING HAND
OUTREACH

visit us online: www.helpinghandoutreach.org    like us on facebook.com/helpinghandoutreach    Copyright © 2016 HelpingHandOutreach.org All rights reserved.    Copyright © 2016 HelpingHandOutreach.org

# EXHIBIT G



## Certificate of Registration

This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-261-332**

**Effective Date of Registration:**
April 12, 2023
**Registration Decision Date:**
May 15, 2023

## Title

Title of Work: Helping Hands Outreach - Brochure Free Your Ministry

## Completion/Publication

Year of Completion: 2015
Date of 1st Publication: October 15, 2016
Nation of 1st Publication: United States

## Author

- **Author:** Cleveland Futch
  **Author Created:** text
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1948

- **Author:** Dan Peterson
  **Author Created:** text
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1968

## Copyright Claimant

Copyright Claimant: Cleveland Futch
977 Altadena Dr., Fricrest, WA, 98466, United States

Copyright Claimant: Dan Peterson
S. 38th St., #109, Tacoma, WA, 98409, United States

## Rights and Permissions

Page 1 of 2

**Organization Name:** Sierra IP Law, PC
**Name:** Mark D Miller
**Email:** ipdocket@sierraiplaw.com
**Telephone:** (559)436-3800
**Address:** Post Office Box 5637
Fresno, CA 93755-5637 United States

## Certification

**Name:** Dan Peterson
**Date:** April 12, 2023
**Applicant's Tracking Number:** 14205.03.USC04

# EXHIBIT H

 



Download our 508c1a Legal Analysis

Receive your FREE legal analysis "Why All Churches Should be a 508(10)(a)" which includes legislation and case citations.

Why All Churches Should Be A 508(c)(1)(a)

Be A Light To The World

How you form a church or church ministry is critical to what you can do.

How to Start A Church or Faith-Based Organization

Our experienced team can help you set up a Faith-Based Organization (FBO) or amend an existing FBO.

Receive the FREE legal analysis "Why All Churches Should be a 508(c)(1)(a)" which includes legislation and case citations.



Download Free Brochure

Download Free Analysis

## Meet Our Team



Clint Peterson
Founder, BA & MA-Ed Adm

Cleveland Futch
Certified Public Accountant, MBA, JD

Scott Stafne
Attorney, JD, LL.M.

Dave Bedford
Attorney, JD

Tracy Tribbett
Attorney, JD

Teresa Springer
Director of Development

Gary VanLeuthgham
Director of Marketing

## Testimonials

" Helping Hand Outreach was a Godsend. They were there to help us file for our 508 faith based organization, explaining carefully each step of the process, helping us understand the details, long standing law that allows us to register.

Leonard Pearson, Elder
THREE TREE COMMUNITY
CHURCH
Des Moines, WA

" I'm so glad we found Helping Hand Outreach in 2014, now we can rest easy knowing our Church has a solid and lasting foundation.

Pastor Rick Vanil
CHRISTIAN LIFE CHURCH
Poughkeepsie, NY

" Thank you Guys. You answered all our questions and helped our ministries make a difference in our community.

Pastor Jeff Durbin
APOLOGIA CHURCH
Tempe, AZ

" I highly recommend working with Helping Hand Outreach. Don did a great job of setting up my ministry in 2003. Even after all these years they are always there to answer my questions.

Daniel Westard
BEING SALT & LIGHT
MINISTRIES
Apex, SC



How to Start A Church    About    Legal    Donate    Media    Order    My Account

## How to start a 508(c)(1)(a) Church

We are the leader in starting a church and church ministries as 508(c)(1)(a) organizations. A 508(c)(1)(a) is the best way to form a church or church ministry. It is a tax exempt and donations given are tax deductible for donors.



Most organizations starting a new church only form 501(c)(3)'s. Worse, they use inaccurate information to scare people to voluntarily waive important constitutional rights. There is no law that says a church is required to be a 501(c)(3). A church could be organized as a 508(c)(1)(a), 501(c)(3), 501(c)(4), a 501(d), and even a for profit corporation. We don't believe you should be scared in how you form a ministry or bullied into thinking there is only one way.

It does not make faith based organizations more "churchish" to apply for 501(c)(3) status. In fact, if you are approved as a 501(c)(3) church, your letter of determination may be revoked by a government employee for any single 501(c)(3) violation. If this happens, all your donors lose their tax deductible giving as well.

We speak the truth in power, love, and discipline following the biblical model in 2 Timothy 1:7. There is a better way to form your ministry. It is the churches responsibility to speak the truth and develop Godly leaders. If you are starting your own church you have the responsibility to speak the truth without compromise, develop Godly leaders, and be culturally relevant on the issues of today, such as, marriage, and sexuality.

Faith without action is dead (James 2:17). If you believe that your church or church ministry should do more than just pray, do

more than pray that things change, do more than pray for revival, and do more than pray that we get Godly leaders, consider starting a ministry as a 508(c)(1)(a).

## Understand

How you form a church or church ministry is critical to what you can do. Nonprofit organizations are not all the same. Some nonprofits have legal and tax advantages compared to others. Churches and church ministries are not the same as charities; churches have additional Constitutional and Federal Law rights.

**Every organization that applies for 501(c)(3) recognition is required to waive speech and religious rights.**

All 501(c)(3) organizations are prohibited from influencing legislation and political campaigns. As social issues have become political issues, churches and church leaders are increasingly avoiding issues, avoiding taking positions, and selectively addressing Biblical principles and training Godly leaders out of fear of what might happen if they do.

There is no law that prohibits churches from speaking on candidates, politics, or legislation. The 501(c)(3) speech restrictions apply only to corporations that are organized as a 501(c)(3). Churches that believe it is their responsibility to raise and foster Godly leaders in our representative democracy may do so, but not as a 501(c)(3).

## The application restrictions for all 501(c)(3) churches

First, the application for 501(c)(3) "church" status is in direct conflict with the Establishment Clause of the First Amendment. The application requires government to unnecessarily entangle itself with churches in matters of religious speech and religious expression.



Second, all 501(c)(3) organizations have to pay either a $400 or $850 fee. This is in direct conflict with the legal definition of "free" in the First Amendment. It makes no difference if it is a tax or processing fee, money required for consideration of an application for a church is not free.

Third, all 501(c)(3) applications are reviewed and scrutinized by a government employee. IRS employees are often motivated, or pressured, to deny and restrict conservative non-profit application approval.

Fourth, the criteria for determining if a church qualifies as a 501 (c)(3) is vague and capricious. There is no legal definition for the word "church". The IRS, however, has developed and publicized their own criteria they consider for evaluating an application for "church" status. In the IRS's own words, the criteria and requirements vary from application to application. The U.S. Supreme Court has ruled that government rules and laws are void if they are vague.

Fifth, all 501(c)(3) organizations, including churches who apply for "church" status with the IRS, application, application supplements, contact information, address, and information of all board members is open to public inspection to any person or organization that requests it, including those who are hostile toward religion.

## The speech restrictions for all 501(c)(3) churches

All 501(c)(3) organizations, including those formed as churches, have restrictions on free speech. The application must state the ministry will not be involved in attempting to influence legislation or politics in both the state formation documents and the IRS application Form 1023. What exactly does "attempting" mean? If you fail to include the speech restrictions on the state formation documents and IRS Form 1023, your application is denied. Once formed if your ministry has any single violation of attempting to influence legislation or politics, even one that is unintentional, insignificant, or small, it can result in a 501(c)(3) losing tax exempt status and donors tax deductible contributions.

## What comes with a 508(c)(1)(a)?

The 508(c)(1)(a) has none of the 501(c)(3) restrictions. Free your ministry to speak the truth, develop Godly leaders, and be relevant today. Most of all churches need to lead in the call of training and developing leaders in our communities and nation consistent with Biblical beliefs. Every 508(c)(1)(a) comes with following:

- The Articles of Organization
- Certificate of Incorporation
- UBI Number
- SS4 and Tax Identification Number
- Certificate of Existence/Authorization
- Charities registration exemption letter signed by the Secretary of State listing the 508 as an tax exempt organization
- First year registered agent services
- Bylaws template
- Sample first minutes of board meeting

## Analysis

Complete the form below to receive your FREE legal analysis *Why All Churches Should be a 508(c)(1)(a)* which includes legislation and case citations.



Download Your FREE 508 Legal Analysis

Email address | Frist name

Get your FREE copy!





HELPING HAND OUTREACH

How to Start A Church    About    Legal    Donate  Media    Order   My Account



## Advantages of a 508(c)(1)(a)

The Faith Based Organization (FBO) was once a strong influence in our nation and can be again. Every FBO should be free to worship and preach without restriction by government. Something can't be true and false. Either the FBO has the right to free speech or it does not. Take time to review the law , and court cases related , to better understand the rights and benefits of the 508(c)(1)(a) FBO.

The advantages of being 508(c)(1)(a) FBO include rights guaranteed under Federal Law 26 U.S.C. § 6033(a)(3)(a):

1. Tax Exempt, and can give tax deductible receipts for donations.
2. Freedom of Speech, including, but not limited to, politics, referendums, initiatives, and candidates.
3. Mandatory Excepted from reporting (does not file a tax return),
4. Mandatory Excepted from "rendering under oath such statements, make such other returns, and comply with such rules and regulations as the Secretary (IRS) may from time to time prescribe".
5. Created in 1954 through Johnson Amendment
6. Apply using form 1023
7. If approved from IRS
8. Determination letter issued
9. Tax exempt
10. Reporting using form 990
11. Donations tax deductible
12. All IRS docs open to public
13. Restricted speech • Identified in 1986 IRS code
14. No application to IRS required
15. No determination letter issued
16. Non reporting
17. Tax exempt
18. Donations tax deductible
19. Free speech

8 CORINTH



Thank you Dan. You answered all our questions and helped our ministries make a difference in our community.

Jeff Durbin, Pastor "APOLOGIA CHURCH" – Tempe, AZ

**Helping Hand Outreach**
(253) 409-9553
info@helpinghandoutreach.org
https://helpinghandoutreach.org

> Faith Based Organization Formation
> Consulting
> Ordination

**Helping Hand Support Services**
(231) 499-9055
info@helpinghandsupportservices.com
https://helpinghandsupportservices.com

> Corporate Services
> Taxes
> Accounting
> Consulting

**Northwest Corporate Services**
253-444-7123
info@northwestcorporateservices.com
http://northwestcorporateservices.com/

> Registered Agent Services
> Consulting Services

None of the information on the Helping HandOutreach websites should be deemed legal advice or should be acted upon without prior consultation with appropriate professional advisors. Materials prepared by Helping Hand Outreach contained in these pages is copyrighted by Helping Hand Outreach, Inc., 2010-Present. You may not reproduce, republish, distribute, display, perform, modify, transmit, sell, or otherwise use any Content without our express written permission.

Copyright ©2010-Present Helping Hand Outreach · All Rights Reserved
Small Business Websites by 5.12 Design Lab · Admin

Privacy Policy     Terms of Use



HELPING HAND
OUTREACH

How to Start A Church ⌄   About ⌄   Legal ⌄   Donate   Media ⌄   Order   My Account



## Disadvantages of 501(c)(3)

If a Faith Based Organizations (FBO) is organized under section 26 U.S.C. §501(c)(3), that FBO is restrained from speaking on politics. This means the FBO is legally restrained from preaching on political issues. By law there should be no advocating for a position on a referendum, initiative, or political candidate on any level. There are also reporting requirements and costs including accounting and reporting a yearly Form 990.

1) FBO application for a "determination letter" grants authority from the FBO to the IRS for income, expenses, and preaching.

2) *All 501(c)(3) FBO are prohibited from free speech.* By law, a 501(c)(3) FBO is exempt from taxation only if it is "organized and operated exclusively for religious... purposes.... which does not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of (or in opposition to) any candidate for public office." See 26 U.S.C. § 501(c)(3).

The heavy price 501(c)(3) organizations pay is not just waving constitutional rights in formation. Particularly egregious, is agreeing to comply with all future rules and regulations the IRS, not congress, enacts. Many FBO's have realized only too late what they have done. Once you contract with the IRS and waive your rights as a FBO to be a 501(c)(3), you can't argue 1st Amendment Free Speech protection regarding political issues. Over and over again 501(c)(3) FBO have lost this court battle. Why? Because FBO's have the choice to be a 508(c)(1)(a) or 501(c)(3). People and corporations can waive their rights.

