UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HELPING HANDS SUPPORT SERVICES, a Washington General Partnership; NORTHWEST CORPORATE SERVICES LLC, a Washington Limited Liability Company; FUTCH & ASSOCIATES, PLLC, a Washington Professional Limited Liability Company; DAN PETERSON, an individual; CLEVELAND FUTCH, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> DESTINY 508, a Washington Non-profit Corporation, dba DESTINY 508 MENTORING; DIVINE ALLIANCE INTERNATIONAL MINISTRIES, a Washington Non-profit Corporation; LEGACY 508 SERVICES LLC, a Washington limited liability company; DESTINY 508 NON-PROFIT SERVICES, a Washington entity dba DESTINY 508 MENTORING; IMPACT 508 NON-PROFIT SERVICES, a Washington entity; TAMARA ENGWALL, an individual; TODD ENGWALL, an individual; PETER NIEVES, an individual; JIM MONIAK, an individual; SUZANNE MONIAK, an individual; DAVID LEROY, an individual; ELAINE LEROY, an individual; MARK MORRIS, an individual; ROB THOMAS, an individual; RENEE GRABLE, an individual, <br><br> Defendants. | CASE NO. 3:24-cv-5566-BHS <br><br> ORDER |

ORDER - 1

This matter is before the Court on Defendants' motion to dismiss. Dkt. 29. Plaintiff Helping Hands Support Services (HHSS) is a Washington general partnership that assists churches seeking to incorporate as tax-exempt non-profit entities under Section 508(c)(1)(a) of the Internal Revenue Code. Dkt. 1 at 6–7. For a fee, it registers the organization with the Washington Secretary of State and provides relevant formation documents, such as a certificate of incorporation and articles of incorporation. *Id.* at 5, 98. It alleges that these materials are copyright protected, and that Defendants infringed on the copyrights by selling similar services to similar customers.

## I.  BACKGROUND

Plaintiffs allege that in 2014 and 2018, defendants Tamara and Todd Engwall used HHSS's services to form two Washington non-profit corporations under IRC 508(c)(1)(a), Divine Alliance International Ministries and Destiny 508. *Id.* at 6–7.

From 2016 to 2021, HHSS contracted with Tamara Engwall, agreeing to pay Engwall a commission for referring customers to HHSS. Dkt. 1, Exhibit A at 42–43. The contract does not place any obligations on Engwall. Section 7.2.1 of the agreement states that HHSS exclusively owns and has licensing rights to all its "intellectual property and proprietary information and know-how." *Id.* at 39. Engwall "has no rights or interest in any Content, Information, Materials, and any other intellectual property or proprietary information and know-how . . . in connection with" HHSS's website or services. *Id.* The agreement additionally specifies that Engwall and HHSS are "independent contractors" with no "joint venture, partnership, employee, agency or fiduciary relationship." *Id.* at 44.

The remaining plaintiffs are Dan Peterson, Cleveland Futch, Northwest Corporate Services, and Futch & Associates, PLLC. The complaint alleges that Futch & Associates is a "general partner" of HHSS. *Id.* at 2. Peterson and Futch are the creators and owners of HHSS's copyrighted works. Northwest Corporate Services is the registered agent for HHSS's customers, though there are no other allegations about it. *Id.* at 51.

Defendants are the Engwalls and their 508(c)(1)(a) entities, Destiny 508 and Divine Alliance, as well as Legacy 508 Services LLC, Destiny 508 Non-Profit Services, and Impact 508 Non-Profit Services. Destiny 508 Non-Profit Services is the registered agent for Destiny 508. The complaint does not describe the roles of the other entities.

The complaint also lists several other individual defendants: Mark Morris, Renee Grable, and out of state defendants Peter Nieves, Jim Moniak, Suzanne Moniak, Rob Thomas, David Leroy, and Elaine Leroy. It asserts that each of these defendants were past members of Destiny 508's board of directors. *Id.* at 2–3.

Plaintiffs claim that starting in July 2021, Defendants used HHSS's proprietary know-how and copyrighted works to assist customers with the formation of non-profit entities. *Id.* at 7–8. Plaintiffs allege Defendants infringed on several copyrights for:

- 2015 articles of incorporation;
- 2018 by-laws;
- website pages;
- a cover letter;
- an explanation letter;

- a paper titled "Why All Churches Should Be A 508(c)(1)(a); and
- a brochure titled "Free Your Ministry From IRS Controls."

*Id.* at 10–26.