3) Look clearly at USC 26 6033a Returns by Exempt Organizations. All tax exempt non profits excluding the 508(c)(1)(a) "shall file an annual return, stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the internal revenue laws as the Secretary may by forms or regulations prescribe, and shall keep such records, render under oath such statements, make such other returns, and comply with such rules and regulations as the Secretary may from time to time prescribe"

4) What is the penalty? The penalty for a 501(c)(3) FBO that violates federal law political restrictions is losing tax exempt status. In addition all donations given to that FBO by any taxpayer will no longer be tax deductible. See BRANCH MINISTRIES VS IRS 211 F.3d 137 (D.C. Cir. 2000). and JACK LANE TAYLOR VS IRS 2000



*Helping Hand Outreach was a Godsend. They were there to help us file for our 508 faith based organization, explaining carefully each step of the process, helping us understand the simple, long standing law that allows us to register as a tax exempt charity, and doing all the footwork for us. Thank you Helping Hand! You were there when we needed you!*

**Leonard Pearson, Elder, "THREE TREE COMMUNITY CHURCH" – Des Moines, WA**

### Helping Hand Outreach

(253) 459-0653
info@helpinghandoutreach.org
https://helpinghandoutreach.org

> Faith-Based Organization Formation
> Consulting
> Ordination

### Helping Hand Support Services

(253) 459-9553
info@helpinghandoutreach.com
https://helpinghandoutreach.com

> Corporate Services
> Taxes
> Accounting
> Consulting

### Northwest Corporate Services

253-444-7325
info@northwestcorporateservices.com
http://northwestcorporateservices.com/

> Registered Agent Services
> Consulting Services

None of the information on the Helping HandOutreach websites should be deemed legal advice or should be acted upon without prior consultation with appropriate professional advisors. Materials prepared by Helping Hand Outreach contained in these pages is copyrighted by Helping Hand Outreach, Inc., 2010-Present. You may not reproduce, republish, distribute, display, perform, modify, transmit, sell, or otherwise use any Content without our express written permission.

Copyright ©2010-Present Helping Hand Outreach · All Rights Reserved
Small Business Websites by 5:12 Design Lab · Admin

Privacy Policy    Terms of Use



How to Start A Church ∨    About ∨    Legal ∨    Donate    Media ∨    Order    My Account



## When to use a 501(c)(3)

Ministries that will rely on grant money should keep or establish a 501(c)(3). Many Faith Based Organizations (FBO) have outreach programs that utilize grant money to help provide food, shelter, or education to those in need. In these cases a 501(c)(3) organization is required to apply and maintain reporting requirements for the grant. If your FBO fits this description, we can show you how your FBO can have both a 508(c)(1)(a) and a 501(c)(3) and how these organizations interact.

*I'm so glad we found Helping Hand Outreach in 2014, now we can rest easy knowing our Church has a solid and lasting foundation.*

**Pastor Bob Ilardi, "CHRISTIAN LIFE CHURCH"** – Poughkeepsie, NY

### Helping Hand Outreach

(353) 459-0553
info@helpinghandoutreach.org
https://helpinghandoutreach.org

> Faith Based Organization Formation
> Consulting
> Ordination

### Helping Hand Support Services

(253) 459-9559
info@helpinghandoutreach.com
https://helpinghandoutreach.com

> Corporate Services
> Taxes
> Accounting
> Consulting

### Northwest Corporate Services

253-444-7125
info@northwestcorporateservices.com
http://northwestcorporateservices.com/

> Registered Agent Services
> Consulting Services

None of the information on the Helping HandOutreach websites should be deemed legal advice or should be acted upon without prior consultation with appropriate professional advisors. Materials prepared by Helping Hand Outreach contained in these pages is copyrighted by Helping Hand Outreach, Inc., 2010-Present. You may not reproduce, republish, distribute, display, perform, modify, transmit, sell, or otherwise use any Content without our express written permission.

Copyright ©2010-Present Helping Hand Outreach · All Rights Reserved
Small Business Websites by 5.12 Design Lab · Admin

Privacy Policy     Terms of Use



HELPING HAND
OUTREACH

How to Start A Church    About    Legal    Donate    Media    Order    My Account



## Organizing FAQs

What is a Faith Based Organization?

A Faith Based Organization is a corporation whose primary purpose or activities are religious or religiously motivated.

Can anyone set up a 508?

Yes!

Who is a 508 for?

For any person who wants to set up a Faith Based Organization whose primary purpose or activities are religious or religiously motivated.

How is the 508 formed?

Once you have chosen your initial board of directors, we take care of the rest.

Are there different types of 508's?

Yes. A 508 may be a 1) church or, an 2) association of churches or, 3) an integrated auxiliary of a church.

A 508 is not a

- PMA
- SSM
- 508 Trust

Can a 508 be a parent FBO for other FBO's?

Yes. Many times there is a group of like-minded FBO's that want to share an affiliation but not give up their independence or local control.

May a 508 ordain and license it's own leaders?

Yes. A 508 FBO may ordain and license it's own leaders.

What comes with the 508 filing?

- The Articles of Organization
- Certificate of Incorporation
- UBI Number
- SS4 and Tax Identification Number
- Certificate of Existence/Authorization
- Charities registration exemption letter signed by the Secretary of State listing the 508 as an tax exempt organization
- First year registered agent services
- Bylaws template
- Sample first minutes of board meeting

How long does it take to setup a 508?

Within 20 days.

Does the registered agent have to sign the 508 articles?

Yes, but the signature does not have to be original.

Who serves as the registered agent?

Our registered agent services is offered by Northwest Corporate Services. The first year of registered agent service is included with the 508 filing. After the first year Northwest Corporate Services charges a $100 per year fee to serve as the registered agent.

Is a Washington Corporation good for my state?

Yes! Washington Corporation's work in all 50 states. If used in another state you may need to register as a foreign corporation depending on your states laws and the type of activity.

Why incorporate your Faith Based Organization in Washington?

Washington is a very popular location for non-profit organizations because we have both Non-Profit Registration and the Charities Program administered by the same agency, the Secretary of State. Many states restrict religious expression. Washington allows religious organization's to exercise religion equal to what a natural man or woman can do.

Benefits of a Washington Charity?

Washington is unique in offering a charities registration exemption letter to FBO's. The letter acknowledges that FBO's do

not have to report for any fund raising. The Secretary of State lists the FBO as tax exempt and able to raise money from the public.

What are the annual fees to keep my Washington Non Profit active?

$10 a year in Washington. California is $800.

*I highly recommend working with Helping Hand Outreach. Dan did a great job of setting up my ministry in 2015. Even after all these years they are always there to answer my questions.*

**Daniel Woodard, "BEING SALT & LIGHT MINISTRIES" – Apex, SC**

**Helping Hand Outreach**

(253) 459 0553
info@helpinghandoutreach.org
https://helpinghandoutreach.org

> Faith Based Organization Formation
> Consulting
> Ordination

**Helping Hand Support Services**

(253) 459 0553
info@helpinghandoutreach.com
https://helpinghandservices.com

> Corporate Services
> Taxes
> Accounting
> Consulting

**Northwest Corporate Services**

253-444-7125
info@northwestcorporateservices.com
http://northwestcorporateservices.com/

> Registered Agent Services
> Consulting Services

None of the Information on the Helping HandOutreach websites should be deemed legal advice or should be acted upon without prior consultation with appropriate professional advisors. Materials prepared by Helping Hand Outreach contained in these pages is copyrighted by Helping Hand Outreach, Inc., 2010-Present. You may not reproduce, republish, distribute, display, perform, modify, transmit, sell, or otherwise use any Content without our express written permission.

Copyright ©2010-Present Helping Hand Outreach - All Rights Reserved
Small Business Websites by S.13 Design Lab - Admin

Privacy Policy    Terms of Use

# EXHIBIT I



# Certificate of Registration

This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TX 9-260-500**

**Effective Date of Registration:**
April 11, 2023
**Registration Decision Date:**
May 12, 2023

---

## Title

**Title of Work:** Welcome - Helping Hand Outreach

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** May 17, 2015
**Nation of 1st Publication:** United States

## Author

- **Author:** Dan Peterson
  **Author Created:** text
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1968

## Copyright Claimant

**Copyright Claimant:** Dan Peterson
3501 S. 38th St, #109, Tacoma, WA, 98409

## Limitation of copyright claim

**Material excluded from this claim:** photograph(s), artwork

**New material included in claim:** text

## Rights and Permissions

**Organization Name:** Sierra IP Law, PC
**Name:** Mark D Miller
**Email:** ipdocket@sierraiplaw.com
**Telephone:** (559)436-3800
**Address:** Post Office Box 5637

Page 1 of 2

Fresno, CA 93755-5637 United States

## Certification

| | |
|---|---|
| **Name:** | Dan Peterson |
| **Date:** | April 11, 2023 |
| **Applicant's Tracking Number:** | 14205.03.USC02 |

# EXHIBIT J



Date


BOARD NAME HERE

MINISTRY NAME HERE
ADDRESS LINE 1
ADDRESS LINE 1

Hello NAME:

Your church ministry has been formed. Enclosed are the organization documents filed with the Washington Secretary of State. The documents include the following: the Certificate of Incorporation, the Certificate of Authorization (good standing), the Articles of Incorporation, and the SS4 form with EIN from the Internal Revenue Service. The Charities Registration Exemption (CREL) receipt and filing is also attached. The CREL is not used for opening a bank account.

To open a bank account inform the bank that you would like to open a nonprofit checking account. Specifically, it is a church ministry account. The ministry was formed in Washington State but will operate in STATE. It is common for ministries to be formed in one state and operate in other states or internationally. Since the ministry is not "doing business" it is not required to register in your state as a foreign corporation unless you apply for a property tax exemption, have employees, or sell goods and services on a regular basis.

Your organization needs to be renewed each year, the once a year state renewal fee and registered agent fee is RENEWAL FEE. Registered agent services are offered by our affiliate Northwest Corporate Services. We can help you with the renewal process when that time comes. If you need additional assistance and support, we can help. If you have any questions, please don't hesitate to call.


May the Lord bless you and keep you,


Dan Peterson,
Helping Hands Support Services

©HELPING HAND OUTREACH 2015

# EXHIBIT K

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-399-754

**Effective Date of Registration:**
May 29, 2024
**Registration Decision Date:**
June 13, 2024

---

**Title**

Title of Work:  Helping Hands Outreach -  Cover Letter

---

**Completion/Publication**

Year of Completion:  2015
Date of 1st Publication:  August 15, 2015
Nation of 1st Publication:  United States

---

**Author**

- Author:  Dan Peterson
  Author Created:  text
  Work made for hire:  No
  Citizen of:  United States
  Year Born:  1968

---

**Copyright Claimant**

Copyright Claimant:  Dan Peterson
S. 38th St., #109, Tacoma, WA, 98409, United States

---

**Rights and Permissions**

Organization Name:  Sierra IP Law, PC
Name:  Mark D Miller
Email:  ipdocket@sierraiplaw.com
Telephone:  (559)436-3800
Address:  Post Office Box 5637
Fresno, CA 93755-5637 United States

---

**Certification**

---

Name:                      Dan Peterson
Date:                      May 29, 2024
Applicant's Tracking Number:   14205.03.USC11

# EXHIBIT L



To: BOARD NAME HERE                                                          DATE

Re: MINISTRY NAME HERE

As a 508(c)(1)(a) organization MINISTRY NAME HERE is tax exempt from federal and state income tax and donations are tax deductible for donors.  26 USC Section 508(c)(1)(a) of U.S. Federal Law requires all organizations who want tax exempt status to first apply and then be approved by the IRS, however, this requirement is "mandatory excepted" for all churches, integrated auxiliaries of churches, and associations of churches in the law.

The IRS clearly states in Publication 557 "although a church, its integrated auxiliaries, or convention or association of churches *are not required to file Form 1023 to be exempt from federal income tax or to receive tax deductible contributions*, the organization may find it advantageous to obtain recognition of exemption".  In other words, it is clearly optional and not required for churches, integrated auxiliaries, and association of churches to apply for tax exempt status.  The only reason to apply is if you want to be listed on the IRS database with other tax exempt organizations.

In Publication 526, the IRS states "You can deduct your contributions only if you make them to a qualified organization.  *To become a qualified organization most organizations other than churches* and governments..., must apply".

The IRS application for recognition of tax exempt status as a 501(c)(3) is Form 1023.  The instructions for Form 1023 state on the bottom right corner in small print, "Form 1023 not necessary.  *The following types of organizations may be considered tax exempt under Section 501(c)(3) even if they do not file Form 1023.  Churches, integrated auxiliaries of churches, and conventions and associations of churches*".

MINISTRY NAME HERE is organized as a 508(c)(1)(a) Church.  As long as it continues to operate as a church, its tax exemption and donations given shall remain in perpetuity.