The complaint asserts the works were created between 2015 and 2018 and includes copyright registration certificates with effective registration dates in 2023 and 2024. Dkt. 1, Exhibits C, E, G, I, K, M, and O. Four of the registrations—TX 9-399-794, TX 9-232-707, TX 9-260-500, TX 9-399-792—indicate some material is excluded from the copyright claim. Dkt. 1, Exhibits C, E, I, and O. HHSS is the exclusive licensee of all the copyrighted works. *Id.* at 8–10.

Plaintiffs additionally assert a breach of contract against Engwall, and tortious interference, misappropriation of trade secrets, and unjust enrichment claims against all Defendants, without further identification of which defendant did what. *Id.* at 26–30.

Defendants move to dismiss all claims, arguing all the state law claims are preempted by federal copyright law and that the copyrights are invalid. Dkt. 29 at 11, 19. The out of state defendants also move to dismiss the claims against them for lack of personal jurisdiction. *Id.* at 8.

## II. DISCUSSION

**A.   Rule 12(b)(6) standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court's review is "limited to the complaint, materials incorporated into the complaint by reference, and matters of which the Court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, when the facts are not in dispute and the sole issue is whether there is liability as a matter

ORDER - 5

of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**B.     Defendants' motion to dismiss Plaintiffs' copyright claims as invalid is denied.**

Plaintiffs' complaint, Dkt. 1, and response to the motion to dismiss, Dkt. 36, concedes they did not register their copyrights for more than five years after they first published their works. Defendants argue the copyrights are not valid and that the copyright claims therefore fail as a matter of law. Dkt. 29 at 20. Plaintiffs respond that the validity of their copyrights is a factual question that cannot be resolved on a motion to dismiss. Dkt. 36 at 26.

The Copyright Act protects a copyright holder's rights of reproduction, preparation of derivative works, distribution, and display. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005) (citing 17 U.S.C. § 106). A plausible copyright infringement claim requires proof of (1) the plaintiff's ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Publ'n, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). There is a statutory presumption of validity when the copyright has a "certificate of a registration made before or within five years after first publication of the work." 17 U.S.C. § 410(c). "The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court." *Id.* Statutory damages and attorney's fees are unavailable for infringement actions where "infringement of [the] copyright commenced

1  after first publication of the work and before the effective date of registration," unless the
2  registration occurs "within three months after the first publication." 17 U.S.C. § 412(2).
3       First, Plaintiffs assert each of the seven copyrighted works were created between
4  2015 and 2018. Dkt. 1 at 8–10. The registration certificates indicate effective registration
5  dates more than five years after the works' initial publication, in 2023 and 2024. *See, e.g.,*
6  Dkt. 1, Exhibit N–O (work was first published in 2018 and its copyright was effectively
7  registered in 2024). The copyrights are therefore not *presumptively* valid because all were
8  registered more than five years after they were first published. This is fatal to any claim
9  for statutory damages or attorney's fees. 17 U.S.C. § 412(2). But it is not fatal to
10 Plaintiffs' copyright infringement claim.
11      The registration certificates list only Dan Peterson and Cleveland Futch as the
12 owners of the copyrights. While the complaint explains HHSS is the sole licensee of the
13 copyrights, the pleadings do not address the other plaintiffs' relationship to the
14 copyrights.
15      A Rule 12(b)(6) motion to dismiss tests the plausibility of Plaintiffs' allegations,
16 not the sufficiency of their evidence. *See Mangiaracina v. Penzone*, 849 F.3d 1191, 1198
17 (9th Cir. 2017); *Laatz v. Zazzle, Inc.*, 682 F.Supp.3d 791, 806 (N.D. Cal. 2023).
18      Plaintiffs' copyrights were not timely registered but that does not necessarily mean
19 the copyrights are invalid. Defendants' motion to dismiss all seven copyright claims on
20 this basis is **DENIED**.
21
22

**C.    Four of Plaintiffs' copyright claims (counts 1, 2, 4, and 7) are implausible.**

Defendants argue Plaintiffs fail to demonstrate "what text is protected" in view of the limitations listed on the registration certificates. Dkt. 37 at 11.

The Court agrees that Plaintiffs have not sufficiently alleged which portions of the four works with limitations (registration nos. '794, '707, '500, and '792) are copyrighted.

Leave to amend a complaint under FRCP 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010). This policy is "to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal quotation omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Cap.*, 316 F.3d at 1052.