Kind regards,


Dan Peterson, Founder and Head of Operations

©HELPING HAND OUTREACH 2015



3501 S 38th St #109 Tacoma, WA 98409
Tel: (253) 459-9553 ● Fax: (253) 503-0244 ● HELPINGHANDOUTREACH.ORG

# EXHIBIT M

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-399-797

**Effective Date of Registration:**
May 29, 2024
**Registration Decision Date:**
June 13, 2024

**Title** _____

Title of Work: HHO Explain 508 Tax Exemption Letter

**Completion/Publication** _____

Year of Completion: 2016
Date of 1st Publication: December 20, 2016
Nation of 1st Publication: United States

**Author** _____

•    Author: Dan Peterson
Author Created: text
Work made for hire: No
Citizen of: United States
Year Born: 1968

**Copyright Claimant** _____

Copyright Claimant: Dan Peterson
S. 38th St., #109, Tacoma, WA, 98409, United States

**Rights and Permissions** _____

Organization Name: Sierra IP Law, PC
Name: Mark D Miller
Email: ipdocket@sierraiplaw.com
Telephone: (559)436-3800
Address: Post Office Box 5637
Fresno, CA 93755-5637 United States

**Certification** _____

| Name: | Dan Peterson |
| Date: | May 29, 2024 |
| Applicant's Tracking Number: | 14205.03.USC12 |

# EXHIBIT N

# BYLAWS
## OF
## "MINISTRY NAME HERE"

### INTRODUCTION

Foremost in the operation of this Corporation and its Bylaws is the Word of God as taught in Old and applied in the New Testaments of the Holy Bible. All provisions herein are declared to be subject to the Word of God which is to every possible extent incorporated herein by reference as a whole and unless otherwise stated to be found in the New King James Version, or other versions of the Holy Bible generally accepted among Bible Believing congregations, churches or fellowships throughout this nation, or the reading together of these versions to produce an understanding of the Truth of the sayings of God to men as found in the Holy Bible.

### ARTICLE I. NAME

1.1 Name

The name of the organization shall be "MINISTRY NAME HERE" (hereinafter spoken of as the ministry)

1.2 Duration

It's duration is to be perpetual

### ARTICLE II. OFFICES

2.1 Location

The principal office and place of the corporation shall be located at "INSERT ADDRESS HERE". The corporation may have such other offices, either within or without the State of Washington, as the Board may designate or as the business of the corporation may require from time to time.

### ARTICLE III. PURPOSE

3.1 Purpose

The ministry is organized under the Washington State Non Profit Corporations Act as a Church for the purpose set forth in the following mission statement: The purpose and mission of the ministry is 1) to promote Christian doctrines; 2) to establish and oversee places of worship; 3) to evangelize worldwide; 4) support missionary activities, license and ordain ministers of the gospel; 5) the preservation of the truth; 6) Train, develop, and support leaders in our community and nation as called for in our beliefs, and 7) to engage in activities necessary for the accomplishment of the purpose.

### ARTICLE IV. GOVERNING AUTHORITY

4.1 Authority

The Statement of Faith does not exhaust the extent of our faith. The Bible itself, as the inspired and infallible Word of God that speaks with final authority concerning truth, morality and the proper

Copyright © HELPING HAND OUTREACH 2019

conduct of mankind, is the sole and final source of all that we believe.  For purposes of Church doctrine, practice, policy and discipline, our Governing Board is the church's final interpretive authority on the Bible's meaning and application.

The governing board may appoint other leaders as required to assist in spiritual oversight of geographic areas or ministries.

4.2 General Powers

The above-named Religious Corporation, shall, for the purpose of the non-profit corporate organization, have the power to contract in the same manner and to the same extent as natural men and women, and to create and/or accept local churches within the umbrella of this Church pursuant to the authority of a majority vote of the Governing Board.

In all matters and proceedings whatever, the organization herein named shall have authority to borrow money and to give promissory notes therefore, and to secure the payment of the same by mortgage or other lien upon property, real and personal; to buy, sell, lease, mortgage and in every way deal in real and personal property in the same manner as a natural person may.

The ministry may bring or defend actions on behalf of the corporation, any of its members or affiliate entities, or any of the persons sought to be protected by the corporation's mission in any court or tribunal in the world.

The ministry also reserves to itself the right to fund such litigation and/or lobbying and/or advertising as the Governing Board determines will best promote the strategic implementation of the corporation's mission.

The ministry further reserves all authority granted in the Washington Nonprofit Corporation Act Including, but not limited to RCW 24.03 as well as all rights guaranteed in  Federal Law through the First Amendment, United States Code (U.S.C.) Title 26 § 508 and § 6033(a) (3), and the Religious Freedom Restoration Act 42 U.S.C. § 2000bb.

## ARTICLE V. GOVERNING DOCUMENTS

5.1 Governing Documents

The governing documents of the ministry are the Articles of Incorporation and Bylaws. The Articles of Incorporation take precedence over the Bylaws. No amendments or repeal thereof shall be made to the Articles of Incorporation as adopted except with two-thirds vote of the governing board. Proposed amendments shall be within the guiding principles set forth in Scripture. The Bylaws of the ministry or any portions thereof, may be amended or repealed by two-thirds vote of the governing board.

5.2 Public Inspection of Documents

The Bylaws and Articles of Incorporation shall be kept at the principal place of business or registered agent address. All other records of accounts and finances, minutes of the proceedings of its Boards and any minutes which may be maintained by committees of the Board; records of the names and

Copyright © HELPING HAND OUTREACH 2019

post office addresses of its officers and Directors, and such other records as may be necessary or advisable are protected under The First Amendment, 26 U.S.C. § 508, 26 U.S.C. § 6033 (a) (3), and 42 U.S.C. § 2000. All such records shall not be open for public inspection.

## ARTICLE VI. STATEMENT OF FAITH

### 6.1 Statement of Faith

The Statement of Faith does not exhaust the extent of our faith. The Bible itself, as the inspired and infallible Word of God that speaks with final authority concerning truth, morality, and the proper conduct of mankind, is the sole and final source of all that we believe. For purposes of Church doctrine, practice, policy and discipline our Governing Board is the church's final interpretive authority on the Bible's meaning and application.

## ARTICLE VII. CHURCH BOARD OF DIRECTORS

### 7.1 General Powers

The affairs of the corporation shall be managed by the Board of Directors.

### 7.2.1 Directors

The Corporation shall consist of no fewer than 3 Directors. The number of Directors may be changed from time to time by amendment to these Bylaws, provided that no decrease in the number shall have effect of shortening the term of any incumbent Director.

### 7.2.2 Names of Founding Directors

The Founding Directors are 1) "INSERT NAME", President; 2) "INSERT NAME", Director; 3) "INSERT NAME", Director. The Founding Directors named in the Articles of Incorporation shall serve until the first annual meeting of the Board. The President shall have his/her/her position perpetually and may not be voted out of office by successor Directors or, if applicable, members.

### 7.2.3 Chairman of Board of Directors, President (Pastor)

The presiding Chairman of the Board of Directors, President (Pastor), hereinafter "President", shall have his/her position in perpetuity and may not be voted out of his/her position or office by the Board of Directors nor by the members if applicable. No Board of Directors decision shall become a corporate act without approval from the Chairman of the Board of Directors, President (Pastor). The office of the Chairman of the Board shall at all times be held by the same single person as the President. Any successor to the President shall only come into existence at the appointment of the existing President who may appoint his/her successor to take office in accordance with the written instructions of the then existing President. In the event that the existing President should become unable to continue in the office of the Chairman of the Board and be unable to appoint a successor President, then and in that event a successor President shall be elected by a majority of the remaining Directors.

### 7.2.4 Successor Directors

The Successor Directors shall be appointed each year at the annual meeting of the Board by the President.

7.3 Qualifications

Directors must subscribe to the Ministry's Mission Statement and Statement of Faith and be members of the ministry. Directors may have such other qualification as the Board may prescribe by amendment to these Bylaws.

7.4 Directors as Elder

The Directors hereinafter named and wherever the word "Director" shall appear in any corporate document, shall be taken to refer to and mean the word "Elder" as defined in Chapter One of the Epistle to Titus in the New Covenant of the Holy Bible. The initial Directors (Elders) shall be the following persons have been identified in the Amended Articles of Incorporation, and such other persons as may be determined from time to time by appointment of the Chairman of the Board of Directors, President (Pastor) as hereinafter described.

7.5 Vacancies

Vacancies and newly created Directors shall be filled by appointment of the Chairman of the existing members of the Board of Directors and each person so appointed shall be a Director until his/her successor is appointed in like manner.

7.6 Meetings of the Board of Directors

The Board of Directors of the Corporation may hold meetings, both regular and special, either within or without the state of incorporation.

Regular meetings of the Board of Directors may be held without notice at such time and at such place as shall from time to time be determined by the Chairman of the Board.

Special meetings of the Board shall be called by the Chairman of the Board without necessity of any prescribed notice period.

At all meetings of the Board at least two-thirds of the Directors in office shall be necessary to constitute a quorum for the transaction of business, and the acts of a majority of the Directors present at a meeting at which a quorum is present when approved by the President (Pastor) Chairman of the Board shall be the acts of the Board of Directors, except as may be otherwise specifically provided by statute or these Bylaws.  One or more Directors may participate in a meeting of the Board by means of a conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other. If a quorum shall not be present at any meeting of Directors, the Directors present thereat may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. No meeting of the Board of Directors shall take place without the Chairman of the Board of Directors present.

7.7 Regular & Special Meetings

Copyright © HELPING HAND OUTREACH 2019

The Board may specify the date, time and place for holding regular meetings without other notice. These Bylaws contemplate that Directors may attend any meeting electronically or virtually through the internet.

7.8 Meetings by Telephone or Electronically

Members of the Board or any committee designated by the Board may participate in a meeting of such Board or committee by means of a conference telephone or electronic communications equipment by means of which all persons participated in the meeting can hear each other the same time. Participation by such means shall constitute presence in person at a meeting.

7.9 Waiver of Notice

Whenever any notice is required to be given to an Director under the provisions of these Bylaws, the Articles of Incorporation or applicable Washington law, a waiver thereof in the form of a record, including, without limitation, an electronic transmission from the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice. Neither the business to be transacted nor the purpose of any regular or special meeting of the Board need be specified in the waiver of notice of such meeting.

7.10 By Attendance

The attendance of a Director at a meeting shall constitute a waiver of notice of such meeting, except where a Director attends a meeting for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened.

7.11 Quorum

A majority of the number of Directors fixed by or in the manner provided by these Bylaws shall constitute a quorum for the transaction of business at a Board meeting. If a quorum is not present at a meeting, a majority of the Director present may adjourn the meeting from time to time without further notice.

7.12 Manner of Acting

The act of the majority of the Directors present at a meeting at which there is a quorum shall be the act of the Board, unless the vote of a greater number is required by these Bylaws, the Articles of Incorporation or applicable Washington law.

7.13 Presumption of Assent

A Director of the corporation present at a Board meeting at which action on any corporate matter is taken shall be presumed to have assented to the action taken unless his/her or her dissent or abstention is entered in the minutes of the meeting, or unless such Director files a written dissent or abstention to such action with the person acting as secretary of the meeting before the adjournment thereof, or forwards such dissent or abstention by registered mail to the Secretary of the corporation immediately after the adjournment of the meeting. Such right to dissent or abstain shall not apply to a Director who voted in favor of such action.

7.14 Action by Board Without Meeting

Copyright © HELPING HAND OUTREACH 2019

Any action which could be taken at a meeting of the Board may be taken without a meeting if a consent in the form of a record, which consent clearly sets forth the action to be taken, is executed by all the Directors. Any such record shall be inserted in the minute book as if it were the minutes of a Board meeting. For purpose of this 7.15, record means information inscribed on a tangible medium or contained in an electronic transmission.

## 7.15 Resignation

Any Director may resign at any time by delivering written notice to the President or the Secretary at the registered office of corporation, or by giving oral or written notice at any meeting of the Directors. Any such resignation shall take effect at the time specified therein, or if the time is not specified, upon delivery thereof and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

## 7.16 Removal

One or more Directors (including the entire Board) may be removed from office, with or without cause, by the President.

## 7.17 Vacancies

A vacancy in the position of Director may be filled by appointment from the President.

## 7.18 Board Committees

### 7.18.1 Standing or Temporary Committees

The Board of Directors, by resolution adopted by a majority of the Directors in office, may designate and appoint one or more standing or temporary committees, each of which shall consist of two or more Directors. Such committees shall have and exercise the authority of the Directors in the management of the corporation, subject to such limitations as may be prescribed by the Board and by applicable Washington law. Except that no committee shall have the authority to: (a) amend, alter or repeal these Bylaws; (b) elect, appoint or remove any member of any other committee or any Director or officer of the corporation; (c) amend the Articles of Incorporation; (d) adopt a plan of merger or consolidation with another corporation; (e) authorize the sale, lease, or exchange of all or substantially all of the property and assets of the corporation not in the ordinary course of business; (f) authorize the voluntary dissolution of the corporation or revoke proceedings therefor; (g) adopt a plan for the distribution of the assets of the corporation; or (h) amend, alter or repeal any resolution of the Board which by its terms provides that shall not be amended, altered or repealed by a committee. The designation an appointment of any such committee and the delegation thereto of authority shall not operated to relieve the Board or any individual Director of any responsibility imposed upon it, him or her by law.

### 7.18.2 Quorum; Manner of Acting

A majority of the number of Directors composing any committee shall constitute a quorum, and the act of a majority of the members of a committee present at a meeting at which a quorum is present shall be the act of the committee.