Allowing Plaintiffs to amend their complaint would not prejudice Defendants, and there is no claim or evidence or of bad faith or undue delay. It would not necessarily be futile for Plaintiffs to amend their copyright claims to address these deficiencies. Defendants' motion to dismiss counts 1, 2, 4, and 7 as pled is **GRANTED** but Plaintiffs **may amend their complaint** to address and remedy these pleading defects. They should do so within 21 days.

The amended complaint should also clarify which Plaintiffs own each of the seven copyrights and which Defendants purportedly infringed on them.

Defendants' motion to dismiss the remaining copyright infringement claims (counts 3, 5, 6) is **DENIED**.

Plaintiffs' claims for statutory damages and attorney's fees are **DISMISSED with prejudice.**

**D.     Plaintiffs' state law claims (counts 8–11) are not plausible.**

Defendants argue that HHSS's state law claims are not cognizable because they are preempted by the Copyright Act. Dkt. 29 at 10.

The Ninth Circuit has "adopted a two-part test to determine whether a state law claim is preempted by the [Copyright] Act." *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). First, the "'subject matter' of the state law claim must fall within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103." *Id*. Then, if the subject matter falls within the statute, "the rights asserted under state law" must be "equivalent to the rights contained in 17 U.S.C. § 106, which articulates the exclusive rights of copyright holders." *Id*. at 1137-38. To avoid preemption, the state law claim must have an "extra element" which changes the nature of the cause of action. *Id*. at 1143 (citing *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973 (9th Cir. 1987), *overruled on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

**1.     Plaintiffs' fail to plausibly allege breach of contract.**

Plaintiffs allege Engwall breached Section 7.2.1 of the agreement by "knowingly and intentionally using and reproducing HHSS' proprietary and copyrighted materials without authorization for the formation of non-profit entities in the State of Washington in direct competition with HHSS, and sharing those materials with other Defendants."

Dkt. 1 at 27. Defendants argue the contract "contains no promise to pay or any other extra element beyond the ideas and concepts expressed in the Alleged Works." Dkt. 29 at 13.

The Copyright Act does not preempt contract claims so long as they are "qualitatively different from those protected under the Copyright Act." *Id. See Northwest Home Designing Inc. v. Sound Built Homes Inc.*, 776 F.Supp.2d 1210, 1216 (W.D. Wash. 2011) (a breach of contract claim must have an "an alleged exchange of promises/representations between the parties . . . more than the mere act of copying or distribution regulated by the federal Copyright Act."). *See also Attachmate Corp. v. Sentry Insurance a Mutual Co.*, No. C08-1035RAJ, 2009 WL 1547264 (W.D. Wash. 2009) (breach of contract claim was preempted because the agreement only prohibited installation of more than one copy of software and had no extra element distinguishing it from a copyright claim).

Section 7.2.1 of HHSS's agreement with Engwall states merely that HHSS owns and has licensing rights to its "intellectual property and proprietary information and know-how." Dkt. 1 at 39. Plaintiffs' breach of contract claim hinges solely on Engwall's alleged copying and distribution of HHSS's "proprietary and copyrighted materials." *Id.* at 27. The claim does not have any extra elements beyond the scope of the Copyright Act. *Id.* at 27.

The Court concludes the breach of contract claim is not cognizable because it is preempted by the Copyright Act.

### 2. Plaintiffs fail to plausibly allege tortious interference.

Plaintiffs allege Defendants "intentionally interfered with [HHSS's] business expectancy" by poaching potential customers, rather than referring them to HHSS as required by the agreement. Dkt. 1 at 28. Defendants argue Plaintiffs have not sufficiently pled two elements—a business expectancy that Engwall refer potential customers to HHSS and that Engwall interfered for an improper purpose. *Id.* at 16–17.

In Washington, tortious interference requires (1) the existence of a valid contractual relationship or business expectancy; (2) that the defendant had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that the defendant interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce County Medical Bureau, Inc.*, 131 Wn.2d 133, 157 (1997). At issue here are the first and fourth elements.

The nature of Plaintiffs' claim is unclear, partly because they refer to all Plaintiffs and Defendants collectively. They appear to base their tortious interference claim on their contract-based business expectancy that Engwall would refer customers to them, and, implicitly, not compete with them. Dkt. 1 at 28. But the contract imposes no duty on Engwall to refer customers to HHSS, or to do anything else. It does not include any provision prohibiting Engwall from competing for customers and selling her own products to them. The contract instead imposes only a duty on HHSS to pay Engwall for any customers she brought to HHSS. *Id.*, Exhibit A at 42–43 ("In consideration of your

referral we will pay to you . . . a fee based on the Net Sales Price. . . In order to qualify for the fee stated above, the Customer must have referred you to HHSS.").