Copyright © HELPING HAND OUTREACH 2019

7.18.3 Resignation

Any member of any committee may resign at any time by delivering written notice thereof to the President, the Secretary or the chairman of such committee, or by giving oral or written notice at any meeting of such committee. Any such resignation shall take effect at the time specified therein or, if the time is not specified, upon delivery thereof and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

7.18.4 Removal of Committee Member

The Board, by resolution adopted by a majority of the Directors in office, may remove from office any member of any committee elected or appointed by it.

## ARTICLE VIII CHURCH OFFICERS

8.1 Number of Qualifications

The officers of the corporation shall be a President, a Vice President, a Secretary and a Treasurer, each of whom shall be appointed by the Chairman of the Board. Other officers and assistant officers may be appointed by the President, such officers and assistant officers to hold office for such period, have such authority and perform such duties as are provided in these Bylaws or as may be provided by resolution of the Board. Any officer may be assigned by the Board any additional title that the Board deems appropriate. Any two or more offices may be held by the same person, except the offices of President and Secretary. All officers must be Directors of the corporation.

8.2 Election and Term Office

The officers of the corporation shall be appointed by the Board of Directors. Unless an officer dies, resigns, or is removed from office, he or she shall hold office until his/her or her successor is appointed.

8.3 Resignation

Any officer may resign at any time by delivering written notice to the President, the Vice President, the Secretary or the Board, or by giving oral or written notice at any meeting of the Board. Any such resignation shall take effect at the time specified therein or, if the time is not specified, upon delivery thereof and, unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective.

8.4 Removal

Any officer or agent appointed by the Board may be removed by the affirmative vote of at least a majority of the Board whenever in its judgment the best interest of the corporation would be served thereby, but such removal shall be without prejudice to the contract rights, if any, of the person so removed. Any such action taken must also include approval of Chairman of the Board to be valid. Any individual Officer may be removed from office by the Chairman of the Board without assigning any cause whatsoever. In case one or more Directors be so removed, new Directors may be appointed at the same meeting or as the Chairman of the Board deems appropriate.

8.5 Vacancies

Copyright © HELPING HAND OUTREACH 2019

A vacancy in any Officer's position created by the death, resignation, removal or disqualification, creation of a new Officer's position or any other cause may be filled by the Board.

The Officers of the Corporation shall be a President (Pastor), Vice President, a Secretary and a Treasurer. The President (Pastor) Chairman of the Board may also choose additional Vice Presidents and one or more Assistant Secretaries and Assistant Treasurers.

## 8.6 President (Pastor)

The President shall be the chief executive officer of the corporation, shall supervise and control all of the assets, business and affairs of the corporation. The President shall preside over meetings of the Board. The President may sign deeds, mortgages, bonds, contracts, or other instruments, except when the signing and execution thereof have been expressly delegated by the Board or by these Bylaws to some other officer or agent of the corporation or are required by law to be otherwise signed or executed by some other officer or in some other manner. In general, the President shall perform all duties incident to the office of President and such other duties as are assigned to him or her by the Board from time to time. The President may appoint such other officers and agents as he/she shall deem necessary who shall hold their offices for such duties as shall be determined from time to time by the President.

## 8.7 Vice-President (Assistant Pastor)

Vice President(s) shall assist the President, or the Assistant Pastor, as the case may be, in any and all duties deemed necessary and appropriate by the President. The duties of the Vice President(s) shall be known as and be taken to be such as the term "Deacon" as described in the New Covenant of the Holy Bible.

## 8.8 Secretary & Assistant Secretaries

The Secretary shall attend all meetings of the Board of Directors, whether in person or by conference call or video conference or any other workable means, and record all of the proceedings of the Board of Directors in a book to be kept for that purpose and shall perform other duties as assigned. He/she shall give, or cause to given, notice of all meetings of the Board of Directors President under whose supervision he/she shall be.

## 8.9 Treasurer & Assistant Treasurer

The Treasurer shall have the custody of the corporate funds and securities donated to the Corporation and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Corporation and shall deposit all monies and other valuable effects in the name and to the credit of the Corporation in such depositories as may be designated by the Board.

He/she shall disburse the funds of the corporation as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the Board, at its meetings, or when the Board so requires, an account of all his/her transactions as Treasurer and of the financial conditions of the Corporation.

If required by the Board, he/she shall give the Corporation a bond in such sum and with such surety or sureties as shall be satisfactory to the Board for the faithful performance of the resignation,

Copyright © HELPING HAND OUTREACH 2019

retirement or removal from office, of all books, papers, vouchers, money and other property of whatever kind in his/her possession or under his/her control belonging to the Corporation.

The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers, in the order determined by the Board, shall, in the absence or disability of the Treasurer, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and exercise the powers of the treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

8.10 Salaries

The salaries, if any, of the officers and agents shall be fixed by the President.

## ARTICLE IX. INTERESTS OF DIRECTORS OR OFFICERS

9.1 Conflict of Interest

Directors and officers shall disclose to the Board any financial interest which the Director or officer directly or indirectly has in any person or entity which is a party to a transaction under consideration by the Board.

9.2 Review of Certain Transactions

Prior to entering into any compensation agreement, contract for goods or services, or any other transaction with any person who is in a position to exercise influence over the affairs of the corporation, the Board shall establish that the proposed transaction is reasonable when compared with a similarly-situated organization for functionally comparable positions, goods or services rendered.

## ARTICLE X. MARRIAGE DEFINED

10.1 Marriage Defined

We believe that term "marriage" has only one meaning and that is marriage sanctioned by God which joins one man and one woman in a single, exclusive union, as delineated in scripture. We believe that God intends sexual intimacy to only occur between a man and a woman who are married to each other. We believe that God commanded that no intimate sexual activity be engaged in outside of marriage between a man and a woman. We believe that any form of sexual immorality, such as adultery, fornication, homosexuality, bisexual conduct, bestiality, incest, pornography or any attempt to change one's sex, or disagreement with one's biological sex, is sinful and offensive to God. We believe that in order to preserve the function and integrity of the church as the local Body of Christ, and to provide a biblical role model to the church members and the community, it is imperative that all persons employed by the church in any capacity, or who serve as volunteers, should abide by and agree to this Statement on Marriage and Sexuality and conduct themselves accordingly. We believe that God offers redemption and restoration to all who confess and forsake their sin, seeking His mercy and forgiveness through Jesus Christ. We believe that every person must be afforded compassion, love, kindness, respect and dignity. Hateful and harassing behavior or attitudes directed toward any individual are to be repudiated and are not in accord with scripture nor the doctrines of the church.

Copyright © HELPING HAND OUTREACH 2019

## ARTICLE XI. ADMINISTRATIVE AND FINANCIAL PROVISIONS

**11.1 Loans**

No loans shall be contracted on behalf of the corporation and evidences of indebtedness shall be issued in its name unless authorized by a resolution of the Board. Such authority may be general or confined to specific instances.

**11.2 Loans or Extensions of Credit to Officers and Directors**

No loans shall be made and no credit shall be extended by the corporation to its Officers or Directors.

**11.3 Checks, Drafts, Etc**

All checks or demands for money and notes of the Corporation shall be signed by such officer or officers or such other person or persons as the Chairman of the Board of Directors may from time to time designate.

**11.4 Deposits**

All funds of the corporation not otherwise employed shall be deposited from time to time to the credit of the corporation in such banks, trust companies or other depositories as the Board may select.

**11.5 Books and Records**

The corporation shall keep at its principal or registered office copies of its current Articles of Incorporation and Bylaws. All other records of accounts and finances, minutes of the proceedings of its Boards and any minutes which may be maintained by committees of the Board; records of the names and post office addresses of its officers and Directors, and such other records as may be necessary or advisable are protected under The First Amendment, 26 U.S.C. § 508, 26 U.S.C. § 6033 (a)(3), and 42 U.S.C. § 2000. All such records shall not be open for public inspection.

**11.6 Fiscal Year**

The fiscal year of the Corporation shall be fixed by resolution of the Board.

**11.7 Annual Report**

The President and Treasurer shall present annually to the Directors a report, showing in appropriate detail, as they are relevant, the following:

a) The assets and liabilities, including trust funds of the Corporation as of the end of the immediately preceding fiscal year.

b) The principal changes in assets and liabilities including trust funds during and immediately preceding year.

c) The revenue or receipts of the Corporation for the immediately preceding year, including separate data for each trust fund held by or for the Corporation.

d) The expenses or disbursements for the immediately preceding year, including separate data for each trust fund held by or for the Directors.

Copyright © HELPING HAND OUTREACH 2019

The details of the report may vary from year to year based on the needs of the ministry and the Board.

## ARTICLE XII. INDEMNIFICATION AND INSURANCE
### INDEMNIFICATION OF DIRECTORS, OFFICERS AND OTHER PERSONS

12.1 The Corporation shall advance necessary funds or indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the Corporation) by reason of the fact that he/she is or was a Director or officer of the Corporation, or is or was serving at the request of the Corporation as a Director or officer of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorney fees) judgments, fines and amounts paid in settlement actually and reasonable cause to believe his/her conduct was unlawful. The termination of any action, suit or proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the person did not act in good faith and in a manner which he/she reasonably believed to be in or not opposed to the best interests of the Corporation, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his/her conduct was unlawful.

12.2 The Corporation shall advance funds or indemnify and person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that he/she is or was a Director or officer of the Corporation, or is or was serving at the request of the Corporation, joint venture, trust or other enterprise against expense (including attorneys fees) actually and reasonably incurred by him in connection with the defense or settlement of such action or suit if he/she acted in good faith and in a manner he/she reasonably believed to be in or not opposed to the best interest of the Corporation. No such indemnification against expenses shall be made, however, in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable for negligence or misconduct in the performance of his/her duty to the Corporation unless and only to the extent that the court having jurisdiction in the county in which the registered office of the Corporation is located or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all circumstances of the case, such person is fairly and reasonably entitled to indemnify for such expense which the court shall deem proper.

12.3 Indemnification under Sections 1 and 2 of this Article shall be made by the Corporation when ordered by a court or upon a determination that indemnification of the Director or officer is proper in the circumstances because he/she has met the applicable standard of conduct set forth in those sections. Such determination shall be made (1) by the Board of Directors by a majority vote of a quorum consisting of Directors who were not parties to such action, suit or proceeding; or (2) if such quorum is not obtainable, or, even if obtainable a quorum of disinterested Directors so directs, by independent legal counsel in a written opinion.

12.4 Expenses incurred in defending a civil or criminal action, suit or proceeding of the kind described in Sections 1 and 2 of this Article shall be paid by the Corporation in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking, by or on behalf of the person who may be

Copyright © HELPING HAND OUTREACH 2019

entitled to indemnification under those sections, to repay such amount unless it shall ultimately be determined that he/she is entitled to be indemnified by the Corporation.

12.5 The indemnification provided in this Article shall continue as to a person who has ceased to be a Director or officer of the Corporation and shall inure to the benefit of the heirs, executors and administrators of such a person.

12.6 Nothing herein contained shall be construed as limiting the power or obligation of the Corporation to indemnify any person in accordance with the nonprofit corporation law, as amended from time to time, or any similar law adopted by the state of incorporation.

12.7 The Corporation shall also indemnify any person against expenses, including attorneys fees, actually and reasonably incurred by him in enforcing any right to indemnification under this Article, under the nonprofit corporation law, as amended from time to time, or any similar law adopted by the state of incorporation.

12.8 Any person who shall serve as a director, officer, employee or agent of the Corporation or who shall serve at the request of the Corporation, as a Director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, shall be deemed to do so with knowledge of and in reliance upon the rights of indemnification provided in this Article, and the nonprofit corporation law, as amended from time to time, or any similar law adopted by the state of incorporation.

12.9 Non-Assessable. The private property of the Directors and officers of the Corporation shall be non-assessable and shall not be subject to the payment of any corporate debts, nor shall the Directors or Officers of the Corporation become individually liable or responsible for any debts or liabilities of the Corporation.

12.10 Insurance. The Corporation shall have power to purchase and maintain insurance on behalf of any person who is or was a Director, officer, employee or agent of the Corporation as a Director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against any liability asserted against him and incurred by him in any such capacity, or arising out of his/her status as such, whether or not the Corporation would have the power to indemnify him against such liability.