Furthermore, Plaintiffs fail to specify which Defendants, and what specific conduct, allegedly caused the tortious interference. The complaint instead alleges vaguely that "Defendants," as a whole, "intentionally interfered" with HHSS's business expectancy, with someone. Dkt. 1 at 28. To the extent Plaintiffs allege Engwall tortiously interfered with the contract, that argument fails as well. *Houser v. City of Redmond*, 16 Wn. App. 743, 746 (1977) (a party to a contract cannot tortiously interfere with that contract).

Plaintiffs have not pled a cognizable tortious interference claim. HHSS had no business expectancy that Engwall would continue to refer customers to it; she plainly did not have any such duty under the agreement attached to Plaintiffs' complaint. Dkt. 1, Exhibit A.

### 3. Plaintiffs fail to plausibly allege misappropriation of trade secrets.

Plaintiffs assert Defendants misappropriated "valuable and proprietary know-how relating to particular methods for establishing and maintaining non-profit organizations under IRS code section 508(c)(1)(a)" in violation of RCW 19.108.010. Dkt. 1 at 29. Defendants argue the claim is not cognizable because Plaintiffs do not identify a legally protected trade secret. Dkt. 29 at 15.

Under the Uniform Trade Secrets Act, RCW Chapter 19.108, a trade secret must not be "generally known to, and not . . . readily ascertainably by proper means" by others who can obtain economic value from its disclosure or use. RCW 19.108.010(4).

"Although the complaint need not spell out the details of the trade secret, a plaintiff seeking relief for trade secret misappropriation must identify the trade secret with sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies." *Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F.Supp.3d 1169, 1178 (W.D. Wash. 2019) (internal quotations omitted).

Plaintiffs have not pled a trade secret with enough particularity to warrant protection under Chapter RCW 19.108. The complaint vaguely refers to "methods for establishing and maintaining non-profit organizations" under 26 U.S.C. § 508(c)(1)(a). Dkt. 1 at 29. But the tax code, including section 508(c)(1)(a), is generally and publicly known, and to the extent Plaintiffs allege the copyrighted works contained the trade secret, Plaintiffs distributed the documents to HHSS's customers. Thus, the trade secret would have been readily ascertainably by HHSS customers by proper means.

The Court concludes Plaintiffs fail to sufficiently allege that Defendants misappropriated trade secrets.

**4.    Plaintiffs fail to plausibly allege unjust enrichment.**

Plaintiffs claim Defendants were unjustly enriched through their "wrongful acts described above," referring to the breach of contract, misappropriation of trade secrets, and tortious interference claims. Dkt. 1 at 29–30. Defendants argue the unjust enrichment claim is preempted by the Copyright Act because it "boils down to a claim for misappropriation of copyrighted matter." Dkt. 1 at 29.

1    Because the Court concludes none of the other state law claims—breach of
2    contract, misappropriation of trade secrets, and tortious interference—are cognizable, the
3    Court concludes for similar reasons that the unjust enrichment claim is not cognizable.
4    Plaintiffs do not plausibly allege unjust enrichment.

### E.  Rule 12(b)(2) standard

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the initial burden of demonstrating that jurisdiction is appropriate, after which the burden shifts to the defendant to demonstrate that jurisdiction is unreasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Where the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced admissible evidence, which, if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800. However, a district court also may order discovery where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093

(9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)).

### F. Plaintiffs have failed to establish personal jurisdiction over the out of state defendants.

The out of state defendants seek to dismiss the claims against them for lack of personal jurisdiction because, they argue, they do not have sufficient minimum contacts with the state of Washington. Dkt. 29 at 8.

Plaintiffs respond that as members of Destiny 508's board, the individual out of state defendants "had the opportunity to direct, control, and ratify the infringing activity" and "were therefore the moving, active, conscious force behind the infringing activity for purposes of personal jurisdiction." Dkt. 36 at 13. They further state that the defendants have "a high level of knowledge and participation in the formation of non-profit 508 entities and the business of" Destiny 508 because they formed—or served on the boards of—other non-profit 508(c)(1) entities based in Washington. *Id.* at 14.

A court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits, so the jurisdictional analysis under state law and federal due process are the same. *Byron Nelson Co. v. Orchard Mgmt. Corp.*, 95 Wn. App. 462, 465 (1999); *Schwarzenegger*, 374 F.3d at 800–01.