## ARTICLE XIII. INDEMNIFICATION OF FINANCE COMMITTEE MEMBERS AND CHURCH TREASURER

13.1 The Church shall indemnify any voluntary member of its Finance Committee, and its Treasurer, or any person who may have served at its request as a member of the Finance Committee, against and for any expense, fine, penalty, tax liability or similar item or cost, or the expense actually and necessarily incurred by him or her in connection with the defense of any action, suit or proceeding in which he or she is made a party by reason of being or having been such Finance Committee member or

Copyright © HELPING HAND OUTREACH 2019

13.2 Treasurer, except in relation to matters as to which he or she shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty. "Negligence or misconduct in the performance of duty" shall not include mistakes in calculation, mistakes in filings or mistakes in connection with the processing or preparation of the Church's payroll, accounting or books and records unless any such mistake constitutes or otherwise is attributable to the gross neglect of such person in the performance of such person's duty as a member of the Church's Finance committee or as the Church's Treasurer. The Church may also reimburse to any such member of the Church's Finance committee, or the Church Treasurer the reasonable costs of settlement of any such action, suit or proceeding, including administrative proceedings involving the Church, brought by any government agency, if it shall be found by a majority of a committee composed of Directors not involved in the matter in controversy (whether or not a quorum) that it is in the best interest of the Church that such settlement be made and that such Finance Committee member, or Treasurer, was not guilty of negligence or misconduct. Such rights of indemnification and reimbursement shall not be deemed exclusive of any other right to which such Finance Committee member or Treasurer may be entitled under any bylaw, agreement or otherwise.

## ARTICLE XIV. GENERAL PROVISIONS INTERESTED DIRECTORS

14.1 No contract or transaction between the Corporation and one or more of its Directors and officers, or between the Corporation and any other corporation, partnership, association or other organization in which one or more of its Directors or officers are also Directors or officers, or have a financial interest, shall be void or voidable solely for such reason, or solely because the Director or officer is present as or participates in the meeting of the Board which authorizes the contract or transaction, or solely because his/her or their votes are counted for such purpose, if: (a) The material fact as to his/her interest and as to the contract or transaction are disclosed or known to the Board of Directors and the Chairman of the Board in good faith authorizes the contract or transaction; or (b) The contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified, by the Chairman of the Board of Directors.

14.2 Interested Directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors which authorizes a contract or transaction in the preceding section.

## ARTICLE XV. MEMBERS

15.1 This Corporation, as a nonmember Corporation, shall have no members or members with voting rights. All voting rights reside in the Board of Directors.

15.2 The mere regular attendance and regular contribution to the Corporation shall in no way entitle any person to membership rights in the Church.

Copyright © HELPING HAND OUTREACH 2019

## ARTICLE XVI. DISTRIBUTION UPON DISSOLUTION

16.1 Dissolution

Upon the dissolution of the corporation, after paying or making provisions for the payment of all the legal liabilities of the corporation, all assets shall be distributed for one or more exempt purposes within the meaning of section 508 (c)(1)(a) or 501 (c)(3) of the Internal Revenue Code, or the corresponding section of any future federal tax code. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine which are organized and operated exclusively for such purposes.

## ARTICLE XVII. INDEMNIFICATION

17.1 Corporation Liability

The corporation does indemnify any directors, officers, employees, incorporators and if applicable, all members of the corporation from any liability regarding the corporation and the affairs of the corporation, unless the person fraudulently and intentionally violated the law and/or maliciously conducted acts to damage and/or defraud the corporation, or as otherwise provided under applicable statue.

## ARTICLE XVIII. AMENDMENTS

18.1 Amendments

These Bylaws may be altered, added to, amended or repealed by a majority vote of the Directors, but in no event without the approval of the Chairman of the Board of Directors.

## ARTICLE XIX. CERTIFICATION

19.1 Certification

I certify that the foregoing is true and correct copy of the bylaws of the above-named corporation, duly adopted by the Board of Directors.

_____          _____

Signature/Title                                                                    Date

Copyright © HELPING HAND OUTREACH 2019

EXHIBIT O

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

## TX 9-399-792

**Effective Date of Registration:**
May 29, 2024
**Registration Decision Date:**
June 13, 2024

## Title

**Title of Work:** ByLaws Template

## Completion/Publication

**Year of Completion:** 2018
**Date of 1st Publication:** April 22, 2018
**Nation of 1st Publication:** United States

## Author

- **Author:** Dan Peterson
  **Author Created:** text
  **Work made for hire:** No
  **Citizen of:** United States
  **Year Born:** 1968

## Copyright Claimant

**Copyright Claimant:** Dan Peterson
S. 38th St., #109, Tacoma, WA, 98409, United States

## Limitation of copyright claim

**Material excluded from this claim:** text
**Previous registration and year:** TX 9-300-338, 2023
TX 9-331-218, 2023

**New material included in claim:** text

## Rights and Permissions

**Organization Name:** Sierra IP Law, PC
**Name:** Mark D Miller
**Email:** ipdocket@sierraiplaw.com

**Telephone:** (559)436-3800
**Address:** Post Office Box 5637
Fresno, CA 93755-5637 United States

## Certification

**Name:** Dan Peterson
**Date:** May 29, 2024
**Applicant's Tracking Number:** 14205.03.USC10

EXHIBIT P

## ARTICLES OF INCORPORATION

### KINGDOM ACTION NATION

### ARTICLE I
### NAME & DURATION

The name of the Non-Profit Religious Corporation is KINGDOM ACTION NATION. Its existence shall be perpetual.

### ARTICLE II
### EFFECTIVE DATE

The effective date of incorporation shall be the date of filing by the Secretary of State.

### ARTICLE III
### TYPE OF NONPROFIT CORPORATION

The corporation is a church, a Non-Profit Religious Corporation, exempt from federal filing requirements under the specific exceptions in §26 U.S. Code sections 508(c)(1)(A) and 6033(a)(3)(A)(i)..

### ARTICLE IV
### MEMBERS

Member definition and rights are outlined and governed in the Bylaws.

### ARTICLE V
### PURPOSE AND MISSION

The purpose and mission of KINGDOM ACTION NATION is: 1) to promote Christian doctrines; 2) to establish and oversee places of worship; 3) to evangelize worldwide; 4) support missionary activities; 5) license and ordain ministers of the gospel; 6) the preservation of the truth; 7) train, develop, and support leaders in our community and nation as called for in our beliefs; 8) oversee additional ministries which support the mission of the organization, and 9) to engage in activities necessary for the accomplishment of the purpose.

Work Order #: 2021071300424776 - 1
Received Date: 07/13/2021
Amount Received: $50.00

## ARTICLE VI
### GENERAL POWERS

Section 1. All property held by the above-named Religious Corporation shall be held in trust for the use, purpose, benefit, and behoove of the incorporated organization named herein.

Section 2. The above-named Religious Corporation shall, for the purpose of the organization, have the power to contract in the same manner and to the same extent as natural persons, and may sue and be sued, and may defend in all courts and places. In all matters and proceedings whatever, the organization herein named shall have authority to borrow money and to give promissory notes therefore, and to secure the payment of the same by mortgage or other lien upon property, real and personal; to buy, sell, lease, mortgage and in every way deal in real and personal property in the same manner as a natural person may, and to appoint legal counsel, licensed and/or unlicensed, to the extent that any legal counsel employed shall be utilized in a capacity to protect the rights of the Religious Corporation and to address all courts in any and all litigious matters, whether national or international.

Section 3. The Corporation shall have all authority granted in the Washington State Constitution Article One, Sections 7 and 11 and the Washington Nonprofit Corporation Act including, but not limited to, RCW 24.03 as well as all rights guaranteed in Federal Law through the First Amendment, 26 U.S.C. (Internal Revenue Code) §508(c)(1)(A), §6033 (a)(3), and the Religious Freedom Restoration Act 42 U.S.C. Chapter 21B §2000.

## ARTICLE VII
### BOARD OF DIRECTORS

Section 1. The management of the Corporation shall be vested in a Board of no fewer than three (3) directors. The number, qualifications, terms of office, manner of election, time and place of meeting, and powers and duties of the directors shall be fixed by the Bylaws of this corporation.

Section 2. The names and addresses of the initial Board of Directors who will manage the affairs of the corporation until their successors are selected as provided in the Bylaws are:

PATRICIA DILLEY, Founding Board Member   1337 Wabash, Springfield, IL 62704

VICTORIA WINTEROWD, Initial Board Member       1337 Wabash, Springfield, IL 62704

KEITH WINTEROWD, Initial Board Member   1337 Wabash, Springfield, IL 62704

KINGDON ACTION NATION  Page 2 of 6

## ARTICLE VIII
### INSTRUCTIONS FOR VACANCY

Section 1. The provisions of the Bylaws of the Corporation shall govern the manner in which the Directors of the Corporation shall be elected or appointed.

Section 2. Changes may be made to election or appointment of Directors through amendment to the Articles of Incorporation or stipulation to the Bylaws.

## ARTICLE IX
### LIMITATION ON DIRECTORS' LIABILITY

Section 1. A director shall have no liability to the corporation for monetary damages for conduct as a director, except for acts or omissions that involve intentional misconduct by the director, or a knowing violation of law by the director, or for any transaction from which the director will personally receive a benefit in money, property or services to which the director is not legally entitled.

Section 2. If the Washington Nonprofit Corporation Act is here after amended to authorize corporate action further eliminating or limiting the personal liability of directors, then the liability of a director shall be eliminated or limited to the full extent permitted by the Washington Nonprofit Corporation Act, as so amended.

Section 3. Any repeal or modification of this Article shall not adversely affect any right or protection of a director of the corporation existing at the time of such repeal or modification for or with respect to an act or omission of such director occurring prior to such repeal or modification.

## ARTICLE X
### INDEMNIFICATION

**Section 1. Right to Indemnification of Directors and Officers.** Each person who was, or is threatened to be made a party to or is otherwise involved (including, without limitation, as a witness) in any actual or threatened action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was a director or officer of the corporation or, while a director or officer, he or she is or was serving at the request of the corporation as a director, trustee, officer, employee or agent of another corporation or of a partnership, joint venture, trust or other enterprise, including service with respect to employee benefit plans, whether the basis of such proceeding is alleged action in an official capacity as a director, trustee, officer, employee or agent or in any other capacity while serving as a director, trustee, officer, employee or agent, shall be indemnified and held harmless by the corporation, to the full extent permitted by applicable law as then in effect, against all expenses, liability and loss including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts to be paid in settlement) actually and reasonably incurred or suffered by such person in connection

Work Order #: 2021071300424776 - 1
Received Date: 07/13/2021
Amount Received: $50.00

therewith, and such indemnification shall continue as to a person who has ceased to be a director, trustee, officer, employee or agent and shall inure to the benefit of his or her heirs, executors and administrators. The right to indemnification conferred in this Section 1 shall be a contract right and shall include the right to be paid by the corporation the expenses incurred in defending any such proceeding in advance of its final disposition.

**Section 2. Non-exclusivity of Rights**. The right to indemnification and the payment of expenses incurred in defending a proceeding in advance of its final disposition conferred in this Article shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, provision of the Articles of Incorporation, Bylaws, agreement, or vote of disinterested directors or otherwise.

**Section 3. Insurance, Contracts and Funding**. The corporation may maintain insurance at its expense, to protect itself and any director, trustee, officer, employee or agent of the corporation or another corporation, partnership, joint venture, trust or other enterprise against any expense, liability or loss, whether or not the corporation would have the power to indemnify such a person against such expense, liability or loss under RCW 24.03.043 of the Washington Nonprofit Corporation Act and RCW 23B.08.510 of the Washington Business Corporation Act, or any successor provisions. The corporation may enter into contracts with any director or officer of the corporation in furtherance of the provisions of this Article and may create a trust fund, grant a security interest or use other means (including, without limitation, a letter of credit) to ensure the payment of such amounts as may be necessary to effect indemnification as provided in this Article.

**Section 4. Indemnification of Employees and Agents of the Corporation**. The corporation may, by action of its Board of Directors from time to time, provide indemnification and pay expenses in advance of the final disposition of a proceeding to employees and agents of the corporation with the same scope and effect as the provisions of this Article with respect to the indemnification and advancement of expenses of directors and officers of the corporation or pursuant to rights granted pursuant to, or provided by, the Washington Business Corporation Act, as applied to nonprofit corporations, or otherwise.

### ARTICLE XI
### BYLAWS

The authority to make, alter, amend, or repeal the Bylaws of this corporation is vested in the Board of Directors, and may be exercised in a manner set forth in the Bylaws of the corporation.

### ARTICLE XII
### DISTRIBUTION UPON DISSOLUTION

Upon the dissolution of the corporation, after paying or making provisions for the payment of all the legal liabilities of the corporation, all assets shall be distributed for one or more exempt purposes within the meaning of 26 U.S.C. §508(c)(1)(a) or §501(c)(3) of the Internal Revenue

KINGDON ACTION NATION  Page 4 of 6

Code, or the corresponding section of any future federal tax code. Any such assets not so disposed of shall be disposed of by a court of competent jurisdiction of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine which are organized and operated exclusively for such purposes.

## ARTICLE XIII
### AMENDMENTS

The authority to amend, alter, change, or repeal any provision contained in these Articles of Incorporation is vested solely in the Board of Directors, and may be exercised at any regular or special meeting of the board.