ORDER - 15

Personal jurisdiction exists in two forms: general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002). For specific jurisdiction, which is at issue here, the Ninth Circuit applies a three-prong test. *Schwarzenegger*, 374 F.3d at 802. First, "[t]he non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Id*. Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id*. Finally, "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Id*.

For the first prong, the "purposeful direction" analysis typically applies in tort cases and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 803. To determine if the defendant purposefully directed activities at the forum, the Ninth Circuit applies the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). Under this test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010)).

The Ninth Circuit has held that simply maintaining a passive website is not enough to satisfy the express aiming prong. *Id*. at 1229. But "a passive website in

1  conjunction with 'something more'—conduct directly targeting the forum—is sufficient."
2  *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)).
3  Knowingly taking advantage of the forum state's consumer market, *id.* at 1230, or
4  competing directly with the plaintiff in the forum state may qualify as "something more."
5  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).
6  However, it is not enough that the defendant merely infringed on the plaintiff's
7  intellectual property rights while knowing of the plaintiff's location in the forum state.
8  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017).

Under the fiduciary shield doctrine, a corporation's actions are not imputed to its employees for jurisdictional purposes. *Davis v. Metro Productions, Inc.*, 888 F.2d 515, 520 (9th Cir. 1989). "[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person . . . Rather, there must be a reason for the court to disregard the corporate form." *Id.* Thus, the Court must evaluate each individual defendant's contacts with the forum state individually.

All the out of state defendants, except Nieves, acknowledge that they joined board meetings for Destiny 508. Dkts. 30–35. Plaintiffs argue Destiny 508's infringing conduct can therefore be imputed to the out of state defendants. Dkt. 36 at 12 (citing *Matsunoki Group, Inc. v. Timberwork Oregon, Inc.*, No. C 08–04078 CW, 2009 WL 1033818 (N.D. Cal. 2009)). But participation in board meetings is a passive, indirect connection to Washington, at best. *Mavrix Photo Inc.*, 647 F.3d at 1229. There is little evidence that the individual defendants directed any other actions at the state of Washington in connection

with Destiny 508. Although Plaintiffs assert many of the defendants formed or served on the boards of other, non-party Washington based non-profit entities similar to Destiny 508, their "mere association" is insufficient to warrant specific personal jurisdiction. Plaintiffs do not provide any compelling reasons for the Court to disregard these corporate forms to reach the individual defendants; the fiduciary shield doctrine applies. The Court agrees that it does not have personal jurisdiction over the out of state defendants.

Defendants' motion to dismiss for lack of personal jurisdiction over the out of state defendants is **GRANTED**. Plaintiffs' claims against these defendants are **DISMISSED without prejudice**.

### III.  ORDER

Plaintiffs have insufficiently pled four of the copyright claims (counts 1, 2, 4, and 7). Defendants' motion to dismiss these claims is **GRANTED**. The claims are dismissed **without prejudice and with leave to amend**. Any amended complaint must be submitted within 21 days of this order. It should indicate which portions of the works are protected, which Plaintiffs own each of the seven copyrights, and which Defendants purportedly infringed on them, consistent with this order.

Defendants' motion to dismiss the remaining copyright infringement claims (counts 3, 5, 6) is **DENIED**.

Plaintiffs' claims for statutory damages and attorney's fees on these copyright infringement claims are **DISMISSED with prejudice.**

Plaintiffs fail to plausibly allege the state law claims. The Court is persuaded that Plaintiffs cannot amend the complaint to articulate cognizable breach of contract, tortious interference, trade secret misappropriation, and unjust enrichment claims. That, and the pervasive failure to meet basic threshold requirements for the state statutes Plaintiffs sue under, supports that amendment would be futile. *Cook*, 911 F.2d at 247. Defendants' motion to dismiss all state law claims is **GRANTED**. The Court dismisses the state law claims **without prejudice and without leave to amend**.

The Court does not have personal jurisdiction over individual defendants Peter Nieves, Rob Thomas, David LeRoy, Elaine LeRoy, Jim Moniak, and Suzanne Moniak. Defendants' motion to dismiss the claims against the out of state defendants is **GRANTED**, and Plaintiffs' claims against these defendants are **DISMISSED without prejudice**.

IT IS SO ORDERED.

Dated this 28th day of January, 2025.

BENJAMIN H. SETTLE
United States District Judge