## ARTICLE XIV
### PUBLIC INSPECTION OF DOCUMENTS

The Bylaws and Articles of Incorporation shall be kept at the principal place of business or registered agent address. All other records of accounts and finances, minutes of the proceedings of its Boards and any minutes which may be maintained by committees of the Board; records of the names and post office addresses of its officers and Directors, and such other records as may be necessary or advisable are protected under The First Amendment, 26 U.S.C. §508, 26 U.S.C § 6033(a)(3), and 42 U.S.C. Chapter 21B §2000. All such records shall not be open for public inspection.

## ARTICLE XV
### REGISTERED AGENT OFFICE AND CONSENT

LEGACY 508 SERVICES does hereby consent to serve as the initial registered agent in the State of Washington for KINGDOM ACTION NATION.

The name and street address of the initial registered office of the corporation is:

### LEGACY 508 SERVICES
### 320 NW 103rd St, Seattle, WA 98177

I consent to serve as registered agent in the State of Washington for the above-named corporation. I understand it will be my responsibility to accept service of process on behalf of the corporation; to forward mail to the corporation; and to immediately notify the office of the Secretary of State if I resign or change the registered office address.

Tamara Engwall

Signature of Registered Agent

Tamara Engwall      7/13/2021
Printed Name          Date

KINGDON ACTION NATION Page 5 of 6

Work Order #: 2021071300424776 - 1
Received Date: 07/13/2021
Amount Received: $50.00

**ARTICLE XVI**
PRINCIPAL PLACE OF BUSINESS

The principal place of business is located at: 1337 Wabash, Springfield, IL 62704

**ARTICLE XVII**
INCORPORATOR

The name and address of the incorporator is:

LEGACY 508 SERVICES
320 NW 103rd St, Seattle, WA 98177

_____         Date:        7/13/2021
NAME, Incorporator

KINGDON ACTION NATION  Page 6 of 6

Work Order #: 2021071300424776 - 1
Received Date: 07/13/2021
Amount Received: $50.00

# EXHIBIT Q



INTRODUCTION TO 508(c)(1)(A)
UNDERSTANDING THE 508(C)(1)(A) DESIGNATION

# INTRODUCTION

It may be a surprise to some that there are over 27 classifications of IRS nonprofit organizations. When people hear the word nonprofit, they typically assume that the organization is a 501(c)(3).

Most have never heard of the 508(c)(1)(A) nonprofit alternative for churches, even if they have been in church or ministry for years. The 508(c)(1)(A) designation for churches is part of the Internal Revenue Code Section 26 and the organization that files under this designation is often referred to as a Faith-Based Organization or FBO.

We are providing the following information to answer some of the most common questions that we receive. We do not offer this information as legal advice as we are not lawyers.

## WHERE IN THE INTERNAL REVENUE CODE DO YOU FIND THE 508(c)(1)(A) CODE REFERENCED?



The 508(c)(1)(A) information is found in the Internal Revenue Code (IRC) in Section 26 U.S. Code § 508 - Special rules with respect to section 501(c)(3) organizations.

It is not a well-known portion of Section 26 and has been overlooked by the Faith-Based community for many years. Below is the actual legal verbiage found in the IRC as it pertains to "churches, their integrated auxiliaries, and conventions or associations of churches."
The following information is found at the Legal Information Institute, Cornell University of Law School. https://www.law.cornell.edu/uscode/text/26/508

The Internal Revenue Code language from Section 26 for 508(c)(1)(A)
(Color highlights are added to accent the portions that apply to this designation):

## 26 USC § 508

**(a) New organizations must notify Secretary that they are applying for recognition of section 501(c)(3) status**

**Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—**

(1) unless it has given notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) Presumption that organizations are private foundations

Except as provided in subsection (c), any organization (including an organization inexistence on October 9, 1969) which is described in section 501(c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

**(c) Exceptions**

**(1) Mandatory exceptions Subsections (a) and (b) shall not apply to—**

**(A) churches, their integrated auxiliaries, and conventions or associations of churches**, or

(B) any organization which is not a private foundation (as defined in section 509 (a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

# WHY WAS SUBSECTION 508(c)(1)(A) ADDED TO THE INTERNAL REVENUE CODE?

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Constitution of United States of America 1789, Amendment 1

Legislation approved in 1954, commonly known as the Johnson Amendment, put into place a law that churches and other nonprofit organizations that are tax exempt "are absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign

on behalf of (or in opposition to) any candidate for elective public office," according to the IRS website. This mandated that those organizations be registered under the IRC as a 501(c)(3) with reporting requirements that would allow the government to monitor their activities.

Section 508 of the Internal Revenue Code (IRC) was codified to formalize a standard that had been implicit since America's independence in 1776 - freedom of religion, freedom of speech and freedom to peaceably assemble.

Due to the violation of First Amendment rights on the religious organizations in America with the requirements of the 501(c)(3) designation, the decision was made to establish a new law which returned to FBO's their First Amendment Rights. As a result, 508(c)(1)(A) was approved by Congress in 1969 and became part of the Internal Revenue Code.

## WHAT ARE THE ADVANTAGES OF A 508(c)(1)(A)?

In the past, the church or Faith-Based Organization, was seen as the source of moral and religious standards and had a great influence on the shaping of the culture in the United States. The Founding Fathers who wrote the Constitution believed this so emphatically they placed in the First Amendment the freedom of speech, religion, press, assembly and citizens the ability to petition the government if they did something that blocked any of these freedoms. The church has the greatest opportunity to again make an impact on American society through the 508(c)(1)(A) designation.

The advantages of a church or ministry being registered as a 508(c)(1)(a) church (or FBO) include rights guaranteed under Federal Law 26 U.S.C. § 6033(a)(3)(A)(i).

Summary of advantages under 508(c)(1)(a) and 6033(a)(3)(A)(i):

   1) Tax Exempt and can give tax deductible receipts for donations.

2) Freedom of Speech, including, but not limited to, politics, referendums, initiatives, and candidates.
3) Mandatory exception from reporting (does not file a tax return),
4) Mandatory exception from "rendering under oath such statements, make such other returns, and comply with such rules and regulations as the Secretary (IRS) may from time to time prescribe".
5) Accounting and records are not subject to public scrutiny due to nonreporting.
6) Not required to file for non-profit status with the IRS. So Government approval is not required to function as a FBO.
7) Simplified registration filing process as compared to the 501(c)(3).
8) The Founding Members cannot be removed from the Board of Directors.

# ARE THERE DISADVANTAGES FILING AS A 508(c)(1)(A)?

1) It is not technically considered a disadvantage, but we include it here as it may cause you to question the legitimacy of the designation. The 508(c)(1)(A) is lesser known in the marketplace and nonprofit world and often misunderstood. Because of this, you may find it difficult to find information about it, especially from lawyers and accountants as their services are not needed to establish and maintain the organization.
2) The 508(c)(1)(A) is rarely eligible for government grants because the nonprofit status does not require approval by the Federal Government and is not required to fill out reporting forms 1023 and 990 which the 501(c)(3) designation requires. These records reported to the IRS are what Federal Grantors use to determine approval for Government Grants.

## SUMMARY

Since 1969 the Federal Government has put into place a solution for the Faith Community to be able to retain the freedoms they have been given through the First Amendment, it is the 508(c)(1)(A).

Having listed the benefits, advantages and disadvantages, it becomes clear that the 508(c)(1)(A) is the best option for a church, ministry or FBO to form under for their organization. This allows for true freedom as a church or faith-based organization compared to the traditional 501(c)(3) with its reporting and permission-based requirements.

## WHO IS DESTINY 508 AND IMPACT 508 NONPROFIT SERVICES, LLC?

DESTINY 508™ is a 508(c)(1)(A) Mentoring Ministry that had its start in 2015. We are a Christian Ministry dedicated to helping ministry leaders and churches get their 508(c)(1)(A) status as a Faith-Based Nonprofit Organization (FBO) so they can maximize the impact of their mission. We offer mentoring, training and consulting services to new and existing 508(c)(1)(A) pastors and ministry leaders.

DESTINY 508 partners with IMPACT 508 NONPROFIT SERVICES, LLC™ to provide a "Done For You" 508(c)(1)(A) Registration Service as a Registered Agent. This ensures that your new 508(c)(1)(A) Faith-Based Organization is properly filed with all the requirements being met. Their mission is to serve the Faith-Based community with integrity and honor as ministry leaders make the important decision to embrace their First Amendment Rights.

If you are a 501(c)(3) Church or Ministry and wish to become a 508(c)(1)(A), it is possible, and we are here to guide you through the process no matter the size of your current or future church or ministry.

Ready to get started or have questions? Please contact us at the information below or go to our website at https://DESTINY508.com/

NOTE: All filings for a 508(c)(1)(A) FBO nonprofit status are completed in Washington State, but the filing is recognized in all 50 States and 14 US Territories. Many states restrict religious expression. Washington allows religious organizations to "exercise religion equal to what a natural man or woman can do." It is a very popular state for nonprofit organizations due to its laws and recognition of the 508(c)(1)(A) status.



**DESTINY 508**

Todd & Tamara Engwall
253-264-0508
help@DESTINY508.com
www.DESTINY508.com

# EXHIBIT R



INTRODUCTION TO 508(c)(1)(A)
UNDERSTANDING THE 508(C)(1)(A) DESIGNATION

# INTRODUCTION

It may be a surprise to some that there are over 27 classifications of IRS nonprofit organizations. When people hear the word nonprofit, they typically assume that the organization is a 501(c)(3).

Most have never heard of the 508(c)(1)(A) nonprofit alternative for churches, even if they have been in church or ministry for years. The 508(c)(1)(A) designation for churches is part of the Internal Revenue Code Section 26 and the organization that files under this designation is often referred to as a Faith-Based Organization or FBO.

We are providing the following information to answer some of the most common questions that we receive. We do not offer this information as legal advice as we are not lawyers.

## WHERE IN THE INTERNAL REVENUE CODE DO YOU FIND THE 508(c)(1)(A) CODE REFERENCED?



The 508(c)(1)(A) information is found in the Internal Revenue Code (IRC) in Section 26 U.S. Code § 508 - Special rules with respect to section 501(c)(3) organizations.

It is not a well-known portion of Section 26 and has been overlooked by the Faith-Based community for many years. Below is the actual legal verbiage found in the IRC as it pertains to "churches, their integrated auxiliaries, and conventions or associations of churches."
The following information is found at the Legal Information Institute, Cornell University of Law School. https://www.law.cornell.edu/uscode/text/26/508

The Internal Revenue Code language from Section 26 for 508(c)(1)(A)
(Color highlights are added to accent the portions that apply to this designation):

## 26 USC § 508

(a) New organizations must notify Secretary that they are applying for recognition of section 501(c)(3) status

Except as provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization described in section 501(c)(3)—

(1) unless it has given notice to the Secretary in such manner as the Secretary may by regulations prescribe, that it is applying for recognition of such status, or

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) Presumption that organizations are private foundations

Except as provided in subsection (c), any organization (including an organization inexistence on October 9, 1969) which is described in section 501(c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

(c) Exceptions

(1) Mandatory exceptions Subsections (a) and (b) shall not apply to—

(A) churches, their integrated auxiliaries, and conventions or associations of churches, or

(B) any organization which is not a private foundation (as defined in section 509 (a)) and the gross receipts of which in each taxable year are normally not more than $5,000.

# WHY WAS SUBSECTION 508(c)(1)(A) ADDED TO THE INTERNAL REVENUE CODE?

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Constitution of United States of America 1789, Amendment 1

Legislation approved in 1954, commonly known as the Johnson Amendment, put into place a law that churches and other nonprofit organizations that are tax exempt "are absolutely prohibited from directly or indirectly participating in, or intervening in, any political campaign

on behalf of (or in opposition to) any candidate for elective public office," according to the IRS website. This mandated that those organizations be registered under the IRC as a 501(c)(3) with reporting requirements that would allow the government to monitor their activities.

Section 508 of the Internal Revenue Code (IRC) was codified to formalize a standard that had been implicit since America's independence in 1776 - freedom of religion, freedom of speech and freedom to peaceably assemble.

Due to the violation of First Amendment rights on the religious organizations in America with the requirements of the 501(c)(3) designation, the decision was made to establish a new law which returned to FBO's their First Amendment Rights. As a result, 508(c)(1)(A) was approved by Congress in 1969 and became part of the Internal Revenue Code.

## WHAT ARE THE ADVANTAGES OF A 508(c)(1)(A)?

In the past, the church or Faith-Based Organization, was seen as the source of moral and religious standards and had a great influence on the shaping of the culture in the United States. The Founding Fathers who wrote the Constitution believed this so emphatically they placed in the First Amendment the freedom of speech, religion, press, assembly and citizens the ability to petition the government if they did something that blocked any of these freedoms. The church has the greatest opportunity to again make an impact on American society through the 508(c)(1)(A) designation.

The advantages of a church or ministry being registered as a 508(c)(1)(a) church (or FBO) include rights guaranteed under Federal Law 26 U.S.C. § 6033(a)(3)(A)(i).

Summary of advantages under 508(c)(1)(a) and 6033(a)(3)(A)(i):

   1) Tax Exempt and can give tax deductible receipts for donations.

2) Freedom of Speech, including, but not limited to, politics, referendums, initiatives, and candidates.
3) Mandatory exception from reporting (does not file a tax return),
4) Mandatory exception from "rendering under oath such statements, make such other returns, and comply with such rules and regulations as the Secretary (IRS) may from time to time prescribe".
5) Accounting and records are not subject to public scrutiny due to nonreporting.
6) Not required to file for non-profit status with the IRS. So Government approval is not required to function as a FBO.
7) Simplified registration filing process as compared to the 501(c)(3).
8) The Founding Members cannot be removed from the Board of Directors.

## ARE THERE DISADVANTAGES FILING AS A 508(c)(1)(A)?

1) It is not technically considered a disadvantage, but we include it here as it may cause you to question the legitimacy of the designation. The 508(c)(1)(A) is lesser known in the marketplace and nonprofit world and often misunderstood. Because of this, you may find it difficult to find information about it, especially from lawyers and accountants as their services are not needed to establish and maintain the organization.
2) The 508(c)(1)(A) is rarely eligible for government grants because the nonprofit status does not require approval by the Federal Government and is not required to fill out reporting forms 1023 and 990 which the 501(c)(3) designation requires. These records reported to the IRS are what Federal Grantors use to determine approval for Government Grants.

## SUMMARY

Since 1969 the Federal Government has put into place a solution for the Faith Community to be able to retain the freedoms they have been given through the First Amendment, it is the 508(c)(1)(A).

Having listed the benefits, advantages and disadvantages, it becomes clear that the 508(c)(1)(A) is the best option for a church, ministry or FBO to form under for their organization. This allows for true freedom as a church or faith-based organization compared to the traditional 501(c)(3) with its reporting and permission-based requirements.

## WHO IS DESTINY 508 AND IMPACT 508 NONPROFIT SERVICES, LLC?

DESTINY 508™ is a 508(c)(1)(A) Mentoring Ministry that had its start in 2015. We are a Christian Ministry dedicated to helping ministry leaders and churches get their 508(c)(1)(A) status as a Faith-Based Nonprofit Organization (FBO) so they can maximize the impact of their mission. We offer mentoring, training and consulting services to new and existing 508(c)(1)(A) pastors and ministry leaders.

DESTINY 508 partners with IMPACT 508 NONPROFIT SERVICES, LLC™ to provide a "Done For You" 508(c)(1)(A) Registration Service as a Registered Agent. This ensures that your new 508(c)(1)(A) Faith-Based Organization is properly filed with all the requirements being met. Their mission is to serve the Faith-Based community with integrity and honor as ministry leaders make the important decision to embrace their First Amendment Rights.

If you are a 501(c)(3) Church or Ministry and wish to become a 508(c)(1)(A), it is possible, and we are here to guide you through the process no matter the size of your current or future church or ministry.

Ready to get started or have questions? Please contact us at the information below or go to our website at https://DESTINY508.com/

NOTE: All filings for a 508(c)(1)(A) FBO nonprofit status are completed in Washington State, but the filing is recognized in all 50 States and 14 US Territories. Many states restrict religious expression. Washington allows religious organizations to "exercise religion equal to what a natural man or woman can do." It is a very popular state for nonprofit organizations due to its laws and recognition of the 508(c)(1)(A) status.



**DESTINY 508**

Todd & Tamara Engwall
253-264-0508
help@DESTINY508.com
www.DESTINY508.com

# EXHIBIT S





Based Nonprofit Organization with a
508c1A designation.

## Meet Our Leadership Team

Meet the entire Destiny 508 Team

        

Tamara Engwall

Chief Executive Officer
Ordained Minister

Todd Engwall

Chief Marketing Officer
Ordained Minister

Peter Nieves

Trademark Lawyer

Frank Morgan
Connell III

Certified Public
Accountant

Nick Maggard

Trust Attorney

## What is a 508c1A Faith-Based No
Designation?



Hi there, have a
question? If you are in
the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.    Learn More    Accept

https://destiny508.com                                                                                          2/9



### 508c1A Nonprofit Application and Registration

We make it SIMPLE & EASY to apply and register your nonprofit.  Destiny 508 partners with Destiny 508 Nonprofit Services to offer you a "Done For You" filing service. You get to have your NEW 508c1A Faith-Based Organization registered in often less than 10 days.

[ 508 Registration Options ]

### Nonprofit Business Consulting

Are you interested a becoming a 508c1A but need more information?

Do you need clarity on next steps in your ministry?

Schedule a one-on-one 60-minute Consultation Session with Todd or Tamara Engwall. Professional Business Consultants specializing in Faith-Based Nonprofit Formation.

Cost: $150/hr

[ Purchase a 60-Minute Session ]

### Marketing for Nonprofits

We have a list of design and marketing services for your nonprofit. From Search Engine Optimization (SEO) services to website design! Once you order one of our services  you'll be connected with someone right away to ensure you have a one-on-one experience as you build your brand!

[ Design & Marketing Services ]



Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site If you're happy with this, or find out how to disable cookies.    Learn More    [ Accept ]

Feel God is calling you deeper into your Destiny? Is it time to formalize what you are already doing in ministry?

If this is you...

*by officially forming the mission that God has put on your heart into a recognized 508c1A Christian ministry, outreach or church you are positioning yourself for greater freedom and blessings. Assisting you in launching your Christian faith-based nonprofit is our passion!*

**Are you currently running one of these types of Ministries and Christian Non-Profit Organizations or want to? Others want to partner with you. Are you set up to receive donations and issue tax-deductible donation receipts to your donors?**

Here are some ministries or programs that would benefit from setting up a 508 tax-exempt and tax-deductible nonprofit legal structure:

- a local church, an online or virtual church
- Revival group
- House of Prayer
- Campus Ministry
- Christian mentoring program
- discipleship ministry
- marriage ministry
- homeless ministry
- church for young adults
- a prophetic group
- a Christian singles group or singles ministry
- Christian youth group



Nonprofit Services

Destiny 508™ Nonprofit Services, LLC is a Registered Agent that is the first step to formalizing your 508c1A FBO Church ministry. We walk with you on this first leg of your journey as you establish your new organization on a strong foundation.

Destiny 508 Nonprofit Services will complete your

Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept

- chaplaincy program
- women's ministry
- para church ministry
- healing ministry or healing services
- divorce care group
- deaf ministry
- men's ministry
- traveling ministry
- prison outreach

church or ministry from a 501c3 status to the simplified 508c1A status.

The Kingdom of God is powerfully moving across the world and many are being called to take the next step… so call us today!

The time is now to set up and launch your nonprofit. Revival is here and you are called for such a time as this. We believe the kingdom of God is advancing at an accelerated rate in our current generation through the many facets of the church and it's time for leaders to rise up, take their positions and answer the call of God on their lives to lead, and lead well!

**Meet Our Team**



## Free 15-Minute Consultation

Get on a call with us if you are not sure where to start!
We will get you headed in the right direction.

**Click for Appointment**

Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept

Most people are familiar with 501c3 to be able to offer tax-deductible receipts to your donors but did you know there is a second legal way for churches and ministries that is a lot simpler? Christian Non-Profit Organizations love this discovery since some feel there are disadvantages of 501c3 for Churches and Ministries. Many leaders have seen that the 501c3 rules for Churches reduce the ability to work powerfully in the mission that God has given them. Organizing your ministry under the IRS tax code 508c1A returns freedom and boldness back to the church.

At Destiny 508, we help Christian ministries, churches, and outreach organizations establish their church, outreach or ministry under Internal Revenue Code 26 - 508c1A. If you are ready to start a not-for-profit, we will walk you through the process.

What Is A 508 c 1 A

We really love the simplicity of the 508c1A Faith-Based Organization model for Christian Non-Profit Organizations and we believe you will too. The 508 status for the church gets referred to by many designations online. So whether you call the status 508(c)(1)(A), 508 c 1 A, 508c , 508 c1A, 508c1, 508c3, 508 Church, 508 trusts or even a PMA 508, the 508c1A is the best choice for churches and ministries.

The 508c1A option is a  privilege we have in the United States tax code as faith-based organizations which allows us to eliminate time-consuming reporting requirements and retain freedom of speech in order to share our message without government restrictions. Click to ~~~~~~~~~ ~~~~ ~~~
501c3.

As the Registering Agent to establish your 508c1A Christian church or min~~~ ~~~~~~~~~~~~~
church or ministry from a 501c3 status to the 508c1A status, our profession~~~~~~~~~~~~~~~~~
done correctly and quickly.

We use cookies to provide a better service. Continue to use the site If you're happy with this, or find out how to disable cookies. Learn More     Accept

## What Does the 508c1A Registration Using Destiny 508 Include?

How To Legally Start A Church:  Find out more on our 508c1A Registration Information page.

- The Articles of Organization
- Certificate of Incorporation
- WA State Unified Business Number
- SS4 – Tax Identification Number (EIN)
- Certificate of Existence/Authorization
- First Year of Registered Agent Services
- Expedited Filing Services

> YES! I Want To Start The 508c1A Filing Process

❝

**Jeannette F**

*"I have so appreciated and needed the help to get my nonprofit registered and out into the world. I highly recommend working with Destiny 508! They are great! "*

❝

**Pua W**

*"Destiny 508 is a God-Send for our ministry! We are very thankful for their services and for their mentoring to help us move in the right direction. If you are looking to*

❝

**Cindy W**

*"Wow... the lowest point in my*



Hi there, have a question? If you are in the US, text us here.

*Mentoring program!"*

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.    Learn More    Accept

Declaration: Destiny 508 Nonprofit Services, LLC is on a mission to provide excellent customer service through our Registered Agent filing services. We declare that we are not lawyers, attorneys, or CPAs; all information is for educational purposes only.

The mentoring and training services through our partner Destiny 508 Mentoring are subject to change without notice and are not a required offering to those using the Registering Agent Services.

Destiny 508 Nonprofit Services retains all rights and privileges to end Registered Agent services at any time without reason or fault. All materials are subject to IP Copyright and Trademark laws and are the sole property of Destiny 508 Nonprofit Services.

Once the filing services are completed, there is a NO REFUND policy for the filing.

## NAVIGATION

Home

About Us

Course Login

Services

Contact Us

Privacy Policy

Terms & Conditions

## CONTACT US

 info@destiny508.con

253-264-0508

 

© 2023 Destiny 508™  -  All Rights Reserved


Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept



Design Services  |  Business Services  |  508 Mentoring & Course Login



Home  |  508c1a Benefits and Requirements  |  508c1a Application & Pricing  |  Team Destiny  |  

# 508c1A Requirements

## Nonprofit Benefits and Requirements


Hi there, have a question? If you are in the US, text us here.



We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept

https://destiny508.com/508c1a

1/12

# Ministry Freedom: Introduction to 508c1A FREE eBook >>>



This **FREE pdf e-book** provides information about the 508c1A Faith-Based Organization in a simple to read and understandable format.

What are the 508c1A benefits and requirements for an outreach program, ministry, chaplaincy, Bible study or church? What is a 508 Non Profit Faith-Based Organization (FBO)? These are important considerations when learning how to start a ministry without 501c3.

Destiny 508 has provided this document to summarize the "must-know" information you need to be able to understand the 508c1A Nonprofit option as an alternative to the 501c3 status for your church, Bible study group or ministry.

Download your FREE eBook





We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More     Accept

It may be a surprise to some that there are over 27 classifications of IRS nonprofit organizations. When people hear the word nonprofit, they typically assume that the organization is a 501c3.

Most have never heard of the 508c1A nonprofit alternative for churches, even if they have been in church or ministry for years. The 508c1A designation for churches is part of the Internal Revenue Code Section 26 and the organization that files under this designation is often referred to as a *Faith-Based Organization* or FBO.

You may be on this website having done an internet search for IRS 508c1A information or 508c1A law. If you did, this page will help answer your questions.

The church has many types of styles and ministry models as it shares the love of God and the gospel with the world. We always say that some churches or ministries are much less formal than what we think of today and look more like the church that Jesus gathered which was missing the four walls and a steeple that we may be accustomed to in our spiritual and religious upbringing...

The following information will help you understand if your ministry or outreach would be served well by formally setting up as a 508c1a nonprofit. Even if you are a church ministry, it may be time to organize it under its own legal nonprofit structure and discover what God may do the grow the ministry from there.

Here is some great information to help answer some of the most common questions that we receive. We do not offer this information as legal advice as we are not lawyers, but we believe you will find it helpful.

## Frequently Asked Question



Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More     Accept



Where in the Internal Revenue Code does it talk about a 508c1A?

Why was it added to the Internal Revenue Code?

How does the IRS define "Churches"?

What are the advantages of a 508c1A?

Are there disadvantages filing as a 508c1A?

What are some of the 508c1A benefits compared to a 501c3?

## What other kinds of ministries can benefit from the 508c1a legal structure?

There are several ministries such as discipleship ministries, church planting ministries, pa
groups, restoration ministries, men's ministry, worship teams, a helping hands ministry th
community or any help ministries.

Ministry leaders, pastors, youth ministers, and nonprofit founders lead various ministries like a local church, an online



Hi there, have a
question? If you are in
the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More     Accept

church, local missions, a five fold ministry, a Christian fellowship, renewal ministries, a Christian center, or a women's ministry. It is surprising how many ways the church functions.

Other ministries that may be lesser known could benefit like your local outreach ministry or outreach church, missionary care or Christian pastoral ministries. Do you have one of these ministries or programs? A Baptist preschool, a Christian school, a student ministry, a revival ministry, prayer ministry, church youth group, young adult ministry, singles ministry, family worship center, or any life changing ministries? A simple 508 nonprofit could help you grow and reach more of those you love.

We've helped many leaders within the local church benefit from organizing their own 508 nonprofit to reach the specific audience that they are called to reach. Many times the local church that meets on Sunday does not have the personnel or staff to reach all the needs of the community around them and starting your nonprofit ministry would provide additional impact to the community and unburden the local church.

## Where in the Internal Revenue Code does it talk about a 508c1A?

26 USC § 508 - Special rules with respect to section 501(c)(3) organizations

Legal Information Institute
Cornell University of Law School

26 USC § 508
Current through Pub. L.112-143, except 112-141. (See Public Laws for the current Congress

(a) New organizations must notify Secretary that they are applying for recognition of section
provided in subsection (c), an organization organized after October 9, 1969, shall not be treated as an organization

Hi there, have a
question? If you are in
the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept

(2) for any period before the giving of such notice, if such notice is given after the time prescribed by the Secretary by regulations for giving notice under this subsection.

(b) Presumption that organizations are private foundations
Except as provided in subsection (c), any organization (including an organization in existence on October 9, 1969) which is described in section501 (c)(3) and which does not notify the Secretary, at such time and in such manner as the Secretary may by regulations prescribe, that it is not a private foundation shall be presumed to be a private foundation.

(c) Exceptions
  (1) Mandatory exceptions Subsections (a) and (b) shall not apply to-
    (A) churches, their integrated auxiliaries, and conventions or associations of churches, or
    (B) any organization which is not a private foundation (as defined in section 509 (a)and the gross receipts of which in each taxable year are normally not more than $5,000.
***
Do not confuse the 508c1A code with the 508c1B code above.

## Why was it added to the Internal Revenue Code?

"Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Constitution of United States of America 1789, Amendment 1.

Legislation approved in 1954, commonly known as the Johnson Amendment, put into place other nonprofit organizations that are tax exempt "are absolutely prohibited from directly in, or intervening in, any political campaign on behalf of (or in opposition to) any candidate according to the IRS website. This mandated that those organizations be registered under the IRC as a 501(c)(3) with

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out _how to disable cookies_. Learn More    Accept

Section 508 of the Internal Revenue Code (IRC) was codified to formalize a standard that had been implicit since America's independence in 1776 - freedom of religion, freedom of speech and freedom to peaceably assemble.

Due to the violation of First Amendment rights on the religious organizations in America with the requirements of the 501(c)(3) designation, the decision was made to establish a new law which returned to FBO's their First Amendment Rights. As a result, 508(c)(1)(A) was approved by Congress.

## How does the IRS define "Churches"?

As a 508c1A, the church designation by Internal Revenue Code, there is an exception to all taxation and is, therefore, not required to file federal tax.

The IRS generally uses a combination of the characteristics listed below, together with other facts and circumstances, to determine whether an organization is considered a church for federal tax purposes which they apply to churches filed under the 501c3 Internal Revenue Code.

The term church is found, but not specifically defined, in the Internal Revenue Code. With the exception of the special rules for church audits which does not apply to the 508c1A designation, the use of the term church also includes conventions and associations of churches as well as integrated auxiliaries of a church.

Certain characteristics are generally attributed to churches. These attributes of a church have been developed by the IRS and by court decisions.

They include:

1. Distinct legal existence
2. Recognized creed and form of worship

Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More      Accept

5. Distinct religious history
6. Membership not associated with any other church or denomination
7. Organization of ordained ministers
8. Ordained ministers selected after completing prescribed courses of study
9. Literature of its own
10. Established places of worship
11. Regular congregations
12. Regular religious services
13. Sunday schools for the religious instruction of the young
14. Schools for the preparation of its members

## What are the advantages of a 508c1A?

In the past the church, or Faith-Based Organization, was seen as the source of moral and religious standards and had a great influence on the shaping of the culture in the United States. The Founding Fathers who wrote the Constitution believed this so emphatically they placed in the First Amendment the freedom of speech, religion, press, assembly and citizens the ability to petition the government if they did something that blocked any of these freedoms. The church has the greatest opportunity to again make an impact on American society through the 508c1A designation. Each donor, each kingdom steward will be very blessed as well.

The advantages of being 508(c)(1)(A) FBO include rights guaranteed under Federal Law 26 U.S.C. § 6033(a)(3(a):

1. Tax Exempt, and can give tax deductible receipts for donations.
2. Freedom of Speech, including, but not limited to, politics, referendums, initiatives, and 
3. Exception from Federal reporting (does not file a tax return).
4. Exception from "rendering under oath such statements, make such other returns, and
regulations as Secretary (IRS) may from time to time prescribe".


Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.    Learn More    Accept

7. Simplified filing process.
8. The Founding Members cannot be removed from the Board of Directors.

## Are there disadvantages filing as a 508c1A?

This is a common question that we are asked, so we want to address this concern right up front. It is always good to be wise in making any important decision and knowing both the advantages and disadvantages of an option helps you to make an educated decision. The same is true in choosing between becoming a 508c1A or a 501c3 nonprofit. Below we have listed the most obvious disadvantages for your consideration in making your decision.

1. It is not technically considered a disadvantage, but we include it here as it may cause you to question the legitimacy of the designation. The 508c1A is lesser known in the marketplace and nonprofit world and often misunderstood. Because of this, you may find it difficult to find information about it, especially from lawyers and accountants as their services are not needed to establish and maintain the organization. It may also cause donors to pause before making a donation should they be aware of your 508c1A status because they have never heard of it before.

2. The 508c1A is not usually eligible for government grants because the nonprofit status does not require approval by the Federal Government and is not required to fill out reporting forms 1023 and 990 which the 501c3 designation requires. These submitted reports to the IRS are what Federal Grantors use to determine approval for Government Grants. This is not a hard and fast rule since we know of some 508c1A organizations that have been successful in received government grants, although it is not common. We suggest that you do not form your 508c1A with an expectation of receiving grants since it is so rare. Should you need grants to accomplish the purpose of your organization then a 501c3 status would be a wise choice.

## What are some of the 508c1A benefits compared to a

Having listed the benefits, advantages and disadvantages, it becomes clear that the 508c1A is the best option for a

Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.    Learn More    Accept

researching what are the pros and cons of 501c3 for churches and ministries or are asking does a ministry have to be a 501c3, this information will help you.

There are several benefits that the 508c1A nonprofit designation holds over the 501c3 nonprofit designation. The following is a listing of some of those benefits.

1. Filing an application to become a 508c1A non-profit with the IRS is not required. There is no requirement to file Form 1023, which is required to become a 501c3. This eliminates the need for IRS approval of your application.
2. There is no annual income tax filing requirements, such as the required Form 990 salary disclosure as a 501c3, when you are a 508c1A.
3. The church or ministry does not have any restrictions on speaking about politics as a 508c1A, unlike the restrictions under a 501c3.
4. A 508c1A financial records and Board meeting minutes are not subject to public scrutiny, unlike the 501c3 that is required to file their records with the IRS for the purpose of public scrutiny.



Ready to register your ministry or church as a tax-exempt 508c1A nonprofit?

Start the 508c1A registration process!

Hi there, have a question? If you are in the US, text us here.

We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies. Learn More    Accept

> "
### CHRIS T

*" Rick and I highly endorse this program and these people! They have gone above and beyond in helping us form our 508c1A nonprofit ministry. So proud to be connected to them."*

> "
### CINDY W

*"Wow... the lowest point in my life.... two angels found me and set me on the road to success!! So forever grateful to Tamara and Todd for their 508 Destiny Mentoring program!"*

Declaration: Destiny 508 Nonprofit Services, LLC is on a mission to provide excellent customer service through our Registered Agent filing services. We declare that we are not lawyers, attorneys, or CPAs; all information is for educational purposes only.

The mentoring and training services through our partner Destiny 508 Mentoring are subject to change without notice and are not a required offering to those using the Registering Agent Services.

## NAVIGATION

Home

About Us

Course Login

Services

Contact Us

Privacy Policy

Terms & Conditions

## CONTACT US

✉ info@destiny508.com

📞 253-264-0508





Hi there, have a question? If you are in the US, text us here.



We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.     Learn More     | Accept |

without reason or fault. All materials are subject to IP

Copyright and Trademark laws and are the sole property

of Destiny 508 Nonprofit Services.

Once the filing services are completed, there is a NO

REFUND policy for the filing.

© 2023 Destiny 508™  -  All Rights Reserved



We use cookies to provide a better service. Continue to use the site if you're happy with this, or find out how to disable cookies.   Learn More     Accept

# EXHIBIT T



7/8/2022

JAMES HARGRAVE
668 AVENUE B NUM ½
WESTWEGO, LA 70094

Hello JAMES HARGRAVE:

Your church ministry has been formed. Enclosed are the organization documents filed with the Washington Secretary of State. The documents include the following: the Certificate of Incorporation, the Certificate of Authorization (good standing), the Articles of Incorporation, and the SS4 form with EIN from the Internal Revenue Service.

With these documents you can now open a bank account. We suggest you open your account with a national bank (such as Chase, Wells Fargo, etc.) due to their familiarity with multiple types of accounts and usually do not have an issue with you opening an account with paperwork from a different state. When you go to the bank inform them that you would like to open a church ministry account.

Since the ministry is not "doing business" it is not required to register for a business license, nor a foreign entity filing with the State Department of Revenue unless you apply for a property tax exemption, have employees, or sell goods and services on a regular basis. If a financial institution is requiring your church to file with the Secretary of State as a condition for opening a bank account, that requirement is not supported in federal law. Please see attached a letter explaining church tax exemption.

Your organization needs to be renewed each year. Registered agent services are offered by our affiliate, Legacy 508 Services for an additional fee. When the time comes they will contact you and explain the process.

Onward & Upward,

Tamara Engwall,
IMPACT 508 Nonprofit Service

# EXHIBIT U



7/28/2022

DAVID EPPLEY
BIBLE CHRISTIAN ACADEMY

*The following is for informational and educational purposes only. It is not intended or offered as a substitute for legal advice by a licensed attorney.*

BIBLE CHRISTIAN ACADEMY has been incorporated in the State of Washington as a Nonprofit Religious Corporation. Regarding tax-exempt status, under the U.S. federal tax code 26 U.S.C. Section 508(c)(1)(A), "churches, their integrated auxiliaries, and conventions or associations of churches" fall under a "mandatory exception" to the filing requirements that charitable organizations must follow to receive tax-exempt recognition by the IRS an are therefore not required to file form 1023.

The mandatory exception of section 508 is recognized and confirmed in the Instructions for Form 1023. The Instructions state that certain types of organizations "may be considered tax exempt under section 501(c)(3) even if they do not file Form 1023." It then lists "Churches,... integrated auxiliaries of churches, and conventions and associations of churches" among the examples. It says that "these organizations aren't required to seek recognition of exemption...."

This is also supported by IRS Publication 557 which states: "a church, its integrated auxiliaries, or convention or association of churches are not required to file Form 1023 to be exempt from federal income tax or to receive tax deductible contributions...."

Further clarification and confirmation for donors of the deductibility of donations is found in IRS Publication 526: "You can deduct your contributions only if you make them to a qualified organization." As examples of "qualified organizations," it lists: "Churches, a convention or association of churches, temples, synagogues, mosques, and other religious organizations."

This distinction between churches (and their integrated auxiliaries) and "charitable organizations" is recognized in Washington state law as well. RCW 19.09.020 states in part: "Churches and their integrated auxiliaries...are not charitable organizations, but all are subject to RCW 19.09.100 (15) through (18)." (Those subsections 15-18 have to do with certain kinds of conduct that are not allowed with regard to charitable solicitations.) This distinction is specifically referring to the legal conduct of a "charitable organization" as it pertains to reporting and solicitation. Churches are not subject to these rules except subsection 15-18 regarding solicitation conduct.

Based on the above, as long as BIBLE CHRISTIAN ACADEMY operates as a "church, an integrated auxiliary, or convention or association of churches" in accordance with its Articles of Incorporation, it is tax-exempt under the mandatory exception in 26 U.S.C.§508(c)(1)(A), and donations to it are tax-deductible.

Onward & Upward,

Tamara Engwall
IMPACT 508 Nonprofit Services